**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EMPIRE TECHNOLOGY DEVELOPMENT LLC<br><br>Plaintiff,<br><br>v.<br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Defendants. | Case No. 2:23-cv-00427-JRG-RSP<br><br>**PUBLIC VERSION** |

**PLAINTIFF EMPIRE TECHNOLOGY DEVELOPMENT LLC'S**
**MOTION TO COMPEL PRODUCTION OF LICENSES AND AGREEMENTS**

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION .......... 1

II. THE ASSERTED PATENTS AND ACCUSED PRODUCTS .......... 2

III. SAMSUNG HAS ENGAGED IN PROTRACTED DELAY REGARDING THE PRODUCTION OF RELEVANT AGREEMENTS AND LICENSES. .......... 3

IV. WITHOUT FURTHER DELAY, SAMSUNG SHOULD BE COMPELLED TO PRODUCE ALL RELEVANT AGREEMENTS AND A WITNESS TO TESTIFY ABOUT THEM. .......... 5

V. CONCLUSION .......... 7

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abstrax, Inc. v. Hewlett-Packard Co.*,
No. 2:14-cv-158-JRG, 2015 WL 11197823 (E.D. Tex. Jan. 29, 2015)................................6, 7

*CyWee Grp. Ltd. v. Samsung Elecs. Co.*,
2:17-cv-00140-RWS-RSP, 2018 WL 4112055 (E.D. Tex. Jan. 23, 2018)...............................6

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)..........................................................................................5

*Maxell LTD. v. Apple Inc.*,
No. 5:19-cv-00036-RWS, 2019 WL 7905454 (E.D. Tex. Nov. 13, 2019)...............................6

*Mirror Worlds Techs., LLC v. Apple Inc.*,
No. 6:13-cv-419, 2016 WL 4265758 (E.D. Tex. Mar. 17, 2016).........................................6, 7

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010)............................................................................................5

# I. INTRODUCTION

This case concerns infringement of U.S. Patent No. 8,798,120 ("'120 Patent") and U.S. Patent No. 8,565,331 ("'331 Patent"), which involve at least the following technologies:

- LTE wireless communications
- 5G wireless communications
- Modem circuitry in smartphones and tablets
- Modem functionality in smartphones and tablets
- Antenna switching and related processes in cellular communications networks/systems
- MIMO transmission mode for cellular wireless communications
- SIMO transmission mode for cellular wireless communications
- Techniques for switching between MIMO transmission mode and SIMO transmission mode
- Monitoring some or all of the following circuitry found in smartphones and tablets: digital-to-analog converters, filters, mixers, and power amplifiers
- Adaptive power control in a smartphone, tablet, or other user device found in a modern communications network
- Monitoring idle power of a mobile device
- Techniques for monitoring the number of users in a communications network
- Techniques for communicating with a base station in a communications network
- Channel estimation performed by smartphones and tablets in a cellular network
- Decoding signals received in a communications channel
- Pilot symbol selection and performance in a wireless communications network
- Phase correction in a communications network

Rather than produce all settlements, licenses, and agreements concerning at least the above-listed technologies, as it is required to do under the Court's Discovery Order (ECF No. 26), Samsung has limited its production of licenses and settlement agreements to only seven.

Samsung's position is simple: it is entitled as accused infringer to unilaterally determine which licenses it believes are "technically relevant" without input from (or review by) Empire.

Fact discovery ends on February 3, 2025, and Empire can no longer wait for Samsung's documents and related testimony on these important topics. Empire has pursued this information for months, learning only now that Samsung fully intends not to discharge its discovery obligations to produce all relevant licenses.

## II. THE ASSERTED PATENTS AND ACCUSED PRODUCTS

The '120 Patent is directed to "Methods and Communication Systems Having Adaptive Mode Selection." '120 Patent at 1. The '120 Patent concerns "methods, systems, devices, and/or apparatus generally related to selecting a transmit mode in a communications system." *Id.* at 2:12-14. Two transmit modes are multiple-input multiple-output mode ("MIMO") and single-input multiple-output mode ("SIMO"). *Id.* at 2:37-39. Specifically, asserted claims 25 and 29 of the '120 Patent disclose the selection of a MIMO or SIMO mode by the controller of a mobile station.

The '331 Patent is directed to "methods, systems, devices, and/or apparatus generally related to use of replicated data as a pilot symbol in a communications system." '331 Patent at 4:3-5. Wireless communications rely on communication channels, and "[o]ne way to measure properties of the communications channel is to insert pilot symbols into the transmitted data streams." *Id.* at 1:66-2:1. Specifically, asserted claim 1 of the '331 Patent discloses a method of decoding a signal transmitted over a communications channel, including estimating a channel matrix of the communications channel based, at least in part, on the pilot symbol, receiving replicated data from multiple data streams over the communications channel, and updating the estimate of the channel matrix based, at least in part, on the replicated data

Empire identified a substantial number and variety of Samsung smartphones and tablets in its January 2024 Infringement Contentions and supplemented that list in its September 2024

Amended Infringement Contentions. For both the ’120 Patent and ’331 Patent Accused Products, Empire identified at least certain models of the Galaxy S20 series, S21 series, S22 series, S23 series, and S24 series phones; the Galaxy S10 5G series phones; the Galaxy A 5G series phones; the Galaxy Z Flip series phones; the Galaxy Note series phones; the Galaxy Z Fold series phones; the Galaxy Xcover6 Pro phones; and the Galaxy Tab series tablets.

## III. SAMSUNG HAS ENGAGED IN PROTRACTED DELAY REGARDING THE PRODUCTION OF RELEVANT AGREEMENTS AND LICENSES.

On February 26, 2024, Empire sent a letter to Samsung identifying 70 categories of documents “relevant to the pleaded claims or defenses involved in this action” which Samsung was obligated to produce, including:

- All documents upon which Samsung intends to rely in the present action to establish what a reasonable royalty should be for infringement of one or more of the patents-in-suit, including, but not limited to, any license agreements, covenants, releases, and settlements.
- All agreements between Samsung and any other person concerning any component, technology, or intellectual property included or embodied in any Accused Instrumentality or component thereof, including, but limited to, all assignments, licenses, covenants not-to-sue, and insuring or indemnification agreements.
- All documents evidencing or otherwise relating to Samsung’s policies or practices with regard to the seeking, obtaining, granting, withholding, or negotiation of licenses related to adaptive power control functionality or methods.
- All documents evidencing or otherwise relating to Samsung’s policies or practices with regard to the seeking, obtaining, granting, withholding, or negotiation of licenses related to channel estimation functionality or methods.

On March 18, 2024, Samsung responded to Empire’s February 26 letter and confirmed that it was collecting and would produce documents in compliance with the Discovery Order.

On September 18, 2024, Empire served its Third Set of Interrogatories to Samsung regarding damages and licensing information that included the following requests:

> **Interrogatory No. 19**: Identify any agreement(s) that You contend are comparable licenses under the Georgia-Pacific factors or otherwise relevant to the determination of a reasonable royalty for the Asserted Patents, identify the Persons

> possessing the most knowledge regarding the factual bases for each of Your contentions and a description of each such Person's knowledge, and identify all documents, witnesses, and things on which You intend to rely or which otherwise support or refute Your contentions.
>
> **Interrogatory No. 20**: Identify any licenses, settlement agreements, and covenants not to sue from 2017 to the present to which You are a party relating to any patents or patent applications, and provide an accounting of royalty payments on an annual basis under each license, settlement agreement, and covenant.

On October 29, 2024, Empire sent a letter to Samsung identifying numerous deficiencies with Samsung's Interrogatory responses and document production, including Samsung's failure to produce documents related to licensing, as listed above.

On November 27, 2024, Samsung produced three license and settlement agreements and said it would supplement its production if responsive documents were later identified.

On December 10, 2024, Empire responded to Samsung's November 27 letter stating that Samsung's production of only three license agreements was highly deficient. ***Empire's letter identified 65 patent litigations that Samsung has settled or otherwise resolved since 2020*** in the Eastern District of Texas or the Western District of Texas alone that concern what appears to be the same or similar technology as the products and patents in the present case. Samsung produced no agreement concerning any of these matters. Empire's letter stated that ***Samsung must produce any additional patent licenses and settlements that concern the Accused Products, involve payments of more than $10M, and relate to the technology of the Asserted Patents***.

On December 17, 2024, Samsung produced an additional four license and settlement agreements. On December 18, 2024, Samsung stated that it was "investigating" license and settlement agreements that potentially "relate to the technology of the Asserted Patents" and "[i]f Samsung identifies such additional agreements, Samsung will produce them." Samsung has not committed to producing all responsive and relevant license and settlement agreements, let alone do so without further delay.

The parties met and conferred on December 27, 2024 and were unable to reach an agreement.

## IV. WITHOUT FURTHER DELAY, SAMSUNG SHOULD BE COMPELLED TO PRODUCE ALL RELEVANT AGREEMENTS AND A WITNESS TO TESTIFY ABOUT THEM.

Samsung has failed to comply with its discovery obligations under the Discovery Order and Interrogatory Nos. 19 and 20 to produce license and settlement agreements relevant to Empire's pleaded claim for damages due to Samsung's infringement. Given Samsung's numerous licenses involving the Accused Products identified in the parties' correspondence, Samsung's productions of seven licenses remains highly deficient and prejudicial to Empire's damages case.

Samsung has sold more than [redacted] units of Accused Products since April 2019. At trial, Empire will seek a reasonable royalty based on these infringing sales. "A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010).

The withheld patent agreements are unquestionably relevant—they form the basis for one of the Federal Circuit's accepted damages calculations methodologies. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009) (explaining the hypothetical negotiation). "The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement. In other words, if infringement had not occurred, willing parties would have executed a license agreement specifying a certain royalty payment scheme." *Id.* at 1325. With regard to one of many relevant aspects of the hypothetical negotiation, the Federal Circuit has noted:

> The second *Georgia-Pacific* factor is "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." 318 F.Supp at 1120. This factor examines whether the licenses relied on by the patentee in proving damages are ***sufficiently comparable to the hypothetical license*** at issue in suit.

*Id.*

Given the importance of production of licenses to any patent litigation, this district has adopted a longstanding practice of permitting broad discovery of licenses. *See, e.g.*, *Mirror Worlds Techs., LLC v. Apple Inc*., No. 6:13-cv-419, 2016 WL 4265758, at *1 (E.D. Tex. Mar. 17, 2016) (stating that license agreements in which the defendant paid more than $20 million in royalties or agreed to a running royalty "are relevant to the action or will lead to the discovery of admissible evidence based upon *Georgia-Pacific* factors 2 and 12 and the form of the license agreement that would have been entered into as a result of a hypothetical negotiation"); *Maxell LTD. v. Apple Inc.*, No. 5:19-cv-00036-RWS, 2019 WL 7905454, at *3 (E.D. Tex. Nov. 13, 2019) (stating, "[i]n general, licenses and other agreements are discoverable"). A defendant should not be permitted to "unilaterally decide which licenses are comparable and therefore worthy of production." *CyWee Grp. Ltd. v. Samsung Elecs. Co.*, 2:17-cv-00140-RWS-RSP, 2018 WL 4112055, at *2 (E.D. Tex. Jan. 23, 2018).

License and settlement agreements related to the accused products in the action are especially subject to discovery. *See, e.g.*, *Maxell LTD.*, 2019 WL 7905454, at *3 (ordering the production of license agreements related to the accused products); *CyWee*, 2018 WL 4112055, at *2 (same); *Abstrax, Inc. v. Hewlett-Packard Co.*, No. 2:14-cv-158-JRG, 2015 WL 11197823, at *5 (E.D. Tex. Jan. 29, 2015) (ordering production of "all patent licenses or settlement agreements" that met one of four criteria, including agreements or licenses that "cover, or otherwise relate to (i) the accused software programs, process, and products in this case and/or (ii) manufacturing or assembly processes or software, including configurator software").

Further, this Court has held that the fact that "the technologies are dissimilar, by itself, does not demonstrate that the withheld agreements are irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be produced." *Mirror Worlds Techs.*, 2016 WL 4265758, at *1.

To that end, this Court has ordered the production of licenses related to specific consideration amounts or including a running royalty. *Id.* (ordering defendant to produce licenses for which (1) it paid more than $20 million in royalties or (2) agreed to a running royalty); *Abstrax, Inc.*, 2015 WL 11197823, at *5 (ordering production of "all patent licenses or settlement agreements" that met one of four criteria, including payment by the licensee in the "form of a running royalty" and payment by the licensee of "amounts exceeding $10M").

Additionally, relevant licenses are of no burden for Samsung to produce and Samsung has not raised burden as a concern.

Samsung has withheld numerous agreements and licenses that concern Accused Products. A non-exhaustive list of cases that Samsung has settled or otherwise resolved since 2020 in the Eastern District of Texas or the Western District of Texas alone that involve one or more of the Accused Products and what appears to be the same or similar technology as the Asserted Patents in the present case appears in Appendix A.

## V. CONCLUSION

Despite Empire's numerous requests over the course of months, Samsung has waited until the closing weeks of the fact-discovery period to reveal its intention to withhold agreements relevant to this case. Empire has already been prejudiced and delayed in preparing for fact depositions, expert reports, expert depositions, and trial. Empire thus respectfully seeks an order compelling Samsung to produce all settlement, licensing, or covenant-not-to-sue agreements that involve (1) the technology of the Asserted Patents, (2) the Accused Products, and (3) payments of more than $10M, within fourteen days[1] and a witness in the U.S. within three days thereafter.

[1] Empire of course prefers to have these documents sooner. To the extent Samsung's agreements to do not require a notice period to the counterparty before production, or to the extent the Court elects not to permit Samsung to avail itself of such notice period(s), Empire requests the agreements to be produced sooner.

Respectfully submitted,

Dated: December 27, 2024

*/s/ Nathaniel Browand*
Nathaniel Browand (admitted *pro hac vice*)
New York Bar No. 4349981
Christopher Gaspar (admitted *pro hac vice*)
New York Bar No. 2932762
Leslie Irwin (admitted *pro hac vice*)
New York Bar No. 6060545
Nicholas Fallah (admitted *pro hac vice*)
New York Bar No. 6090542
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5000
nbrowand@milbank.com
cgaspar@milbank.com
lirwin@milbank.com
nfallah@milbank.com

Marina Markarian (admitted *pro hac vice*)
California Bar No. 340686
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, California, 90067
(424) 386-4000
mmarkarian@milbank.com

Elizabeth L. DeRieux
Texas Bar No. 05770585
CAPSHAW DERIEUX, LLP
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

*Attorneys for Plaintiff*
*Empire Technology Development LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 27, 2024, all counsel of record are being served with a copy of the foregoing document via electronic mail.

*/s/ Nathaniel Browand*
Nathaniel Browand

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel have complied with the meet and confer requirements of Local Rule CV-7(h) and that this motion is opposed. On December 27, 2024, the parties met and conferred regarding Samsung's deficient production of licenses. The conference was attended by Marc Pensabene and Tom Gorham on behalf of Samsung, and Christopher Gaspar, Nathaniel Browand, Leslie Irwin, and Elizabeth DeRieux on behalf of Empire. Samsung indicated that it would produce an undetermined number of additional licenses, but at least 12, by January 9, 2025, and the licenses would still be limited to those that Samsung deemed technologically comparable. As explained in Empire's letters to Samsung and in this Motion, Empire contends that relevant licenses include those that are related to the technology of the Asserted Patents, concern the Accused Products, or involve payments of more than $10M. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Nathaniel Browand*
Nathaniel Browand

*/s/ Elizabeth L. DeRieux (with permission)*
Elizabeth L. DeRieux

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Nathaniel Browand*
Nathaniel Browand