**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

EMPIRE TECHNOLOGY DEVELOPMENT LLC,

*Plaintiff,*

v.

SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants.*

Civil Action No. 2:23-cv-00427-JRG-RSP

JURY TRIAL DEMANDED

[redacted]

**PUBLIC VERSION**

**DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S**
**<u>SECOND AMENDED INFRINGEMENT CONTENTIONS</u>**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................................ 1
II. FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2
III. LEGAL STANDARD ...................................................................................................... 5
IV. ARGUMENT ................................................................................................................ 6
1. Empire's Untimely Amended Contentions Violate the Discovery Order, and Disregard the Order Denying Empire's Motion for an Extension of Time ............................................. 6
2. Empire's Source Code Citations Fail to Provide Sufficient Notice for Each Claim Element ........................................................................................................................ 8
3. All Factors Weigh in Favor of Striking Empire's Contentions ...................................... 10
V. CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ariba Inc. v. Emptoris, Inc.*,
No. 9:07-CV-90, 2008 WL 11348416 (E.D. Tex. Oct. 17, 2008) .......... 12

*Comput. Acceleration Corp. v. Microsoft Corp.*,
503 F. Supp. 2d 819 (E.D. Tex. 2007) .......... passim

*Global Sessions LP v. Travelocity.com LP*,
No. 6:10cv671, 2012 WL 1903903 (E.D. Tex. May 25, 2012) .......... 5

*Imperium IP Holdings (CAYMAN), Ltd. v. Samsung Elecs. Co.*,
No. 4:14-CV-371, 2016 WL 1244974 (E.D. Tex. Mar. 30, 2016) .......... 6

*Linex Techs., Inc. v. Belkin Int'l, Inc.*,
628 F. Supp. 2d 703 (E.D. Tex. 2008) .......... 4

*Mass Eng'd Design, Inc. v. Ergotron, Inc.*,
250 F.R.D. 284 (E.D. Tex. 2008) .......... 7

*Michael S Sutton v. Nokia Corp.*,
No. 6:07CV203, 2009 WL 9051240 (E.D. Tex. Feb. 13, 2009) .......... 10, 12

*SmartPhone Techs. LLC v. HTC Corp.*,
No. 6:10cv580, 2012 WL 1424173 (E.D. Tex. Mar. 16, 2012) .......... 5

*Sybase, Inc. v. Vertica Sys., Inc.*,
No. 6:08 CV 24, 2009 WL 4574690 (E.D. Tex. Nov. 30, 2009) .......... 12

*STMicroelectronics, Inc. v. Motorola, Inc.*,
307 F. Supp. 2d 845 (E.D. Tex. 2004) .......... 6, 7

*Sycamore IP Holdings LLC v. AT&T Corp.*,
No. 2:16-cv-588-WCB, 2017 WL 4517953 (E.D. Tex. Oct. 10, 2017) .......... 6, 12, 13

*Uniloc USA, Inc. v. ADP, LLC*,
No. 2:16-cv-00741-RWS, 2020 WL 13931423 (E.D. Tex. Feb. 5, 2020) .......... 8, 11

*United Servs. Auto. Assoc. v. Wells Fargo Bank, N.A.*,
No. 2:18-CV-00366-JRG-RSP, 2019 WL 6878880 (E.D. Tex. Dec. 17, 2019) .......... 11

*Zix Corp. v. Echoworks Corp.*,
No. 2:15-cv-1272-JRG, 2016 WL 3410367 (E.D. Tex. May 13, 2016) .......... 10

**Rules**

P.R. 3-1(c) .......... 4

**TABLE OF CONTENTS**

**Page**

P.R. 3-6(a) ..... 6

P.R. 3-6(b) ..... 6

# I. **INTRODUCTION**

Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") respectfully move this Court to strike Empire Technology Development LLC's ("Empire") Second Amended Infringement Contentions ("SAICs"), for two independent reasons.

*First*, the SAICs, served on February 10, 2025, are untimely and contravene the Discovery Order, which permits amendments only within 30 days of the production of source code. Dkt. 26 at 3. As Empire admitted in a previous filing with the Court, the relevant source code, belonging to third-party Qualcomm, was available for inspection on January 6, 2025, granting Empire until February 5, 2025, to amend its contentions. But Empire did not serve the SAICs until February 10, the last day of fact discovery and the due date for opening expert reports. Empire additionally disregarded the Court's recent order—denying its motion to extend the deadline to amend its infringement contentions due to lack of diligence in seeking and reviewing the Qualcomm source code—further justifying striking these contentions. *See* Dkt. 89 at 1. The Court should not condone Empire's attempt at self-help after its request was denied.

*Second*, the SAICs fail to comply with the Discovery Order's requirement to "identify, on an element-by-element basis for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements." Dkt. 26 at 3. Empire's previous contentions categorized nearly every claim limitation as a "software element," yet the SAICs fail to address the software limitations of both patents' claims on an element-by-element basis, as required by the Patent Rules and the Discovery Order.

All four factors courts assess when considering motions to strike support striking Empire's SAICs. *See Comput. Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007).

## II. FACTUAL AND PROCEDURAL BACKGROUND

Empire filed this lawsuit on September 18, 2023, alleging Samsung's infringement of two patents, U.S. Patent No. 8,798,120 ("the '120 Patent") and U.S. Patent No. 8,565,331 ("the '331 Patent"). On January 4, 2024, more than 13 months ago, Empire served its Original Infringement Contentions ("OICs"), focusing for both asserted patents on proprietary Qualcomm technology within Qualcomm chipsets, and relying heavily on Qualcomm documents. *See* Dkt. 87 at 2, Dkt. 87-2. Samsung promptly complained to Empire about the sufficiency of these original contentions, sending a detailed letter two weeks later (Ex. 1[1]), but Empire claimed to need additional technical information about the accused products to provide proper contentions.

In response to Empire's claim to need additional technical information about the operation of the proprietary Qualcomm technology, Samsung directed Empire to Qualcomm for this information. Indeed from the very beginning of discovery and throughout the discovery process, Samsung consistently directed Empire to seek necessary technical information from Qualcomm, starting with its initial disclosures and early interrogatory responses served in February and March 2024, respectively. *See* Dkt. 87 at 2-3, Dkts. 87-3, 87-4. Samsung further explicitly and repeatedly directed Empire to Qualcomm for technical information in extensive correspondence between the parties, involving at least six letters sent over four months, from February through June 2024. *See* Dkt. 87 at 3-4, Dkts. 87-5 – 87-10. Despite this clear, repeated guidance, Empire delayed issuing a subpoena to Qualcomm until June 24, 2024, more than four months into discovery. And Empire issued that subpoena only after Samsung, frustrated by Empire's refusal to provide proper infringement contentions and Empire's refusal to seek from

[1] Numbered Ex.___ refers to exhibits to the Declaration of Sorin G. Zaharia in Support of Samsung's Motion to Strike Plaintiff's Second Amended Infringement Contentions, filed concurrently herewith.

Qualcomm the discovery it claimed to need, advised Empire that it intended to move to compel proper contentions. *See* Dkt. 87 at 4, Dkt. 87-10.

After its belated service of its subpoena on Qualcomm but before receiving the Qualcomm source code, Empire sought and obtained from the Court leave to serve Amended Contentions, and served its Amended Infringement Contentions ("AICs") on September 27, 2024. *See* Dkts. 42, 43. Those contentions alleged infringement of four claims: claims 25 and 29 of the '120 Patent and claims 1 and 5 of the '331 Patent. (Ex. 2 at 1). Empire identified nearly every asserted claim element as a "software limitation," thereby postponing compliance with P.R. 3-1 until 30 days post-production of source code for each Accused Instrumentality. Dkt. 26 § 3(a)(i); Zaharia Decl. ¶ 3; Exs. 3, 4.

Due to Empire's long delay in subpoenaing Qualcomm, the source code only became available for inspection on January 6, 2025, as Empire acknowledged in its previous motion to amend the contentions deadline, which the Court denied: "[On] January 6, 2025, . . . Qualcomm informed Plaintiff that the '***source code has completed loading and is available for inspection***'." Dkt. 84 at 4 (emphasis added). Qualcomm's completed source code production on January 6 triggered a 30-day period under the Discovery Order for Empire to amend its contentions, with a deadline of February 5, 2025. *See* Dkt. 26 § 3(a)(i). But despite it being available on January 6, as Empire admits, Empire's expert only began reviewing the code on January 13, 2025, and spent only one week over the next month for its inspection. Dkt. 84 at 4.[2]

[2] In its previous motion, Empire took the position that its amended contentions would be due on February 12, 2025 because the 30-day period started only on January 13, when its expert began reviewing the Qualcomm code—rather than January 6 when it was available for inspection. *See* Dkt. 84 at 4, 6. But during the meet-and-confer before filing this Motion, Empire changed its previous story, now asserting for the first time that Qualcomm informed Empire on January 9, 2025 that "certain source code builds were still in progress," and that all source code builds finished loading only on January 17, 2025. Seeking to resolve the timeliness prong of this

On February 4, 2025, a day before the deadline to amend its contentions, Empire moved to amend the docket control order, seeking to extend the deadline for amending infringement contentions to February 24, 2025, along with other deadlines. Dkt. 84 at 1, 7. The Court denied Empire's motion on February 7, 2025, citing Empire's lack of diligence both in pursuing discovery from Qualcomm and in inspecting the source code once obtained. Dkt. 89 at 1.

Despite the Court's denial, and without leave of Court, Empire served its Second Amended Infringement Contentions ("SAICs") on February 10, 2025, past the 30-day deadline provided by the Discovery Order and on the last day of fact discovery. (Exs. 5-18). The SAICs refer to "Appendix C" for the alleged software limitations (Ex. 18). Because Samsung's invalidity expert report was due that same day, Samsung was foreclosed from providing amended invalidity contentions, as it is entitled to do under the Discovery Order, and from taking these amended infringement contentions into account, before serving its invalidity expert report.

Beyond their untimeliness, the SAICs do not comply with the Patent Rules and the Discovery Order for either of the two asserted patents. For the '331 Patent, the SAICs cite Appendix C for all limitations of claim 1. Exs. 12-17; *e.g.*, Ex. 12 at 8-9, 11, 27, 29, 40-41. Yet, Appendix C does not include a chart for claim 1 or in any way indicate what listed code applies to each limitation of the claim, let alone provide an explanation of how any cited functions apply to any of the limitations of claim 1. *See* Ex. 18 at 4-5.

The SAICs are similarly deficient for the '120 Patent. They include the same citation to Appendix C for claim limitations [25c], [25d], [25e], and [29e]. Exs. 6-11; *e.g.*, Ex. 6 at 40, 45,

---

Motion without Court intervention, yet aware of Empire's different previous representation, Samsung requested from Empire copies of the relevant communications with Qualcomm so Samsung could evaluate what was available and when. Empire refused to produce those communications, stating they would produce them only to the Court.

50-52, 54. But Appendix C does not address how the cited code allegedly satisfies the claims on an element-by-element basis, as required by the rules. *See* Ex. 18. Instead, all the code (except a single function) cited for the '120 Patent is applied to one of the limitations, [25c], and this is then cross referenced with a "*See*" signal for each of the other limitations. Ex. 18 at 1-4. Moreover, as with the '331 Patent, there is no explanation of how any cited functions apply to any of the limitations of the '120 Patent claims.

## III. LEGAL STANDARD

Patent Rule 3-1 requires a patentee to provide a "chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality . . .." P.R. 3-1(c).

Furthermore, the chart "must particularly point to the portion of the Accused Product which is asserted to perform the function described in each claim limitation" giving defendant "adequate notice and information with which to litigate their cases." *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 628 F. Supp. 2d 703, 706, 714 (E.D. Tex. 2008). A party must "be as specific as possible in its contentions." *SmartPhone Techs. LLC v. HTC Corp.*, No. 6:10-cv-580, 2012 WL 1424173, at *3 (E.D. Tex. Mar. 16, 2012). Accordingly, "a party may not rely on vague, conclusory language" in its infringement contentions. *Global Sessions LP v. Travelocity.com LP*, No. 6:10-cv-671, 2012 WL 1903903, at *w (E.D. Tex. May 25, 2012); *see also Comput. Acceleration*, 503 F. Supp. 2d at 822 (the Patent Rules are meant to "provide all parties with adequate notice and information with which to litigate their cases").

As set forth in the Discovery Order, in the case of software claim limitations, the Court allows a patentee to supplement its infringement contentions (on an element-by-element basis) within 30 days of production of source code by a defendant:

> If a party claiming patent infringement asserts that a claim element is a software limitation, the party need not comply with P.R. 3-1 for those claim elements

> ***until 30 days after source code for each Accused Instrumentality is produced*** by the opposing party. Thereafter, the party claiming patent infringement shall identify, ***on an element-by-element basis for each asserted claim***, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements."

Dkt. 26 at 3 (emphasis added).

"Deciding whether infringement contentions should be struck, is . . . akin to deciding whether the pleading deadlines of a scheduling order should be extended." *Comput. Acceleration*, 503 F. Supp. 2d at 822 (striking deficient infringement contentions). The court considers the following factors in making that determination: "(1) the reason for the delay and whether the party has been diligent; (2) the importance of what the court is excluding and the availability of lesser sanctions; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Imperium IP Holdings (CAYMAN), Ltd. v. Samsung Elecs. Co.*, No. 4:14-CV-371, 2016 WL 1244974, at *1 (E.D. Tex. Mar. 30, 2016) (citing *Comput. Acceleration*, 503 F. Supp. 2d at 822) (the "*Computer Acceleration* Factors").

## IV. ARGUMENT

Empire's SAICs should be stricken for two separate and independent reasons, either one of which provides sufficient basis to grant the present motion: they violate the Patent Rules and the Discovery Order (i) by being untimely, and (ii) by not meeting the specificity requirements outlined in both the Patent Rules and the Discovery Order.

### 1. Empire's Untimely Amended Contentions Violate the Discovery Order, and Disregard the Order Denying Empire's Motion for an Extension of Time

The Patent Rules provide that a party's original infringement contentions "shall be deemed to be that party's final contentions." P.R. 3-6(a). Thus, any "[a]mendment or supplementation of any Infringement Contentions . . . may be made only by order of the Court, which shall be entered *only upon a showing of good cause*." P.R. 3-6(b) (emphasis added);

*Sycamore IP Holdings LLC v. AT&T Corp.*, No. 2:16-cv-588-WCB, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) ("[A] belated effort to amend infringement contentions, as here, requires leave of court, which in turn requires a showing of good cause.").

The Discovery Order clearly states that if a party claiming patent infringement asserts that a claim element is a software limitation, compliance with P.R. 3-1 for that claim element is deferred until 30 days after the source code for the Accused Instrumentality is produced. Dkt. 26 § 3(a)(i). As Empire admitted in prior court filings, Qualcomm made the source code available for inspection on January 6, 2025, making Empire's deadline for amending its contentions February 5, 2025. *See* Dkt. 84 at 4. Empire's SAICs, served on February 10, 2025, were thus untimely. Moreover, Empire's service of these untimely contentions also disregarded the Court's recent February 7, 2025 Order, which denied Empire's motion to extend the deadline to amend its infringement contentions due to Empire's lack of diligence in seeking and reviewing the Qualcomm source code. *See* Dkt. 89 at 1. This further justifies striking Empire's SAICs.

The purpose of the Discovery Order and the Local Patent Rules is to delineate disputes early, streamlining discovery and strategy. Empire's failure to meet the deadline disrupts this objective and the case timeline. Despite the clear requirements, Empire submitted its SAICs late, without court permission or showing good cause, even after a denied extension request (Dkt. 89). Indeed, Empire appears to have timed the service of the Qualcomm subpoena, as well as the pursuit and inspection of the Qualcomm code, so as to withhold its final contentions from Samsung until the very last day of fact discovery, on the due date for opening expert reports.

Empire's SAICs should be stricken to uphold the Court's authority, as "the Court cannot allow parties to ignore its orders, deadlines, and pretrial practices without any explanation." *STMicroelectronics, Inc. v. Motorola, Inc.*, 307 F. Supp. 2d 845, 851 (E.D. Tex. 2004). Failure

to strike Empire's SAICs would allow Empire to openly circumvent the Patent Local Rules by filing untimely contentions and would "open the floodgates" for similar behavior, thereby "completely nullifying" this Court's rules and telegraphing to litigants that the rules can be disregarded at will. *Mass Eng'd Design, Inc. v. Ergotron, Inc.*, 250 F.R.D. 284, 287 (E.D. Tex. 2008). Courts in this District have struck untimely infringement contentions even where the plaintiff attempted to excuse their untimeliness, something that Empire does not even do here. *See Uniloc USA, Inc. v. ADP, LLC*, No. 2:16-cv-00741-RWS, 2020 WL 13931423, at *4 (E.D. Tex. Feb. 5, 2020) (striking infringement contentions produced after the 30-day deadline, even though plaintiff "claim[ed] that it needed to depose witnesses to understand how the source code worked.").

### 2. Empire's Source Code Citations Fail to Provide Sufficient Notice for Each Claim Element

Aside from being untimely, Empire's SAICs fail to provide notice of Empire's infringement theories in accordance with the Patent Rules and the Discovery Order. For the "software element" claim limitations, Empire was required to "identify, ***on an element-by-element basis*** for each asserted claim, what source code of each Accused Instrumentality allegedly satisfies the software limitations of the asserted claim elements." Dkt. 26 at 3 (emphasis added). Empire's SAICs do not fulfill this requirement for either asserted patent.

The SAICs fail to comply with the rules and the Discovery Order for both asserted claims of the '331 Patent. The SAICs cite to Appendix C for all limitations of claims 1 and 5. Exs. 12-17; *e.g.*, Ex. 12 at 8-9, 11, 27, 29, 40-41. But Appendix C does not include a chart for the '331 Patent applying the source code to individual claim elements and provides less than a page of discussion that mentions several source code files, functions, and variables. Ex. 18 at 4-5. But nothing in that discussion makes any reference at all to the claim language, let alone on a claim

element-by-element basis. Nor does that discussion even attempt to explain how the cited code functions relate to any of the claims or their specific limitations. *See id*.

For example, nothing in the short discussion in Appendix C identifies any functions or variables that address Element 1[b], which requires "***estimating a channel matrix*** of the communications channel based, at least in part, on the pilot symbol." Neither is the step required in Element 1[c], "receiving ***replicated*** data," addressed. Empire's Appendix C also fails to address Element 1[d], which requires "***decoding the replicated data using the estimated channel matrix***." Finally, Empire's source code citations also fail to address Element 1[e], requiring "***generating an updated estimate of the channel matrix*** based, at least in part, on the replicated data," or Element 1[f], requiring "decoding subsequently received signals over the communications channel using the updated estimate of the channel matrix. *See* Ex. 18 at 4-5. Empire's Appendix C nowhere identifies where each of these claim elements is allegedly found in the code, and thus fails the Discovery Order requirements. *See* Dkt. 26 at 3.

The SAICs do not fare any better with respect to the '120 Patent. The SAICs include the same citation to Appendix C for claim limitations [25c], [25d], [25e], and [29e]. Exs. 6-11; *e.g.*, Ex. 6 at 40, 45, 50-52, 54. But, disregarding the Discovery Order's requirement that the source code be identified "on an element-by-element basis," Appendix C does not address how the cited code allegedly satisfies each of those claim elements. Rather, all of the code (except one function) is cited for one of the claim limitations, [25c], and this same listing of code is then cross-referenced with a "*See*" signal in the other limitations. Ex. 18 at 1-4. In essence, as for the '331 Patent, Empire's supplemental contentions for the '120 Patent just vaguely point to a list of source code files, modules, and functions, and argue that those apply to all the claim limitations. *See id*. This does not satisfy the level of specificity set forth in the Patent Rules and the

Discovery Order.

As in *Zix v. Echoworks*, Empire's vague and deficient source code citations for both asserted patents do not meet its "obligation . . . to identify the source code of each accused instrumentality that allegedly satisfies ***each claim element***." *Zix Corp. v. Echoworks Corp.*, No. 2:15-cv-1272-JRG, 2016 WL 3410367, at * 2 (E.D. Tex. May 13, 2016) (striking amended infringement contentions that were "in several instances vague and conclusory.") (emphasis added); *see also Michael S Sutton v. Nokia Corp.*, No. 6:07-CV-203, 2009 WL 9051240, at *1–2 (E.D. Tex. Feb. 13, 2009) (holding source code citations insufficient to provide notice where they did "not point specifically to where each step is found" and defendant was "left guessing as to the alleged location of the steps in the source code.").

**3. All Factors Weigh in Favor of Striking Empire's Contentions**

All four *Computer Acceleration* factors support striking Empire's SAICs. In fact, the Court has already determined that these factors—which is the same test as for amending a scheduling order, *Comput. Acceleration*, 503 F. Supp. 2d at 822—weigh against Empire. *See* Dkt. 89 at 1. ***First***, as this Court recently found, Empire has not been diligent either in seeking the Qualcomm source code or in reviewing it. Dkt. 89 at 1. Empire served its SAICs on February 10, 2025, nearly a week past the amendment deadline, without seeking the Court's leave or reaching an agreement with Samsung, and despite the Court's denial of an extension request. Empire provided no justification—let alone "good cause"—to the Court or Samsung for missing the February 5, 2025 deadline, choosing instead to follow its own timeline in disregard of the Court's rules and orders.

***Second***, Empire concedes the amendment is not crucial. In its denied motion to amend the scheduling order, Empire stated: "Plaintiff submits that the source code evidence and

citations are merely 'a clarification of theories already disclosed in its current Infringement Contentions.'" Dkt. 84 at 7. In *USAA*, which Empire cited in its previous motion, this Court held that "'further clarification and explanation' of theories already disclosed are not [considered highly] important under this factor." *United Servs. Auto. Assoc. v. Wells Fargo Bank, N.A.*, No. 2:18-CV-00366-JRG-RSP, 2019 WL 6878880, at *2 (E.D. Tex. Dec. 17, 2019).[3] Similarly, the court in *Uniloc* found plaintiff's statement that the amended contentions "were 'provided in an abundance of caution'" favored striking them. 2020 WL 13931423, at *5 ("By downplaying the [contentions]' effect, however, [plaintiff] has downplayed the [contentions]' importance.").

***Third***, striking the SAICs is the appropriate sanction, as any lesser measure would prejudice Samsung and reward Empire's self-help approach to the amended contentions. Allowing the contentions to stand would reward Empire's lack of diligence and set a precedent for disregarding procedural rules and court orders. Empire's violation has caused significant and immediate prejudice to Samsung, disrupting its preparation for upcoming deadlines and requiring additional resources and costs. Empire's delay deprived Samsung of the opportunity to consult with its experts and adjust its invalidity contentions and report, as permitted when a plaintiff amends contentions based on source code. Furthermore, due to the deficient nature of Empire's SAICs, Samsung is now "left guessing" as to what exactly Empire's theories are hidden in the non-specific source code citations, with little time to address them. *Michael S Sutton*, 2009 WL 9051240, at *1–2.

Empire's violation of the rules wastes the time and resources Samsung has invested in its

---

[3] In *USAA*, the Court chose not to strike the additional opinions based on source code largely because there the defendant itself produced the source code in question "only days before the close of fact discovery," which diminished the defendant's claim of prejudice. *Id*. In contrast, here the source code is produced by a non-party, Qualcomm. Samsung cannot be responsible for the actions or timing of a non-party like Qualcomm or for Empire's lack of diligence.

defense. *See Ariba Inc. v. Emptoris, Inc.*, No. 9:07-CV-90, 2008 WL 11348416, at *1 (E.D. Tex. Oct. 17, 2008) ("The right to amend is subject to the court's duty to avoid unfairly prejudicing the non-moving party 'through eleventh-hour alterations'"); *Sycamore*, 2017 WL 4517953, at *5 (the addition of new infringement theories near the close of discovery would deprive the defendant of "an opportunity to use discovery to explore the opposing party's theories and the loss of time to develop responses to those theories" and require it to revise its defenses and consider the need for additional expert testimony).

***Fourth***, in denying Empire's earlier motion to amend the Docket Control Order, this Court has implicitly determined that a continuance is neither feasible nor proper here. *See* Dkt. 89 at 1. Because the parties already exchanged opening expert reports, a continuance will not remedy prejudice to Samsung and is not appropriate as a matter of law in this circumstance. *See Sybase, Inc. v. Vertica Sys., Inc.*, No. 6:08-CV-24, 2009 WL 4574690, at *2 (E.D. Tex. Nov. 30, 2009) (finding that a continuance would not remedy the prejudice inherent in serving belated infringement contentions). Striking Empire's contentions is also necessary to deter similar conduct in the future. "Allowing such a scanty and inadequate infringement contention disclosure to stand would deter neither game-playing nor actual violation of the rules—to the contrary it would actually discourage the voluntary exchange of information." *Comput. Acceleration*, 503 F. Supp. 2d at 825.

In sum, the *Computer Acceleration* factors justify striking Empire's untimely and deficient SAICs, which violate the Patent Rules and court orders. As in *Sycamore*, "[t]he Court [should] decline[] [Empire]'s request that it condone that sort of casual, self-help approach to compliance with the clear rules of the court governing pretrial disclosure." 2017 WL 4517953, at *3.

## V. CONCLUSION

For the foregoing reasons, Samsung respectfully requests that the Court strike Empire's Second Amended Infringement Contentions.

Dated: March 3, 2025

Respectfully submitted,

*/s/ Marc J. Pensabene*

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (*Pro Hac Vice*)
California State Bar No. 247738
nwhilt@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Marc J. Pensabene (*Pro Hac Vice*)
New York State Bar No. 2656361
mpensabene@omm.com
Laura Gore (*Pro Hac Vice*)
New York State Bar No. 5172879
lgore@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: 212-326-2000
Facsimile: 212-326-2061

Cameron Westin (*Pro Hac Vice*)
California State Bar No. 290999
cwestin@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

Sorin G. Zaharia (*Pro Hac Vice*)
California State Bar No. 312655
szaharia@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Ctr. 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Melissa R. Smith (Tex. Bar No. 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel have complied with the meet and confer requirements of Local Rule CV-7(h) and that this motion is opposed. On February 27, 2025, the parties met and conferred regarding Empire's untimely and deficient Second Amended Infringement contentions. The conference was attended by Marc Pensabene, Sorin Zaharia and Tom Gorham on behalf of Samsung, and Nathaniel Browand and Elizabeth DeRieux on behalf of Empire. Discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Marc J. Pensabene*
Marc J. Pensabene

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 3, 2025.

*/s/ Melissa R. Smith*
Melissa R. Smith

[redacted]

[redacted]
[redacted]