[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EMPIRE TECHNOLOGY DEVELOPMENT LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Civil Action No. 2:23-cv-00427-JRG-RSP |

**PLAINTIFF EMPIRE TECHNOLOGY DEVELOPMENT LLC'S *DAUBERT* MOTION AND MOTION TO STRIKE THE OPINIONS OF AMBREEN SALTERS**

[redacted]

[redacted]

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ........ 1

BACKGROUND ........ 1

LEGAL STANDARD ........ 6

ARGUMENT ........ 7

I. Ms. Salters' Licensing Opinions Are Not the Product of a Reliable Methodology ........ 8

II. Ms. Salters' Opinions Regarding Non-Infringing Alternatives Are Not Supported by Sufficient Facts ........ 14

CONCLUSION ........ 15

[redacted]

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**


*Adasa Inc. v. Avery Dennison Corp.*,
55 F.4th 900 (Fed. Cir. 2022) ....................13

*Biscotti, Inc. v. Microsoft Corp.*,
2017 WL 2607882 (E.D. Tex. May 25, 2017) ....................8, 11, 14

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) .................... *passim*

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997) .................... *passim*

*IP Innovation L.L.C. v. Red Hat, Inc.*,
705 F. Supp. 2d 687 (E.D. Tex. 2010) ....................7, 8

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007) ....................7

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ....................6

*LaserDynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) ....................8, 9, 10, 13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018) ....................9

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ....................8

*Paz v. Brush Engineered Materials, Inc.*,
555 F.3d 383 (5th Cir. 2009) ....................6

*Ruffin v. Shaw Indus., Inc.*,
149 F.3d 294 (4th Cir. 1998) ....................14

*Spreadsheet Automation Corp. v. Microsoft Corp.*,
587 F. Supp. 2d 794 (E.D. Tex. 2007) ....................10, 11

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015) ....................7

[redacted]

*U.S. v. Fresenius Med. Care N. Am.*,
2010 WL 11451582 (W.D. Tex. Mar. 31, 2010) ........................................................15

*Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.*,
609 F.3d 1308 (Fed. Cir. 2010).......................................................................................8

**Rules**

FED. R. EVID 702 ........................................................................................................ *passim*

[redacted]

## INTRODUCTION

Pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), Plaintiff Empire Technology Development LLC ("Empire") respectfully moves to prohibit Samsung Electronics Co. Ltd. and Samsung Electronics America, Inc.'s (collectively, "Samsung") economist, Ms. Ambreen Salters, from offering certain damages, licensing, and non-infringing alternatives opinions, including those stated in paragraphs 44-63, 69, 77-82, and 89 of her March 3, 2025 report (the "Report"). Counsel for Empire and Samsung have met and conferred regarding the relief requested in this motion (the "Motion") and were unable to reach agreement. This Motion is opposed.

## BACKGROUND

This case concerns Samsung's infringement of the asserted claims of U.S. Patent Nos. 8,798,120 (the "'120 patent") and 8,565,331 (the "'331 patent," and collectively, the "Patents-in-Suit"). The Patents-in-Suit were developed by prominent professors at the University of Texas. Complaint. ¶¶ 16, 22, 25. The '120 Patent was the result of research in which these professors devised ways to adaptively manage power when a cell phone transmits into a wireless network. *Id.* at ¶ 16. This adaptive power allows smartphones to access 5G benefits without safety concerns to users. *Id.* at ¶ 20. This technology provided Samsung with a new way to comply with U.S. government safety regulations and thereby obtain approval from the Federal Communications Commission (FCC) to sell its products in the U.S. Ex. 1,[1] Kowalski Report ¶¶ 58-59. The '331 Patent was the result of work by professors to devise ways to improve channel estimation by inserting and decoding replicated data while maintaining high data rates in wireless

[1] "Ex. __" refers to an exhibit to the Declaration of Nathaniel Browand, submitted herewith.

[redacted]

communications. Complaint, ¶ 22. [redacted] Ex. 2, Akl Opening Report ¶¶ 432-33.

Ms. Salters purported to estimate the damages that would be due to Empire assuming the asserted claims of the Patents-in-Suit are valid, enforceable, and infringed by Samsung.[2] Ex. 3, Report ¶ 1. Ms. Salters concluded that "the parties would have agreed to no greater than [redacted] *Id.* at ¶¶ 31, 69. This conclusion rests on [redacted] *Id.* at ¶ 44. As explained below, Ms. Salters did not make any adjustments or otherwise account for critical economic differences between [redacted] Nor did she or Professor Rangan account for [redacted].[3]

[redacted] *Id.* at ¶¶ 45-51; Ex. 4 (SAMS376-0181514). [redacted] Ex. 3, Report ¶¶ 46-47. [redacted]

---

[2] Ms. Salters also provided certain opinions rebutting the damages put forth by Empire's damages expert, Ms. Dawn Hall, in her February 10, 2025 report. Ex. 3, Report ¶ 1.

[3] Ms. Salters adopted the technical opinions set forth by Professor Sundeep Rangan, Samsung's technical expert, in both his February 10, 2025 report and his March 3, 2025 rebuttal report, and included additional technical opinions based on interviews with Professor Rangan. Ex. 3, Report ¶ 7.

[redacted]

[redacted] *Id.* at ¶ 48. [redacted].[4] *Id.* at ¶ 50. [redacted] *Id.* at ¶ 51. Ms. Salters concluded that the [redacted] *Id*. Ms. Salters did not quantitatively adjust her analysis to account for the fact that the [redacted] *see* Ex. 5, Salters Tr. at 83:18-19; [redacted] *Id*. at 75:16-23. Nor did Ms. Salters (or Professor Rangan) analyze the [redacted] *Id*. at 92:24-93:4.

[redacted] Ex. 3, Report ¶¶ 52-57; Ex. 6 (SAMS376-0180908). [redacted]

[4] The '120 patent expires on December 14, 2032. The '331 patent expires on June 25, 2031. The average remaining life between the two Patents-in-Suit is 13.67 years. [redacted] *See* Ex. 5, Salters Tr. at 85:18-25. Ms. Salters does not explain anywhere in her report, or the accompanying exhibits and workpapers, [redacted] Ms. Salters simply notes that she [redacted] Ex. 3, Report ¶ 50, [redacted].

[redacted]

[redacted] Ex. 3, Report ¶ 53-54. [redacted] *Id.* at ¶ 55. Relying on Professor Rangan, [redacted] *Id.* Ms. Salters then asserted, relying on Professor Rangan, but without providing any context, analysis, or reasoning, [redacted] *Id.* at ¶¶ 55-56. Ms. Salters concluded that [redacted] *Id.* at ¶ 57. Ms. Salters, after acknowledging that the [redacted] *Id.* at ¶ 57. [redacted] *see* Ex. 5, Salters Tr. at 83:18-19; [redacted] *Id.* at 76:5-12. Nor did Ms. Salters analyze the [redacted] *Id.* at 106:6-11; 112:15-113:3.

[redacted] Ex. 3, Report ¶¶ 58-63; Ex. 7 (SAMS376-0199624). [redacted] Ex. 3, Report ¶ 59. Ms. Salters again adopted Professor

[redacted]

Rangan's [redacted] *Id.* at ¶ 60. Without any explanation, Ms. Salters credited Professor Rangan's opinion [redacted] *Id.* at ¶ 61. Professor Rangan, and in turn, Ms. Salters, did not analyze whether [redacted] Nor did they analyze [redacted] Ex. 5, Salters Tr. at 127:21-128:23. [redacted] Ex. 3, Report ¶ 63. Ms. Salters, after acknowledging that [redacted] *Id.* at ¶ 63. Ms. Salters did not quantitatively adjust her analysis to account for the fact that [redacted] Ex. 5, Salters Tr. at 83:18-19; and (ii) was executed approximately [redacted]. *Id.* at 76:5-12.

[redacted] Ms. Salters determined that the parties would have agreed to a hypothetical license [redacted] Ex. 3, Report ¶ 69. Ms. Salters [redacted] *id.* at ¶ 68, but nonetheless opined [redacted]

[redacted]

[redacted] *Id*. at ¶ 41.

The Salters Report also addresses [redacted] *Id.* at ¶¶ 77-82. Ms. Salters opined [redacted] *Id.* at ¶ 89. But Ms. Salters, [redacted] For example, [redacted] *see* Ex. 5, Salters Tr. at 144:2-145:13; 146:22-25; 148:19-25, [redacted] *Id.* at 149:1-4. Similarly, after discussing the financial and commercial factors and concluding that [redacted] Ex. 3, Report ¶ 103, [redacted]

## LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592–93 (1993). A court is required to act as a "gatekeeper" to ensure that all expert testimony is relevant, reliable, and helpful to the jury. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147–48

[redacted]

(1999). The party offering the expert testimony bears the burden of proving its admissibility. *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 388 (5th Cir. 2009).

A district court "may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015). Testimony is only reliable if it is based on "scientific . . . knowledge," grounded in scientific methods, and not mere speculation. *Daubert*, 509 U.S. at 590. Expert testimony must be reliable "at each and every step" because "[t]he reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007) (citation and internal quotation marks omitted). "[N]othing in either Daubert or the [FRE] requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

**ARGUMENT**

Ms. Salters' licensing opinions (paragraphs 44-63, 69) and non-infringing alternatives opinions (paragraphs 77-82, 89) should be excluded because they are the result of a framework that is not "the product of reliable principles and methods" that have been "reliably applied…to the facts of the case," nor are they based on "sufficient facts or data." FED. R. EVID. 702(b)-(d). As this Court knows well, calculation of reasonable royalty damages for patent infringement "contemplates a hypothetical negotiation between the patentee and the infringer at a time before the infringement began" with a presumption that "the patent was valid, enforceable, and infringed." *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 689 (E.D. Tex. 2010). "Although some approximation is permitted in calculating the reasonable royalty, the Federal

[redacted]

Circuit requires 'sound economic and factual predicates' for that analysis." *Id.* (internal citations omitted). Where, as here, such "sound economic and factual predicates" are absent from Defendants' damages analysis, Rule 702 requires the court to exclude the expert opinions. *Id.*

**I. MS. SALTERS' LICENSING OPINIONS ARE NOT THE PRODUCT OF A RELIABLE METHODOLOGY**

Ms. Salters' view that [redacted] is a conclusory opinion based on an inconsistent and unsupported analysis that fails to reliably analyze and control [redacted]

The [redacted] Ms. Salters relies on are not comparable, and her opinions and testimony do not control for those differences. The Federal Circuit requires that the "licenses relied on by the [expert] in providing damages [be] sufficiently comparable to the hypothetical license at issue in the suit." *Biscotti, Inc. v. Microsoft Corp.*, No. 2:13-cv-01015-JRG-RSP, 2017 WL 2607882, at *3 (E.D. Tex. May 25, 2017) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325, 1332 (Fed. Cir. 2009)). While the comparable licenses need not be identical to the hypothetical license, when comparing past licenses to the hypothetical license, an expert must "account for the technological and economic differences between them." *Id.* (citing *Wordtech Sys., Inc. v. Integrated Networks Sols., Inc.,* 609 F.3d 1308, 1320 (Fed. Cir. 2010)). "[A]lleging a loose or vague comparability between different technologies or licenses does not suffice." *Id.*; *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012).

[redacted] *Biscotti,* 2017 WL 2607882, at *3; Ex. 5, Salters Tr. at 75:16-76:12; 82:21-84:11; 92:24-93:4; 106:6-11; 112:15-113:3; 127:17-128:23. Not only did Ms. Salters acknowledge that she did not control for various

[redacted]

characteristics that distinguish [redacted], but where she did claim to consider such factors, [redacted] such that she never had to control for or quantify the many economic and technical differences [redacted] Although there are numerous examples of her failure to analyze the economic and technological differences, Ms. Salters employed an improper and unreliable methodology in failing to (i) quantify the impact of the comparable licenses being the product of settlement; (ii) control for differences in time between when the comparable and hypothetical licenses were executed; and (iii) analyze the technological comparability and value of the majority of patents covered by [redacted]

Taken together, these deficiencies result in an unreliable and internally inconsistent methodology. When an expert's analysis is of an "internally inconsistent nature," such inconsistency "seriously undermine[s] their reliability." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 478 (S.D.N.Y. 2018). Such unreliable and speculative methodologies that have clearly not been "reliabl[y] appli[ed]" warrant exclusion of Ms. Salters' opinions under Rule 702 and *Daubert*. FED. R. EVID. 702; *Daubert*, 509 U.S. at 590.

*First*, Ms. Salters' opinion [redacted] *see* Ex. 3, Report ¶ 69, [redacted] Ms. Salters argues that [redacted] Ex. 5, Salters Tr. 96:11-24, [redacted] Ex. 3, Report ¶ 44. Ms. Salters, however, made *no* adjustments to control for the fact [redacted]

[redacted]

The Federal Circuit has observed that "[t]he propriety of using prior settlement agreements to prove the amount of a reasonable royalty is questionable." *LaserDynamics,* 694 F.3d at 77 (Fed. Cir. 2012). This is because settlement agreements, unlike the hypothetical license, lack an assumption of validity and infringement. Additionally, a "payment to settle a claim for alleged infringement cannot be taken as a standard to measure the value of the improvements patented," as "[m]any considerations other than the value of the improvements patented may induce payment in such cases." *Spreadsheet Automation Corp. v. Microsoft Corp.*, 587 F. Supp. 2d 794, 800–01 (E.D. Tex. 2007) (excluding evidence of consent decrees, settlements, and licenses made under the threat of litigation) (internal citation omitted).

[redacted] Ms. Salters admitted that [redacted] Ex. 5, Salters Tr. at 82:21-83:19. Specifically, Ms. Salters explained, while under such [redacted] *Id.* Tellingly, Ms. Salters *admitted* that she [redacted] *Id.* at 83:18-19. Rather, Ms. Salters looked to an [redacted] *Id.* at 82:21-84:11. Ms. Salters further acknowledged that [redacted] *Id.* at 84:15-25.[5] Such unspecified

[5] Ms. Salters further admitted at her deposition [redacted]. [redacted],

[redacted]

variance and internal inconsistency in how these factors balance out from one Samsung license to the next is the exact unscientific expert testimony that Rule 702 was designed to foreclose.

*Second*, Ms. Salters fails to control for the fact that the [redacted], which the parties agree would have been negotiated in April 2019. [redacted] Ex. 3, Report ¶ 46, [redacted] *Id*. at ¶¶ 53, 59. Ms. Salters herself acknowledged that [redacted] Ex. 5, Salters Tr. 107:21-108:5 [redacted] Despite this admission, Ms. Salters did not [redacted]

[redacted] *Id*. at 75:16-23.[6] Ms. Salters' failure to opine on this aspect of the "economic comparability of such past licenses" warrants exclusion of her opinion. *Biscotti,* 2017

---

[redacted] Ms. Salters, however, did not consider the ways in which "considerations other than the value of the improvements patented may [have] induce[d] payment." *Spreadsheet Automation Corp.*, 587 F. Supp. 2d at 800–01 (internal citation omitted).

[6] Ms. Salters conceded that she also did not [redacted] *Id*. at 76:5-12. Nevertheless, Ms. Salters concludes that everything essentially ends up at zero adjustments, without analysis.

[redacted]

WL 2607882, at *4 (excluding Ms. Salters opinions for failure to address the "substantial economic differences" between the comparable and hypothetical licenses).

*Third*, Ms. Salters, relying on Professor Rangan's technical analysis, fails to account for the technological comparability of [redacted], as required by the Federal Circuit. [redacted]

Ms. Salters, based on Professor Rangan's opinions, [redacted] Ex. 3, Report ¶ 60. [redacted] *Id*. Ms. Salters concluded, relying on Professor Rangan, [redacted]. *Id*. ¶ 61. Notably, Ms. Salters and Professor Rangan did not [redacted] *See* Ex. 8, Rangan Rebuttal Report ¶¶ 261-64; Ex. 5, Salters Tr. at 127:17-128:1. Ms. Salters *never* analyzes whether [redacted] Nor does she analyze [redacted] Ex. 5, Salters Tr. at 127:21-128:23. Instead, Ms. Salters, having not considered the [redacted] Ex. 3, Report ¶ 63.

This subjective assignment of comparative value is not "the product of reliable principles and methods," FED. R. EVID. 702(c), and *Daubert* and the FRE are clear that a court need not

[redacted]

"admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co.*, 522 U.S. at 146; *see also LaserDynamics*, 694 F.3d at 69 (holding that apportionment that was "plucked out of thin air based on vague qualitative notions of the relative importance" of the technology was arbitrary and inadmissible from a damages expert). Ms. Salters' failure to even address the technological comparability of [redacted] is not grounded in any reliable or replicable scientific methodologies.

The inconsistencies in Ms. Salters' analysis do not end there. [redacted] Ms. Salters, without any explanation, limited her analysis only to the handful of patents Samsung was accused of infringing. It is undisputed that Ms. Salters provides no testimony regarding [redacted] Ex. 5, Salters Tr. at 92:24-93:4; 106:6-11; 112:15-113:3. The Court should therefore find this analysis to be incomplete and insufficiently tied to the facts. *See Adasa Inc. v. Avery Dennison Corp.*, 55 F.4th 900, 915 (Fed. Cir. 2022) (affirming exclusion of testimony where expert's analysis "merely observ[ed] that some patents in a portfolio" were technically comparable, while "say[ing] nothing about the comparability of the thousands of remaining patents in the portfolio").

Similarly, Ms. Salters, relying on the opinions of Professor Rangan, claims that the [redacted]

[redacted]

[redacted] Ex. 3, Report ¶¶ 48, 56, 61. Ms. Salters provides no analysis in support of these conclusory statements, relies on [redacted] arrived at this conclusion. The Court should not admit such *ipse dixit* opinions. *Gen. Elec. Co.*, 522 U.S. at 146.

This Court's decision in *Biscotti Inc. v. Microsoft Corp.*, where Ms. Salters' opinions were excluded, is particularly instructive. In *Biscotti*, the Court held that "there are substantial economic differences between the [comparable] licenses and the hypothetical license in suit, which Ms. Salters failed to address." 2017 WL 2607882, at *4. The Court, in light of the economic differences, held that "Ms. Salters should have accounted for them" and her "[f]ailure to do so warrants exclusion" under *Wordtech*. *Id*. The same is true here. Moreover, where, as here, there is "a complete failure to provide any analysis regarding technological comparability" of the majority of patents covered by the comparable licenses, exclusion of the testimony is warranted. *Id.* at *3. Further, given Ms. Salters' failure to account for relevant factors, no other expert could replicate her purported methodology. *See, e.g., Ruffin v. Shaw Indus., Inc.*, 149 F.3d 294, 299 (4th Cir. 1998) (excluding expert testimony where expert's methodology could be "independently replicated").

By divorcing her hypothetical license analysis from the true technological and economic comparability of the licenses, Ms. Salters' resulting [redacted] is nothing more than conclusory, unsupported speculation. Her opinions are not grounded in scientific methods, nor substantiated by the evidence. *Daubert*, 509 U.S. at 590 (1993). Ms. Salters' licensing opinions fail to meet the admissibility standards of Rule 702 and should be excluded.

## II. MS. SALTERS' OPINIONS REGARDING NON-INFRINGING ALTERNATIVES ARE NOT SUPPORTED BY SUFFICIENT FACTS

[redacted] Ms. Salters' conclusion that there were non-infringing alternatives to the accused products, that would have

[redacted]

[redacted] is devoid of any factual predicate and should be excluded under Rule 702. Ms. Salters, relying [redacted] Ex. 3, Report ¶¶ 79-82. However, she fails to [redacted] Such conclusory and unsupported expert testimony is especially egregious where, as here, the testimony is based on [redacted] *See, e.g.*, *id.*; Ex. 5, Salters Tr. at 144:2-145:13; 146:22-25; 148:19-25.

Testimony is only reliable if it is based on "scientific . . . knowledge," grounded in scientific methods, and not mere speculation. *Daubert*, 509 U.S. at 590. Ms. Salters' non-infringing alternative opinions are "unfounded assumptions that are not 'fully explored' or otherwise substantiated" and therefore, must be excluded. *United States v. Fresenius Med. Care N. Am.*, No. EP-07-CV-247-PRM, 2010 WL 11451582, at *5–6 (W.D. Tex. Mar. 31, 2010). The court need not be compelled to accept such testimony that is based on undisclosed facts and "connected[ed] to existing data only by the *ipse dixit* of the expert." *General Elec. Co.*, 522 U.S. at 146.

**CONCLUSION**

For the foregoing reasons, Empire respectfully requests that the Court grant the Motion and strike the damages, licensing, and non-infringing alternatives opinions of Ambreen Salters, including those in paragraphs 44-63, 69, 77-82, 89.

[redacted]

Dated: March 17, 2025

Respectfully submitted,

*/s/ Nathaniel Browand*
Nathaniel Browand (admitted *pro hac vice*)
New York Bar No. 4349981
Christopher Gaspar (admitted *pro hac vice*)
New York Bar No. 2932762
Rachel Wolf (admitted *pro hac vice*)
New York Bar No. 5857438
Leslie Irwin (admitted *pro hac vice*)
New York Bar No. 6060545
Nicholas Fallah (admitted *pro hac vice*)
New York Bar No. 6090542
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5000
nbrowand@milbank.com
cgaspar@milbank.com
rwolf@milbank.com
lirwin@milbank.com
nfallah@milbank.com

Elizabeth L. DeRieux
Texas Bar No. 05770585
CAPSHAW DERIEUX, LLP
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

*Attorneys for Plaintiff*
*Empire Technology Development LLC*

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2025, all counsel of record are being served with a copy of the foregoing document via electronic mail.

*/s/ Nathaniel Browand*
Nathaniel Browand

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel have complied with the meet and confer requirements of Local Rule CV-7(h). On March 16, 2025, Nicholas Whilt and Sorin Zaharia, counsel for Samsung, and Nathaniel Browand, Elizabeth DeRieux, and Andrew Lichtenberg, counsel for Empire, met and conferred regarding the relief sought by Empire's motion. Empire's motion is opposed by Samsung.

*/s/ Nathaniel Browand*
Nathaniel Browand

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is being filed under seal pursuant to the Protective Order entered in this matter.

*/s/ Nathaniel Browand*
Nathaniel Browand