**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

EMPIRE TECHNOLOGY DEVELOPMENT LLC,

*Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants*.

Civil Action No. 2:23-cv-00427-JRG-RSP

JURY TRIAL DEMANDED

[redacted]

**PUBLIC VERSION**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF**
**NO INFRINGEMENT OF U.S. PATENT NO. 8,798,120**

**TABLE OF CONTENTS**

**Page**


I. INTRODUCTION .......... 1

II. STATEMENT OF ISSUE TO BE DECIDED BY THE COURT .......... 3

III. STATEMENT OF UNDISPUTED MATERIAL FACTS .......... 3

IV. LEGAL STANDARD .......... 5

V. ARGUMENT .......... 6

1. Empire Presents No Evidence Of How DCI Is Created Or What It Is Based Upon .......... 7

2. Empire Also Fails To Show That A Base Station Receives Information Reflecting Circuit Power Consumption Or Idle Power Consumption Of The Mobile Station .......... 9

3. Empire's Apparent Allegation That Power Transmitted From Antennas Delivers Information Regarding Circuit And Idle Power Indirectly Is Unavailing And Contrary To Claim Construction .......... 11

VI. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexsam, Inc. v. Simon Prop. Grp., L.P.*,
No. 2:19-cv-331-RWS-RSP, 2021 U.S. Dist. LEXIS 255029 (E.D. Tex. Nov. 15, 2021) 6, 7, 8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)........................................................................................................ 5

*Little v. Liquid Air Corp.*,
37 F.3d 1069 (5th Cir. 1994) ......................................................................................... 5

*Medgraph, Inc. v. Medtronic, Inc.*,
843 F.3d 942 (Fed. Cir. 2016) ....................................................................................... 6

*Parthenon Unified Memory Architecture LLC v. Apple Inc.*,
No. 2:15-cv-621-JRG-RSP, 2016 U.S. Dist. LEXIS 182584 (E.D. Tex. Sep. 21, 2016)..... 6, 10

*Seal-Flex, Inc. v. Athletic Track and Court Const.*,
172 F.3d 836 (Fed. Cir. 1999) ....................................................................................... 7

**Rules**

Fed. R. Civ. P. 56(a) ..................................................................................................... 5

# I. INTRODUCTION

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") respectfully move for summary judgment that Samsung does not infringe any asserted claim of U.S. Patent No. 8,798,120 (the "'120 Patent"). Plaintiff Empire Technology Development LLC ("Empire") lacks admissible evidence sufficient to show Samsung's accused mobile devices receive a control signal that depends on circuit power, idle power, or a number of users, for selecting between two transmission modes.

Both asserted claims of the '120 Patent (claims 25 and 29) require a mobile station with a controller that receives a "***control signal***" and, in accordance with that control signal, selects between a MIMO mode (where two antennas transmit) and a SIMO mode (where one antenna transmits). Dkt. 1-1, '120 Patent, cls. 25, 29. Both claims require that the "control signal is based, at least in part, on a ***power consumption*** of the first and second circuitry."[1] *Id*. Claim 25 further requires that the "control signal is based, at least in part, on an ***idle power consumption*** of the mobile station." *Id.*, cl. 25. Claim 29 further requires that the "control signal is based, at least in part, on a ***number of users*** of the communications system." *Id.*, cl. 29.

Empire agrees that the only control signal received by the accused Samsung mobile phones that informs selection of a MIMO or SIMO transmission mode is [redacted] that is prepared and sent by the base station (i.e., cell tower) and is not something that originates at the mobile phone itself. Yet Empire has cited no evidence of how any base station prepares [redacted] what criteria the base station uses to select between MIMO and SIMO. Indeed, Empire has not investigated the algorithms used by any base station providers (such as Ericsson, Nokia, or others) and admits that it has not analyzed

[1] First and second circuitry is circuitry in the mobile station that is coupled to the first and second antennas, respectively. Dkt. 1-1, '120 Patent, cls. 25, 29.

any base station source code to determine whether the MIMO/SIMO selection specified in [redacted] is based in any way on power consumption of the circuitry in the mobile phone, idle power consumption of the mobile station, or a number of users of the communications system. Because Empire has proffered no evidence, whatsoever, regarding whether any base station prepares [redacted] specifying MIMO/SIMO selection that is based on any of these parameters, its allegations of infringement necessarily fail.

Moreover, there is no way a base station could select between MIMO and SIMO based on circuit power consumption or idle power consumption of the mobile phone because it is unrebutted that the base station does not receive that information in any of the uplink messages the mobile station sends to the base station in accordance with the mandatory 3GPP standards for LTE and 5G, and Empire proffers no evidence to the contrary. The base station cannot base its selection of MIMO and SIMO on information it does not receive. And Empire's expert was unable to point to any evidence in his expert report of what specific information is provided to the base station, whether under the 3GPP standard or otherwise.

Empire appears to contend that the radiated power level itself of the radio frequency signal transmission sent from the mobile phone to the base station indirectly provides information about its circuit power consumption and/or the idle power consumption of the mobile phone. These arguments run afoul of the Court's preliminary claim constructions, which clarify that (1) circuit power consumption "excludes 'signal energy emitted by the antennas'" and (2) that idle power consumption is the power consumed only when the transceiver is ***not transmitting*** and, therefore, cannot be inferred from ***transmitted*** power. Regardless, without any consideration of how the base station decides whether to select MIMO or SIMO mode, Empire has no evidence that any control signal received by the mobile device is based upon circuit

power, idle power, or a number of users of the communications system. Thus, Empire cannot show infringement of the ’120 Patent.

## II. STATEMENT OF ISSUE TO BE DECIDED BY THE COURT

Whether Samsung is entitled to summary judgment that it does not infringe the asserted claims of the ’120 Patent because Empire does not present any evidence to show that the accused products receive a “control signal” in accordance with which a controller selects between a MIMO and a SIMO transmission mode, wherein the control signal “is based, at least in part, on a power consumption of the first and second circuitry” and is based (claim 25) “at least in part, on an idle power consumption of the mobile station” or (claim 29) “at least in part, on a number of users of the communications system.”

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Empire asserts infringement of independent claims 25 and 29 and does not assert infringement of any other claim of the ’120 Patent. Ex. 1, Akl Opening Report ¶¶23-24; Ex. 2, Akl Dep. Tr. at 14:22-15:1.

2. Both claims 25 and 29 of the ’120 Patent recite, in part:

> A mobile station for use in a communications system comprising:
> …
> ***a controller*** coupled to the first and second circuitry, wherein ***the controller is configured to receive a control signal and, in accordance with the control signal, to select between a multiple-input multiple-output (MIMO) mode*** wherein both the first and second antennas transmit data over a communications channel ***and a single-input multiple-output (SIMO) mode*** wherein only one of the first and second antennas transmit data over a communications channel, ***wherein the control signal is based, at least in part, on a power consumption of the first and second circuitry***…

Dkt. 1-1, ’120 Patent, cls. 25, 29.

3. Claim 25 additionally recites (though claim 29 does not):

> wherein ***the control signal is based,*** at least in part, ***on an idle power consumption***

> ***of the mobile station***.

*Id.*

4. Claim 29 additionally recites (though claim 25 does not):

> wherein ***the control signal is based***, at least in part, ***on a number of users of the communications system***.

*Id.*

5. The Court preliminarily construed the claim term "in accordance with" the control signal to mean "as indicated by" the control signal; stated that "a power consumption of the first and second circuitry" would "exclude 'signal energy emitted by the antennas;'" and construed "an idle power consumption of the mobile station" to mean "power consumed by the first and second circuitry when the mobile station is powered on, enabled for transmitting, but waiting to send." Ex. 1, Akl Opening Report ¶115.

6. In a 5G and/or LTE communications system, the mobile phone (user equipment, or UE) communicates with a base station (i.e., cell tower), which configures the UE's communication modes. Ex. 2, Akl Dep. Tr. at 105:2-106:3. The selection of whether the mobile phone operates in a MIMO mode (with two antennas transmitting) or a SIMO mode (with one antenna transmitting) is controlled by the base station through its generation of [redacted] that is sent from the base station to the UE. *Id.* at 50:19-51:4 [redacted]); *see also id.* at 100:24-101:6, 101:7-25, 102:1-4, 102:13-22.

7. It is unrebutted that the ETSI 3GPP standards that govern 5G and LTE communications do not specify how the base station is to make the selection between MIMO and SIMO transmission modes. Ex. 4, Rangan Dep. Tr. at 101:15-24; Ex. 3, Rangan Rebuttal Report ¶105. Instead, the base station supplier (such as Ericsson, Nokia, or others) is free to decide how,

and based on what criteria, to implement the MIMO/SIMO selection; accordingly, the MIMO/SIMO selection is vendor-specific. *Id.*

8. Empire cites no evidence of how any base station operates and presents no analysis of any base station source code or MIMO/SIMO selection algorithms. Ex. 2, Akl Dep. Tr. at 121:9-20, 125:11-126:3, 126:16-128:7, 128:15-129:15.

9. Messages reporting capabilities, data, and other telemetry sent from the mobile device (UE) to the base station are specified by the 3GPP standards and include the device capability report, the power headroom report, and the sounding reference signal. Ex. 3, Rangan Rebuttal Report ¶¶87, 99-104; Ex. 2, Akl Dep. Tr. at 109:13-110:21, 112:1-6. There is no provision in the 3GPP standards for the UE to report any circuit power consumption or idle power consumption to the base station. Ex. 3, Rangan Rebuttal Report ¶¶87, 100. And Empire identifies no such messages or telemetry that might be sent outside of the 3GPP specifications.

10. The Qualcomm source [redacted] Ex. 4, Rangan Dep. Tr. at 103:17-25.

## IV. <u>LEGAL STANDARD</u>

Summary judgment should be granted if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). Summary judgment is proper if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Neither conclusory allegations nor unsubstantiated assertions are sufficient to defeat a summary judgment motion. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

"[A] grant of summary judgment of noninfringement is proper when no reasonable

factfinder could find that the accused product contains every claim limitation or its equivalent." *Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016). "The party opposing summary judgment must identify specific evidence in the record and articulate the precise way the evidence supports his or her claim." *Alexsam, Inc. v. Simon Prop. Grp., L.P.*, No. 2:19-cv-331-RWS-RSP, 2021 U.S. Dist. LEXIS 255029, at *8 (E.D. Tex. Nov. 15, 2021). Although evidence is viewed in the light most favorable to the non-moving party, Empire cannot survive summary judgment by relying on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-cv-621-JRG-RSP, 2016 U.S. Dist. LEXIS 182584, at *5 (E.D. Tex. Sep. 21, 2016).

## V. ARGUMENT

Empire fails to show that Samsung's accused mobile phones infringe any asserted claim of the '120 Patent because it presents no evidence that the accused products receive a control signal informing MIMO/SIMO selection that meets the limitations of asserted claims 25 or 29. Both claims 25 and 29 require a "controller … configured to receive a ***control signal*** and, in accordance with [as indicted by][2] the control signal, to select between a multiple-input multiple-output (MIMO) mode wherein both the first and second antennas transmit data over a communications channel and a single-input multiple-output (SIMO) mode wherein only one of the first and second antennas transmit data over a communications channel," wherein the "control signal is based, at least in part, on a power consumption of the first and second circuitry." '120 Patent, cls. 25, 29. In addition, claim 25 further requires that the "control signal is based, at least in part, on an idle power consumption of the mobile station," and claim 29 further requires that the "control signal is based, at least in part, on a number of users in the

[2] The Court preliminarily construed "in accordance with the control signal" to mean "as indicated by the control signal." Ex. 1, Akl Opening Report ¶115.

communications system." *Id.*

To show infringement of the asserted claims of the '120 Patent, Empire "must supply sufficient evidence to prove that the accused product or process contains" "every limitation of the properly construed claim[s]." *Seal-Flex, Inc. v. Athletic Track and Court Const.*, 172 F.3d 836, 842 (Fed. Cir. 1999). Thus, Empire must present sufficient evidence to show that Samsung's accused devices receive the claimed "control signal" and that the control signal is based, at least in part, on circuit power consumption, idle power consumption, and/or a number of users in the communications system. *Id.* It is insufficient for Empire to speculate that the control signal received by the accused products "***may be*** based" on power consumption of the first and second circuitry (Ex. 1, Akl Opening Report ¶265), because the "party opposing summary judgment must identify ***specific evidence*** in the record and articulate the ***precise way*** the evidence supports his or her claim." *Alexsam,* 2021 U.S. Dist. LEXIS 255029, at *8. While Empire identifies [redacted] as the claimed "control signal," it proffers no evidence of how the base station creates the [redacted], instead merely speculating that it is based on circuit power consumption. Nor does Empire present any evidence that information being sent to the base station would even allow the base station to create [redacted] that depends on circuit power consumption or idle power consumption because the base station is not even aware of such power consumption values. Thus, the Court should grant summary judgment of non-infringement of the '120 Patent for the reasons discussed below.

**1. Empire Presents No Evidence Of How DCI Is Created Or What It Is Based Upon**

Empire's expert, Dr. Robert Akl, does not dispute that in an LTE or 5G cellular communication system, it is the ***base station*** (i.e., the cell tower) that decides whether a mobile

phone should operate in a MIMO mode (transmitting on multiple antennas) or in a SIMO mode (transmitting on one antenna) and that the ***base station*** controls that selection by [redacted] Ex. 2, Akl Dep. Tr. at 50:24-51:4 ("[redacted]"); *id.* at 101:3-6 ("[redacted]). Yet, neither Empire nor its expert performed any analysis of any base station from any manufacturer (e.g., Ericsson, Nokia, or others) to determine what information the base station uses to [redacted] including any selection between MIMO and SIMO, or what such selection is based upon. For example, Dr. Akl admitted at his deposition he had not analyzed any base station source code:

> Q. Okay. But [redacted] is generated by the base station; right?
> A. Yes.
> Q. Okay. And you didn't analyze any source code for any base stations; right?
> A. That is fair.

*Id.* at 121:15-20. Empire argues it need not show ***how*** the base station [redacted] (Ex. 2, Akl Dep. Tr. at 125:15-126:2), but it must, nevertheless, show at least that [redacted] control signal is based, at least in part, "on a power consumption of the first and second circuitry," in addition to "an idle power consumption of the mobile station" (for claim 25) or "a number of users of the communication system" (for claim 29). *See Alexsam,* 2021 U.S. Dist. LEXIS 255029, at *8 (requiring articulation of the "precise way" in which the evidence supports the patentee's claim of infringement). Indeed, even Dr. Akl conceeds that "I need to show what the phone does, and the phone has to receive the signal ***that has specific capability***." Ex. 2, Akl Dep. Tr. at 125:21-23.

Empire does not even argue that it has other ways of knowing that base station suppliers consider such information [redacted] such as by consulting a standard. That is because it is not actually possible to determine how a base station determines MIMO/SIMO switching criteria by consulting any controlling industry standards or specifications. Samsung's expert, Dr. Sundeep

Rangan, provided unrebutted testimony that the [redacted] and specifically, the decision about when to switch between MIMO and SIMO, is not governed by the 3GPP specification and is left up to the base station vendor:

> A So, as I was saying before, whenever you select between -- so the selection between MIMO and SIMO is [at] the base station, and the specification doesn't specify how you make that decision. It's up to the base station's software.
> So an Ericsson base station could select MIMO, and in exactly the same condition, a Nokia base station could pick SIMO, for example.

Ex. 4, Rangan Dep. Tr. at 101:15-24; *see also* Ex. 3, Rangan Rebuttal Report ¶105 ("The 3GPP standard ***does not specify*** the particular method for selection [of] the transmission mode and whether the selected transmission mode is MIMO or SIMO in any particular scheduling instant. This ***decision is vendor specific***."). In other words, it is not possible to know whether [redacted] the "control signal" for selecting between MIMO and SIMO depends on "a power consumption of the first and second circuitry," "an idle power consumption of the mobile station," or a "number of users of the communication system" without investigating what information the base station considers and whether it uses that information to [redacted]. Thus, Empire's failure to provide evidence explaining how the ***base station*** [redacted] determines whether to select MIMO or SIMO is fatal to its allegations of infringement. For this reason alone, Empire cannot show infringement of the '120 Patent.

### 2. Empire Also Fails To Show That A Base Station Receives Information Reflecting Circuit Power Consumption Or Idle Power Consumption Of The Mobile Station

Moreover, it is not even possible for the base station to base its [redacted] selection between MIMO and SIMO on power consumption of the first and second circuitry in the mobile device or the idle power consumption of the mobile station because the base station never receives such data from the mobile station, as discussed below. The base station cannot base its MIMO/SIMO selection on information it does not have. Dr. Akl alleges, without

evidence, that Qualcomm's [redacted] to adjust output power somehow convey information about circuit power or idle power to the base station. *E.g.*, Ex. 2, Akl Dep. Tr. at 105:23-106:3 ("The base station uses the reports coming from the phone to [redacted]. [redacted]") Yet this conclusory statement is supported by no evidence, whatsoever, of what the base station actually receives or what the base station does with information it does receive. Nor did Dr. Akl ever describe in his expert report any information that is sent from the mobile phone to the base station or ever mention the "power headroom report" or describe any information it may include. As in *Parthenon*, in which the patentee failed to demonstrate infringement because it "cite[d] no fact or expert evidence to suggest that its contrived configuration is how the accused devices actually work," (2016 U.S. Dist. LEXIS 182584, at *8), here, Empire similarly fails to demonstrate infringement because its contrived speculation about what information is actually transmitted to the base station lacks any evidentiary support, whatsoever.

Samsung's expert, Dr. Rangan, explains in his expert report that the information sent from the UE to the base station "includes the mobile station's capability report, power headroom report, and sounding reference signal, ***none of which represents and/or is based on*** 'a power consumption of the first and second circuitry,' 'an idle power consumption of the mobile station,' and/or 'a number of users of the communications system,' as recited by Claims 25 and/or 29 of the '120 Patent." Ex. 3, Rangan Rebuttal Report ¶87. "Importantly, the power headroom report provides information only on the total available ***transmit*** signal power, not the total consumed power." *Id.* ¶100.

At his deposition, Empire's expert Dr. Akl alleged for the first time that it is the "power headroom report" that sends relevant information to the base station: "[redacted]." Ex. 2, Akl Dep. Tr. at 112:8-9. And he appears to acknowledge that this headroom report relates to ***transmitted*** power, rather than circuit power or idle power: "[redacted]." *Id.* at 110:9-11. To the extent that Dr. Akl intends "transmitted power" to have a different meaning, suggesting that it somehow relates to power consumed by circuitry in the mobile station or idle power consumption of the mobile station, he points to no evidence that the power headroom report includes circuit power or idle power information and points to no evidence what the power headroom report includes at all. In fact, at his deposition, Dr. Akl was unable to identify ***any*** discussion whatsoever in his expert report of the power headroom report or, indeed, details of ***any*** information that is sent from the mobile station (UE) to the base station. *E.g., id.* at 114:9-120:25. And this is because the base station does ***not*** receive information regarding "a power consumption of the first and second circuitry" or "an idle power consumption of the mobile station," (whether derived from [redacted], or otherwise), and therefore cannot create a control signal that is sent to the mobile station to inform its selection of MIMO or SIMO that depends on such information that it does not receive.

**3. Empire's Apparent Allegation That Power Transmitted From Antennas Delivers Information Regarding Circuit And Idle Power Indirectly Is Unavailing And Contrary To Claim Construction**

Empire appears to suggest that the amount of power transmitted from the antennas of the mobile device indirectly provides information about power consumption of the first and second circuitry and/or idle power consumption of the mobile station. For example, Empire's expert Dr. Akl stated:

[redacted]

[redacted]

Ex. 2, Akl Dep. Tr. at 110:11-21. And in Dr. Akl's expert report, he alleged [redacted] suggesting that transmission power is radiated when the transceivers are idle. Ex. 1, Akl Opening Report ¶287.

Besides the lack of evidentiary support for any such allegations, Empire's arguments also run afoul of the Court's preliminary claim constructions. For example, the Court's preliminary construction of "a power consumption of the first and second circuitry" is "Plain and Ordinary Meaning; NOTE: excludes 'signal energy emitted by the antennas.'" Ex. 1, Akl Opening Report ¶115. In other words, to the extent the base station detects the amount of signal energy (transmitted power) it is receiving from the mobile device, such signal energy is expressly ***excluded*** from the Court's construction of "a power consumption of the first and second circuitry." And indeed, power that is ***transmitted*** cannot be power that is ***consumed*** in the circuitry internal to the mobile device. Thus, the transmit power cannot inform the base station about power consumption of the first and second circuitry. And even if it did, Empire fails to address how or whether the base station uses that information to create a control signal.

And to the extent Empire suggests that transmitted power includes any information about the idle power consumed in the mobile station, such interpretation would also run afoul of the Court's preliminary claim construction. The Court preliminarily construed "an idle power consumption of the mobile station" to mean "power consumed by the first and second circuitry when the mobile station is powered on, enabled for transmitting, ***but waiting to send***." *Id.* In

other words, transmitted power cannot include idle power consumption because idle power is consumed only when the mobile station is ***not transmitting***, i.e., when it is enabled but ***waiting to send***. Thus, the transmit power cannot inform the base station about idle power consumption of the mobile device (or "power consumed by the first and second circuitry when the mobile station is powered on, enabled for transmitting, but waiting to send"). And again, even if it did, Empire fails to address how or whether the base station uses that information to create a control signal.

Thus, [redacted] generated by the base station that Empire alleges to be the claimed "control signal" for indicating selection between MIMO and SIMO cannot depend on "power consumption of the first and second circuitry" or "idle power consumption of the mobile station" because the base station does not receive that information, either directly or indirectly.

## VI. CONCLUSION

Samsung respectfully requests summary judgment of no infringement of the asserted claims of the '120 Patent because there is no genuine dispute of material fact that the accused products do not receive a "control signal," in accordance with which it selects between a MIMO and SIMO mode, wherein the control signal is based, at least in part, on a power consumption of the first and second circuitry, and (for claim 25) an idle power consumption of the mobile station (for claim 25) or a number of users of the mobile station (for claim 29). Empire has not and cannot meet its burden of proof.

Dated: March 17, 2025

Respectfully submitted,

*/s/ Marc J. Pensabene*

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (*Pro Hac Vice*)
California State Bar No. 247738
nwhilt@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Marc J. Pensabene (*Pro Hac Vice*)
New York State Bar No. 2656361
mpensabene@omm.com
Laura Gore (*Pro Hac Vice*)
New York State Bar No. 5172879
lgore@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: 212-326-2000
Facsimile: 212-326-2061

Cameron Westin (*Pro Hac Vice*)
California State Bar No. 290999
cwestin@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

Sorin G. Zaharia (*Pro Hac Vice*)
California State Bar No. 312655
szaharia@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Ctr. 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Melissa R. Smith (Tex. Bar No. 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

*Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 17, 2025.

*/s/ Marc J. Pensabene*
Marc J. Pensabene

[redacted]

[redacted]