[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

EMPIRE TECHNOLOGY DEVELOPMENT LLC,

*Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants*.

Case No. 2:23-cv-00427-JRG-RSP

JURY TRIAL DEMANDED

[redacted]

**PUBLIC VERSION**

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(C) FOR LACK OF CONSTITUTIONAL STANDING**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. STATEMENT OF THE ISSUES TO BE DECIDED .......... 2

III. FACTUAL BACKGROUND .......... 2

A. The MLA .......... 3

B. Empire Has No Rights With Respect to the ’120 Patent .......... 6

C. Empire Either [redacted] or Never Had Any Rights to the Patent .......... 7

I. LEGAL STANDARD .......... 9

A. The Court Must Dismiss for Lack of Subject Matter Jurisdiction if Empire Cannot Meet Its Burden to Demonstrate Constitutional Standing .......... 9

B. Interpretation of License Agreements Under Texas Law .......... 10

II. ARGUMENT .......... 11

A. Empire Lacks Standing to Assert the ’120 Patent Because Its Alleged Predecessor-in-Interest IDMC Never Acquired and Thus Never Conveyed to Empire Any Rights to the Patent .......... 11

B. Empire Lacks Standing to Assert the ’331 Patent Because It Either [redacted] or Never Had Rights to the Patent .......... 14

III. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
625 F.3d 1359 (Fed. Cir. 2010) .......... 9

*Addicks Servs., Inc. v. GGP-Bridgeland, LP*,
596 F.3d 286 (5th Cir. 2010) .......... 10

*Ballew v. Cont'l Airlines, Inc.*,
668 F.3d 777 (5th Cir. 2012) .......... 9, 16

*Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
583 F.3d 832 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011) .......... 9

*Bhandari v. Cadence Design Sys., Inc.*,
485 F. Supp. 2d 747 (E.D. Tex. 2007) .......... 9

*Big E. Ent., Inc. v. Zomba Enter., Inc*,
453 F. Supp. 2d 788 (S.D.N.Y. 2006), *aff'd*, 259 F. App'x 413 (2d Cir. 2008) .......... 15

*Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*,
86 F.4th 667 (5th Cir. 2023) .......... 16, 17

*ESN, LLC v. Cisco Sys., Inc.*,
685 F. Supp. 2d 631 (E.D. Tex. 2009) .......... 9

*FilmTec Corp. v. Allied-Signal, Inc.*,
939 F.2d 1568 (Fed. Cir. 1991) .......... 14

*Horn v. State Farm Lloyds*,
703 F.3d 735 (5th Cir. 2012) .......... 10, 13

*Intell. Techs. LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (Fed. Cir. 2024) .......... passim

*IP Innovation LLC v. Google, Inc.*,
661 F. Supp. 2d 659 (E.D. Tex. 2009) .......... 10

*James Constr. Grp., LLC v. Westlake Chem. Corp.*,
650 S.W.3d 392 (Tex. 2022) .......... 16

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
925 F.3d 1225 (Fed. Cir. 2019) .......... 9

*Lowe v. Eltan, B.V.*,
No. 9:05-CV-38, 2018 WL 7822940 (E.D. Tex. Dec. 12, 2018) .......... 15

*N. Shore Energy, L.L.C. v. Harkins*,
501 S.W.3d 598 (Tex. 2016) .......... 12, 13

*Oaxaca v. Roscoe*,
641 F.2d 386 (5th Cir. 1981) .......... 9

*Ortho Pharm. Corp. v. Genetics Inst., Inc.*,
52 F.3d 1026 (Fed. Cir. 1995) .......... 9

**TABLE OF AUTHORITIES**
**(Continued)**

**Page(s)**

*Paradise Creations, Inc. v. UV Sales, Inc.*,
315 F.3d 1304 (Fed. Cir. 2003) .......... 9, 17, 18

*Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*,
871 F.2d 1082 (Fed. Cir. 1989) .......... 10

*RAD Data Comm'ns, Inc. v. Patton Elecs. Co.*,
882 F. Supp. 351 (S.D.N.Y. 1995) .......... 14

*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .......... 10

*SCD BLK 251 Houston LLC v. Mt. Jefferson Holdings L.L.C.*,
No. 21-20396, 2022 WL 3647285 (5th Cir. Aug. 24, 2022) .......... 12

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
959 F.3d 1065 (Fed. Cir. 2020) .......... 10

*Sun Oil Co. v. Madeley*,
626 S.W.2d 726 (Tex. 1982) .......... 10

*Texas v. Am. Tobacco Co.*,
463 F.3d 399 (5th Cir. 2006) .......... 10, 13

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981) .......... 9, 10

[redacted]

## I. INTRODUCTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(c), Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung") move to dismiss Plaintiff Empire Technology LLC's ("Empire") allegations of infringement for the two patents asserted in this case due to Empire's lack of constitutional standing.

On September 18, 2023, Empire filed this action against Samsung, alleging infringement of U.S. Patent Nos. 8,798,120 ("the '120 Patent") and 8,565,331 ("the '331 Patent") (collectively, the "Asserted Patents"). Dkt. 1 (Complaint). Empire alleges in its Complaint that it is "the exclusive licensee of, and has all substantial rights in, to and under, [the Asserted Patents], including the exclusive right to take all actions necessary to enforce the [Asserted Patents], including the filing of this patent infringement lawsuit.," *Id.* ¶ 29. Empire claims to be an exclusive licensee of both patents based on a Master License Agreement ("MLA") between the University of Texas ("UT") and the Invention Development Management Company ("IDMC"), Empire's alleged predecessor-in-interest. Empire alleges that IDMC later assigned its exclusive license to Empire.

But there is no evidence—and Empire has produced none—showing that IDMC ever received a license to the '120 Patent from UT. The MLA outlined specific steps IDMC had to follow to select an invention and notify UT of that selection to obtain an exclusive patent license. However, IDMC never made such a selection for the '120 Patent. Without rights to the '120 Patent, IDMC could not have assigned any to Empire. And lacking any rights to the '120 Patent, Empire has no standing to sue.

Empire also lacks standing to sue with respect to the '331 Patent because it [redacted] or it never had one. Even if IDMC selected and received a license to the '331 Patent from UT—later assigning it to Empire—Empire [redacted]

[redacted]

[redacted] Empire now claims that [redacted] and/or not performed according to the MLA's notification provisions. But [redacted] constitutes substantial compliance with the MLA's written notice requirement under Texas law. If the [redacted] did not comply with the MLA's notice provisions—as Empire apparently argues—then there is no evidence that IDMC's selection of the '331 Patent for a license complied with those provisions either. Either way, Empire holds no rights to the '331 Patent and lacks standing to assert it in this case.

Empire lacks constitutional standing to sue on the Asserted Patents because it held no rights to them when it filed suit and still holds none. Because Empire's lack of standing deprives the Court of subject matter jurisdiction, Samsung's Motion to Dismiss should be granted.

## II. STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Empire lacks constitutional standing to sue on the '120 Patent because its predecessor never selected that patent as a licensed patent under the Master Licensing Agreement, and therefore never acquired any rights to that patent.

2. Whether Empire lacks constitutional standing to sue on the '331 Patent because it is not licensed to and has no rights to that patent—it either [redacted], or it never acquired any rights to it because there is no proof Empire's predecessor complied with the Agreement's notice provision.

## III. FACTUAL BACKGROUND

Empire filed this patent infringement action on September 18, 2023, asserting the two Asserted Patents. Dkt. 1. Empire alleges that it is an exclusive licensee of both Asserted Patents and has such rights pursuant to the MLA between IDMC and UT. Dkt. 1 (Complaint) ¶¶ 25-28;

[redacted]

Ex. 1[1] (Response to Samsung's Interrogatory No. 3) at 13-14. Empire alleges that it subsequently acquired an exclusive license from IDMC pursuant to an Assignment and Assumption Agreement ("Assignment"). Dkt. 1 ¶ 28; Ex. 2 (Assignment).

### A. The MLA

[redacted]

[redacted]

[redacted]

[redacted]

[1] Numbered Ex.___ refers to exhibits to the Declaration of Sorin G. Zaharia in Support of Samsung's Motion to Dismiss for Lack of Constitutional Standing, filed concurrently herewith.

[redacted]

[redacted]

[redacted]

> [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] As relevant here, UT and IDMC executed Amendment No. 2 to the MLA, effective May 17, 2010 ("Amendment 2"). Ex. 4. Section 2 of Amendment 2 deleted Section 1.3 of the original MLA and replaced it with a provision that included an additional obligation on the part of the Licensee regarding certain Selected Invention Disclosures, stating:

> For each Selected Invention Disclosure, unless otherwise prohibited by applicable law and subject to the cooperation of the applicable Inventors with Licensee and patent prosecution counsel, Licensee will file at least one (1) United States patent application**,** within six (6) months after Licensee's execution of the Invention-Specific Agreement**; provided that if Licensor has already filed a provisional patent application with respect to such Selected Invention Disclosure, then Licensee will file a non-provisional patent application on or prior to the deadline for converting such provisional patent application.** If **any** such filing is prohibited by applicable law, Licensee shall notify Licensor within such six (6) month period **or with respect to provisional patent application, prior to the deadline for such conversion,** and the applicable Selected Invention Disclosure and the Invention disclosed therein (and any resulting Patents) shall no longer be covered by this Agreement or by the applicable Invention-Specific Agreement.

*Id*. at Empire_0093021 [redacted]

Amendment 2 states explicitly that "[e]xcept as specifically amended hereby, the MLA shall remain in full force and effect." *Id*. at Empire_0093022. Thus, [redacted]

[redacted]

### B. Empire Has No Rights With Respect to the '120 Patent

According to the MLA, to become an exclusive licensee to a UT patent, the MLA required IDMC to [redacted]

[redacted]

[redacted]

[redacted]

On June 5, 2017, Empire and IDMC entered into an Assignment and Assumption Agreement ("Assignment"), under which [redacted] Because at the time IDMC held no rights in the '120 Patent, this purported assignment assigned Empire no rights in that patent.

### C. Empire Either [redacted] or Never Had Any Rights to the Patent

Empire produced [redacted]

[redacted]

Even assuming that IDMC was initially licensed to the ’331 Patent—and transferred that license and its rights to Empire through the June 5, 2017 Assignment—Empire [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# I. LEGAL STANDARD

## A. The Court Must Dismiss for Lack of Subject Matter Jurisdiction if Empire Cannot Meet Its Burden to Demonstrate Constitutional Standing

A court lacks subject matter jurisdiction over a cause of action if the plaintiff lacks standing to bring the claim. *Bhandari v. Cadence Design Sys., Inc.*, 485 F. Supp. 2d 747, 750-51 (E.D. Tex. 2007). "It is well settled that questions of standing can be raised at any time." *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 583 F.3d 832, 841 (Fed. Cir. 2009), *aff'd*, 563 U.S. 776 (2011).

"Standing is a constitutional requirement pursuant to Article III and it is a threshold jurisdictional issue." *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010). To establish Article III standing, plaintiff must show "that it suffers an injury which can be fairly traced to the defendant and likely redressed by a favorable judgment." *Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1234 (Fed. Cir. 2019). In a patent case, "the question for the injury-in-fact threshold is whether a party has *an* exclusionary right." *Intell. Techs. LLC v. Zebra Techs. Corp.*, 101 F.4th 807, 814 (Fed. Cir. 2024) (emphasis in original). "Article III standing is a jurisdictional requirement, which is incurable if absent at the initiation of suit." *Id*. (citing *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003)).

"The burden of demonstrating standing falls to Plaintiff." *ESN, LLC v. Cisco Sys., Inc.*, 685 F. Supp. 2d 631, 639 (E.D. Tex. 2009) (quoting *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995)). *See also Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) ("plaintiff must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence."). "[N]o presumptive truthfulness attaches to plaintiff's allegations." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

[redacted]

This Court may consider matters outside of the pleadings in resolving whether subject matter jurisdiction exists. *ESN*, 685 F. Supp. 2d at 639-40 (citing *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981)). When ruling on a motion to dismiss for lack of standing, the court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by disputed facts that the Court has resolved. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *IP Innovation LLC v. Google, Inc.*, 661 F. Supp. 2d 659, 662 (E.D. Tex. 2009); *see also Williamson*, 645 F.2d at 413 (where the court's jurisdiction[2] is at issue, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case").

**B. Interpretation of License Agreements Under Texas Law**

Patent license agreements are governed by ordinary principles of state contract law. *Power Lift, Inc. v. Weatherford Nipple-Up Sys., Inc.*, 871 F.2d 1082, 1085 (Fed. Cir. 1989). Under Texas law, the Court must "first look to the plain language of the contract to determine whether it is ambiguous." *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012) (applying Texas law). "In Texas, whether a contract is ambiguous is a question of law." *Id.* (citing *Addicks Servs., Inc. v. GGP-Bridgeland*, LP, 596 F.3d 286, 294 (5th Cir. 2010)). A contract is ambiguous if "its plain language is amenable to more than one reasonable interpretation." *Id.* (citation omitted). If a contract is unambiguous, the Court must apply its plain meaning and enforce it as written. *Id.* (citing *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006)). "Courts interpreting unambiguous contracts are confined to the four corners of

[2] At issue here is constitutional rather than statutory standing. *See Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1071 (Fed. Cir. 2020) (addressing sufficiency of rights as statutory challenges). The question here is whether Plaintiff Empire "has *an* exclusionary right." *Intell. Tech. v. Zebra*, 101 F.4th at 814 (distinguishing constitutional and statutory challenges).

[redacted]

the document, and cannot look to extrinsic evidence to create an ambiguity." *Am. Tobacco*, 463 F.3d at 407 (citing *Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 732-33 (Tex. 1982)).

## II. ARGUMENT

To have constitutional standing to sue, Empire had to hold at least "an exclusionary right" in the asserted patents at the time it filed suit. *Intell Tech. v. Zebra*, 101 F.4th at 814. It did not. Empire cannot meet its burden to show standing because it cannot show it possessed *any* rights—let alone an exclusionary right—in either one of the patents when it filed this case.

### A. Empire Lacks Standing to Assert the '120 Patent Because Its Alleged Predecessor-in-Interest IDMC Never Acquired and Thus Never Conveyed to Empire Any Rights to the Patent

Empire did not—and does not—possess any rights in the '120 Patent, let alone an exclusionary right. The record contains no evidence supporting Empire's claim that it is an exclusive licensee to the '120 Patent, as alleged in the Complaint. Dkt. 1 ¶¶ 25-28. Empire relies on the MLA between UT and IDMC, Empire's predecessor-in-interest, to assert that it is an exclusive licensee by virtue of an assignment agreement executed with IDMC in 2017. *Id.* ¶ 28; Ex. 3 (MLA). But while Empire's assignment agreement with IDMC purports to transfer all of IDMC's patent rights to Empire, IDMC held no rights concerning the '120 Patent at the time.

First, IDMC acquired no rights to the '120 Patent under the MLA. The MLA required IDMC to [redacted]

[redacted]

[redacted] Therefore, the record contains no evidence that IDMC obtained an exclusive license or any other right to the '120 Patent under the MLA, and thus Empire could not have obtained such rights from IDMC.

Second, there is no evidence that UT and IDMC entered into any agreement outside of the MLA granting IDMC rights to the '120 Patent. Although [redacted]

[redacted] Under Texas law, "an option contract at bottom requires an enforceable underlying contract." *SCD BLK 251 Houston LLC v. Mt. Jefferson Holdings L.L.C.*, No. 21-20396, 2022 WL 3647285, at *4 (5th Cir. Aug. 24, 2022). First, [redacted] *See* Ex. 8 at UTAUS001018; *SCD BLK*, 2022 WL 3647285, at *4 (holding that when "the underlying 'contract' is simply more negotiations," "[t]he agreement lack[ed] the material terms necessary for an enforceable agreement and is instead an unenforceable agreement to agree.").

[redacted]

Second, "[a]n option agreement does not pass title or convey an interest in property." *N. Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 606 (Tex. 2016). Thus, even if the option contract is valid, the underlying agreement "is not binding until accepted." *Id.* Here, there is no evidence that [redacted] i.e., that UT and IDMC executed a contract granting IDMC a license or any other rights to the '120 Patent. *See id.* As the Federal Circuit recently held in a case governed by Texas contract law, an "unexercised option to assign . . . was not a . . . divestment of [patent owner's] exclusionary rights."). *Intell. Tech v. Zebra*, 101 F.4th at 817. Similarly here, the [redacted] did not divest any rights from UT and did not confer any rights to IDMC. *See id.*

To the extent Empire argues that Amendment 2 to the MLA created an alternative mechanism for IDMC to license an invention under the MLA—as [redacted]—Empire is incorrect. *See* Ex. 5 (Rudersdorf Tr.) at 90:14-92:12. While Amendment 2 modified Section 1.3 of the MLA, crucially, it [redacted] stating: "[e]xcept as specifically amended hereby, the MLA shall remain in full force and effect." Ex. 4 at Empire_0093022. Further, Ms. Rudersdorf [redacted]

Empire's apparent interpretation of Amendment 2 contradicts Texas contract law principles. The MLA's terms are unambiguous and thus its plain language governs, requiring the Court to "apply its plain meaning" and construe it "as written." *Horn v. State Farm*, 703 F.3d at 738. Because the MLA is unambiguous, the Court "cannot look to extrinsic evidence to create an ambiguity." *Am. Tobacco*, 463 F.3d at 407.

[redacted]

In modifying Section 1.3 of the MLA, Amendment 2 imposed a new obligation on the Licensee: ***if*** IDMC selected an invention, and a provisional patent application for that invention had already been filed by UT, IDMC had to file a non-provisional application by the conversion deadline. Ex. 4 (Amendment 2) at Empire_0093021. The Amendment explicitly applies to "each Selected Invention Disclosure." *Id.* It does not introduce [redacted] Thus, Amendment 2 did not grant IDMC any rights to an invention it did not select as required under the MLA.

There is thus no evidence that IDMC ever acquired any rights to the '120 Patent. Accordingly, any attempt by IDMC to transfer rights to the patent to Empire via the 2017 Assignment Agreement is a nullity. *See, e.g.*, *FilmTec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568, 1572 (Fed. Cir. 1991) (concluding that if the inventor had previously assigned the patent-in-suit, "then [the inventor] had nothing to give to [plaintiff] FilmTec and his purported assignment to FilmTec is a nullity"); *RAD Data Comm'ns, Inc. v. Patton Elecs. Co.*, 882 F. Supp. 351, 353 (S.D.N.Y. 1995) (dismissing a claim because the "records show that on the date of the purported assignment of the Develcon patents by Develcon to plaintiff, Develcon had nothing to assign.. . . the purported assignment from Develcon to plaintiff of the Develcon patents is a nullity.").

Because Empire had no rights to the '120 Patent when it filed suit, it lacks constitutional standing and its infringement claim for the '120 Patent should be dismissed.

### B. Empire Lacks Standing to Assert the '331 Patent Because It Either [redacted] or Never Had Rights to the Patent

At the time it filed suit, Empire also lacked constitutional standing concerning the '331 Patent. To the extent Empire received any rights to the '331 Patent through the 2017 assignment

[redacted]

from IDMC, it [redacted] Without an exclusionary right to the patent at the beginning of the suit, Empire's infringement claim based on the '331 Patent should also be dismissed. *See Intell. Tech. v. Zebra*, 101 F.4th at 814.

The uncontroverted evidence shows that [redacted]

[redacted]

Ms. Rudersdorf asserted at her deposition that [redacted] But this is not credible and, more importantly, fails to satisfy Empire's burden, given the written record. *See Lowe v. Eltan, B.V.*, No. 9:05-CV-38, 2018 WL 7822940, at *7 (E.D. Tex. Dec. 12, 2018) (according testimony "little weight because not only is it self-serving, but it also contradicts and is unsupported by the other record evidence"); *Big E. Ent., Inc. v. Zomba Enter.*,

[redacted]

*Inc,* 453 F. Supp. 2d 788, 798 (S.D.N.Y. 2006), *aff'd*, 259 F. App'x 413 (2d Cir. 2008) ("assertions which are contradictory and unsupported by documentary evidence . . . failed to . . . establish . . . standing."). If this were an [redacted] But neither Empire nor UT has produced subsequent communications or other evidence to support [redacted] Under the MLA's explicit terms, [redacted] Thus, Empire cannot "prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence." *Ballew*, 668 F.3d at 781.

Empire might contend — [redacted] was ineffective because [redacted] This argument lacks merit, however, because the [redacted] substantially complied with the MLA. "The doctrine of substantial compliance excuses a party's deviations from a contractual requirement . . . if those deviations do not severely impair the purpose of the requirement." *Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 678 (5th Cir. 2023) (applying Texas law). Specifically, "under Texas law, a party's substantial compliance with contractual notice conditions is sufficient to satisfy those conditions." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 396 (Tex. 2022).

*Elmen Holdings* is instructive. There, a lease between the parties, governed by Texas law, required all notices "[be] delivered in person or . . . posted by certified or registered mail."

[redacted]

86 F.4th at 679. The defendant was notified by email of non-payment of royalties, but he argued that "the email could not serve as notice of non-payment because, contrary to [the lease provision], it was sent as an email." *Id.* The Fifth Circuit held that "as a matter of Texas law . . . [the] email fulfilled the 'purpose of the [notice] requirement' and substantially complied with . . . [the] lease," because it was "received and understood" and "unequivocally identified the missing royalty payment." *Id.* at 679-80. In so holding, the court noted that "Texas law is clear that notice substantially complies with the terms of a contract even when it is not delivered in the precise manner the contract contemplates." *Id.* at 679.

Similarly, here, Empire's [redacted] sufficiently provided notice and substantially complied with the MLA's notice provisions, even though the MLA specified [redacted] *See* Ex. 3 § 10.8; *Elmen Holdings*, 86 F.4th at 679-80.

Moreover, Empire cannot selectively invoke the written notice provision of the MLA only when it is to its advantage. If Empire argues that [redacted] then IDMC's selection of the '331 Patent for a license is likewise ineffective. Empire cannot prove that [redacted] Either way, Empire cannot meet it burden of showing that it has any rights to the '331 Patent.

Based on the uncontroverted evidence, Plaintiff Empire does not possess ***any*** rights—let alone exclusionary rights—in the '120 and '331 Patents, and thus lacks constitutional standing to

[redacted]

sue for infringement. The case should therefore be dismissed. *See Paradise Creations*, 315 F.3d at 1310 (holding that a plaintiff with "no enforceable rights whatsoever in the patent at the time it filed suit . . . lacked a cognizable injury necessary to assert standing under Article III of the Constitution").

## III. CONCLUSION

For all of the foregoing reasons, Samsung's motion to dismiss Plaintiff Empire's allegations of infringement of the '120 and '331 Patents should be granted. The Court should dismiss this case under Fed. R. Civ. P. 12(b)(1) and 12(c) for lack of constitutional standing.

[redacted]

Dated: March 17, 2025

Respectfully submitted,

*/s/ Marc J. Pensabene*

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (*Pro Hac Vice*)
California State Bar No. 247738
nwhilt@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Marc J. Pensabene (*Pro Hac Vice*)
New York State Bar No. 2656361
mpensabene@omm.com
Laura Gore (*Pro Hac Vice*)
New York State Bar No. 5172879
lgore@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: 212-326-2000
Facsimile: 212-326-2061

Cameron Westin (*Pro Hac Vice*)
California State Bar No. 290999
cwestin@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

Sorin G. Zaharia (*Pro Hac Vice*)
California State Bar No. 312655
szaharia@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Ctr. 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Melissa R. Smith (Tex. Bar No. 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

[redacted]

***Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 17, 2025.

*/s/ Marc J. Pensabene*
Marc J. Pensabene

[redacted]

[redacted]