**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

EMPIRE TECHNOLOGY DEVELOPMENT LLC,

*Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants*.

Civil Action No. 2:23-cv-00427-JRG-RSP

JURY TRIAL DEMANDED

[redacted]

**PUBLIC VERSION**

**DEFENDANTS' MOTION TO STRIKE AND EXCLUDE THE OPINIONS OF PLAINTIFF'S EXPERT DAWN RICE HALL**

**Table of Contents**

I. INTRODUCTION .......... 1
II. MS. HALL'S 50/50 ALLOCATION .......... 2
III. LEGAL STANDARD .......... 3
IV. MS. HALL'S RELIANCE ON A DISCREDITED APPORTIONMENT METHODOLOGY IS IMPROPER AND RENDERS HER OPINION UNRELIABLE .......... 4
V. CONCLUSION .......... 8

**Cases**

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020)........................................................................................ 4

*Biscotti Inc. v. Microsoft Corp.*,
No. 2:13-CV-01015-JRG-RSP, 2017 WL 2536962 (E.D. Tex. May 18, 2017)........................ 8

*Carnegie Mellon Univ. v. Marvell Tech. Grp., Ltd.*,
807 F.3d 1283 (Fed. Cir. 2015)........................................................................................ 5

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018)........................................................................................ 5

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)...................................................................................................... 4, 8

*Guile v. United States*,
422 F.3d 221 (5th Cir. 2005) ........................................................................................... 3

*Knight v. Kirby Inland Marine Inc.*,
482 F.3d 347 (5th Cir. 2007) ........................................................................................... 3

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)......................................................................................................... 3

*Nat'l Oilwell DHT, L.P. v. Amega W. Servs.*, LLC,
No. 2-14-1020, 2020 WL 1890631 (E.D. Tex. Apr. 16, 2020) ............................................ 3

*Omega Pats., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ......................................................................................... 4

*Personalized Media Commc'ns, LLC v. Apple Inc.*,
No. 2:15-cv-01366-JRG-RSP, 2021 WL 969271 (E.D. Tex. Mar. 14, 2021) ........................... 5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
904 F.3d 965 (Fed. Cir. 2018)........................................................................................... 4

*Uniloc USA, Inc. v. Microsoft Corp.*,
632 F.3d 1292 (Fed. Cir. 2011)...................................................................................... 4, 8

*VirnetX, Inc. v. Cisco Sys., Inc.*,
767 F.3d 1308 (Fed. Cir. 2014)................................................................................... 2, 5, 6

*Viterbo v. Dow Chem. Co.*,
826 F.2d 420 (5th Cir. 1987) ........................................................................................... 3

## I. <u>INTRODUCTION</u>

Plaintiff's damages expert Dawn Rice Hall claims to have apportioned for the value of the accused Samsung products attributable to the patented technology of U.S. Patent Nos. 8,798,120 and 8,565,331 (the "Asserted Patents" or "Patents-in-Suit") and then evenly split the allocated profits between the parties. But the conclusion in her February 10, 2025 report that the parties would have "allocated 50% of Samsung's benefit from use of the patented technology to Empire," Ex. 1[1] (Hall Damages Report) ¶ 156(n), is so fundamentally inconsistent with binding Federal Circuit authority that presenting it to the jury would amount to legal error.

Without the benefit of any analysis, Ms. Hall summarily concludes that the parties would have "allocated 50% of Samsung's benefit from use of the patented technology to Empire." *Id.* Even when given an opportunity to explain her analysis, Ms. Hall could not point to any evidence to establish that the 50/50 profit split was appropriate and non-arbitrary. Instead, she conceded that she could not identify any evidence Samsung had ever agreed to a 50/50 profit split, any studies or industry reports indicating that a 50/50 profit split is typical, or any evidence that supposedly equal bargaining power would necessarily result in an even division of the allocated profits. *Id.* at 158:1-160:3. Instead, Ms. Hall acknowledged that she "didn't really see any quantitative metrics or ways in order to apportion that other than to consider the qualitative factors that suggest that there's really no -- it didn't give one party a leg up over the other." Ex. 2 (Hall Dep. Tr.) at 157:20-24. Accordingly, Ms. Hall defaulted to her opening assumption that the parties—Samsung, a global leader in consumer electronics, and Empire, [redacted]—would have equal "negotiating power" and would

[1] All references to numbered "Ex. ___" refer to the exhibits to the declaration of Sorin G. Zaharia in Support of Defendants' Motion To Strike and Exclude the Opinions of Plaintiff's Expert Dawn Rice Hall, filed concurrently herewith.

have agreed to a 50/50 split of profits. Hall Damages Report ¶ 156(n); Hall Dep. Tr. at 153:21-24. Though not calling it by name, this assumed 50/50 split of profits is known in economic theory as the "Nash Bargaining Solution," and it has been unequivocally rejected by the Federal Circuit as a permissible basis for a damages opinion. *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1332 (Fed. Cir. 2014).

This is not a mere credibility issue that can be left to cross-examination. Controlling Federal Circuit precedent requires that Ms. Hall's opinion be excluded.

## II. MS. HALL'S 50/50 ALLOCATION

Ms. Hall's damages approach is improper and unsubstantiated. At the outset, Ms. Hall assumes that "[t]he hypothetical negotiators would consider the incremental benefit attributable to the patents-in-suit as opposed to the non-patented elements of the Accused Products to isolate the value of the infringing features." Hall Damages Report ¶ 156(l). Ms. Hall then takes the price differential between a non-accused product—the Galaxy S9—and a seemingly random accused product—the Galaxy S20 5G—and blindly relies on Dr. Akl's analysis of various design elements between the Galaxy S9 and the Galaxy S20 5G to apportion the incremental benefits attributable to the Asserted Patents.[2] Hall Damages Report ¶ 156(m). Then, Ms. Hall assumes that the parties would "allocate 50% of Samsung's benefit from use of the patented technology to Empire." *Id.* ¶ 156(n).

Ms. Hall offers no evidence to support her proposed 50/50 split. Instead, Ms. Hall simply contends that "[t]he factors considered by both parties do not provide either with more negotiating

[2] Although not the subject of this motion, Dr. Akl's analysis is similarly subjective and arbitrary. Dr. Akl fails to adequately justify his selection of "core features" for comparing the Galaxy S9 and Galaxy S20 5G devices, his assignment of equal weight to each of his selected "core features," or his assignment of equal weight to each of the various design elements and changes within each of his selected "core features." Ex. 3 (Akl Opening Report) ¶¶ 436-447.

power over the other." Hall Damages Report ¶ 156(n). Ms. Hall reiterated this belief during her deposition: "I believe bargaining power assumes that they would yield into the midpoint. If it wasn't equal bargaining power, then it would move off the midpoint." Hall Dep. Tr. at 155:25-156:2. However, when asked about the justification for this belief, Ms. Hall acknowledged that she "didn't really see any quantitative metrics or ways in order to apportion that other than to consider the qualitative factors that suggest that there's really no -- it didn't give one party a leg up over the other." Hall Dep. Tr. at 157:20-24. The 50/50 split, however, is an arbitrary assumption. Ms. Hall conceded that she could not identify any evidence Samsung had ever agreed to a 50/50 profit split, any studies or industry reports indicating that a 50/50 profit split is typical, or any evidence that supposedly equal bargaining power would necessarily result in an even division of the allocated profits. *Id.* at 158:1-160:3. Ms. Hall defaulted to a generic assumption that the parties would have equal "negotiating power" and, thus, would have agreed to a 50/50 split of profits. Hall Damages Report ¶ 156(n); Hall Dep. Tr. at 153:21-24.

## III. LEGAL STANDARD

An expert's testimony "must be reliable at each and every step or else it is inadmissible," including "the methodology, the facts underlying the expert's opinion, [and] the link between the facts and the conclusion …." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007). The Court is not required to "admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Nat'l Oilwell DHT, L.P. v. Amega W. Servs.*, LLC, No. 2:14-1020, 2020 WL 1890631, at *4 (E.D. Tex. Apr. 16, 2020) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999)). Where the opinion "is fundamentally unsupported, then it offers no expert assistance to the jury." *Guile v. United States*, 422 F.3d 221, 227 (5th Cir. 2005) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). In such cases, there is "simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S.

136, 146 (1997). "[O]ne major determinant of whether an expert should be excluded under *Daubert* is whether he has justified the application of a general theory to the facts of the case," and "[i]f the patentee fails to tie the theory to the facts of the case, the testimony must be excluded." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1316, 1315 (Fed. Cir. 2011) (rejecting a 25% rule of thumb as an arbitrary, general rule, unrelated to the facts of the case).

## IV. MS. HALL'S RELIANCE ON A DISCREDITED APPORTIONMENT METHODOLOGY IS IMPROPER AND RENDERS HER OPINION UNRELIABLE

In reaching her final opinion on a reasonable royalty, Ms. Hall applies a 50/50 split of the incremental profit she attributed to the Asserted Patents. But she fails to cite any evidence that Samsung would ever agree to an allocation of 50% of the calculated incremental profit. Hall Damages Report ¶ 156(n); Hall Dep. Tr. at 158:1-160:3. Instead, Ms. Hall applies this even split by simply assuming that the parties would "allocate 50% of Samsung's benefit from use of the patented technology to Empire." Hall Damages Report ¶ 156(n). But this is unsubstantiated *ipse dixit* contrary to controlling Federal Circuit authority and must be excluded.

"The patentee has the burden of proving damages." *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1377 (Fed. Cir. 2021). And because "[a] patentee is only entitled to a reasonable royalty attributable to the infringing features," an apportionment analysis generally requires determining a royalty base (i.e., the value of the patented feature) to which a royalty rate (i.e., split of incremental profits) will be applied. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). However, the royalty rate analysis must be "tied to the facts of the case" using comparable licenses, witness testimony, or other relevant evidence. For example, courts have authorized the use of comparable licenses supported by technical and corporate witness testimony (*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373 (Fed. Cir. 2020)), expert testimony and a party's internal documents and analysis (*Carnegie*

*Mellon Univ. v. Marvell Tech. Grp., Ltd.*, 807 F.3d 1283 (Fed. Cir. 2015)), and a factor-based analysis supported by peer-reviewed authority (*Personalized Media Commc'ns, LLC v. Apple Inc.*, No. 2:15-cv-01366-JRG-RSP, 2021 WL 969271 (E.D. Tex. Mar. 14, 2021)). And even when the *Georgia-Pacific* factors are used to determine a royalty rate, each factor must sufficiently tie the facts of the case to the proposed royalty rate. *See Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prods. Grp., LLC*, 879 F.3d 1332, 1349-51 (Fed. Cir. 2018).

Here, Ms. Hall applies an even 50/50 split of allocated profit as part of calculating her final proposed royalty rate. But she offers no evidence to support that 50/50 split. Instead, Ms. Hall simply contends that "[t]he factors considered by both parties do not provide either with more negotiating power over the other." Hall Damages Report ¶ 156(n). During her deposition, Ms. Hall even conceded that she "didn't really see any quantitative metrics or ways in order to apportion that other than to consider the qualitative factors that suggest that there's really no -- it didn't give one party a leg up over the other." Hall Dep. Tr. at 157:20-24. Indeed, she admitted that she could not identify any evidence Samsung had ever agreed to a 50/50 profit split, any studies or industry reports indicating that a 50/50 profit split is typical, or any evidence that supposedly equal bargaining power would necessarily result in an even division of the allocated profits. *Id.* at 158:1-160:3.

Without any facts supporting the assumed 50/50 allocation, the proposed split is nothing but "an inappropriate 'rule of thumb.'" *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1332 (Fed. Cir. 2014). Although Ms. Hall does not explicitly call her proposed split by its name, such a 50/50 split of profits is commonly referred to as the "Nash Bargaining Solution," which has been unequivocally rejected by the Federal Circuit. Indeed, in *VirnetX, Inc. v. Cisco Sys., Inc.*, the Federal Circuit rejected a damages methodology in which the damages expert assumed a 50/50

profit split that was not sufficiently "tied to the facts of the case," and found that the underlying Nash Bargaining Solution "assert[ed] nothing about what situations in the real world fit those premises." *Id.* The *VirnetX* court found that "even if an expert could identify all of the factors that would cause negotiating parties to deviate from the 50/50 baseline in a particular case, the use of this methodology would nevertheless run the significant risk of inappropriately skewing the jury's verdict." *Id.* at 1333. Accordingly, the court vacated the damages award and remanded for further proceedings consistent with the court's opinion. *Id.* at 1334.

This Court has also specifically precluded an expert from testifying because the expert's analysis simply "assume[s] the parties would start the hypothetical negotiation from a 50/50 baseline and then deviate[] from this baseline according to the parties' relative bargaining power." *Biscotti Inc. v. Microsoft Corp*., No. 2:13-CV-01015-JRG-RSP, 2017 WL 2536962, at *4 (E.D. Tex. May 18, 2017). But that is precisely what Ms. Hall does here. During her deposition, Ms. Hall acknowledged that she assumed that the parties would start from a 50/50 baseline: "I believe bargaining power assumes that they would yield into the midpoint. If it wasn't equal bargaining power, then it would move off the midpoint." Hall Dep. Tr. at 155:25-156:2. Yet, Ms. Hall does not identify any evidence that supposedly equal bargaining power would result in an even division of the profits, nor does she identify any evidence to establish that the "midpoint" was appropriate and non-arbitrary. *See id.* at 158:1-160:3. Contrary to established authority, Ms. Hall simply assumes the parties would start from a 50/50 baseline or "midpoint"—as she called it.

Nor can plaintiff or Ms. Hall rely on other parts of her report to save her impermissible 50/50 split. In her report, Ms. Hall identifies "some of the key variables influencing the hypothetical negotiation between Empire and Samsung." Hall Damages Report ¶ 156. But her report fails to explain how these variables lead to her proposed 50/50 profit split. Instead, she

simply describes these variables, which resemble the *Georgia-Pacific* factors, and concludes without any analysis that they establish that the parties have equal bargaining power. For example, when asked what factors she relied on to determine her 50/50 profit split, Ms. Hall pointed to "all the factors starting in point A on [page] 66 all the way through N," but then admitted that "there really wasn't any factor that would give either one greater bargaining position." Hall Dep. Tr. at 154:2-5; *see* Hall Damages Report ¶ 156(a)-(n). Ms. Hall specifically considered "the presumption of validity of infringement, what the relationship between the parties are, lack of agreements that are comparable," "[n]o non-infringing alternatives, valuing what the incremental differences or incremental benefit is of the inventive feature, the importance of Samsung's business," and "[t]he market demand for smartphones and 5G-enabled devices," but then concluded that "there really wasn't anything that got you off the midpoint." Hall Dep. Tr. at 154:2-23. Ms. Hall summarily concludes that "[t]he parties would consider all the … factors … and allocate 50% of Samsung's benefit from use of the patented technology to Empire." Hall Damages Report ¶ 156(n).

Likely trying to avoid the obvious conclusion that she merely assumed a 50/50 split, Ms. Hall superficially contends that "there really wasn't any analytical data points, if you will, or any factor that would suggest that [the parties] wouldn't equally yield and come to an agreement at the midpoint." *See id.* at 157:10-13. But this is no different than the clearly prohibited approach of "assum[ing] the parties would start the hypothetical negotiation from a 50/50 baseline and then deviat[ing] from this baseline according to the parties' relative bargaining power." *Biscotti Inc.*, 2017 WL 2536962, at *4. As the Federal Circuit recognized in *Exmark Mfg. Co. Inc.*, 879 F.3d at 1351, it is improper for an expert to "merely address[] the *Georgia-Pacific* factors in light of the facts and then pluck[] the … royalty rate out of nowhere." "Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case

nevertheless results in a fundamentally flawed conclusion." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1317 (Fed. Cir. 2011). Here, Ms. Hall's proposal does not even deviate from the baseline but adopts it as the allocation in reaching her proposed royalty rate. Under controlling case law, her conclusions are therefore arbitrary and unreliable and should be excluded. *See Gen. Elec. Co.*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the [FRE] requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.").

## V. CONCLUSION

Ms. Hall relies on an economically improper methodology that has been repeatedly and firmly rejected. In so doing, Ms. Hall failed to consider whether, in the real world, Samsung would have agreed to give Empire a windfall of 50% of the apportioned profit, and there is no evidence that Samsung ever has done so, or would do so, in a licensing negotiation. For all of the foregoing reasons, Ms. Hall's damages opinions for each of the Asserted Patents should be excluded.

Dated: March 17, 2025

Respectfully submitted,

*/s/ Marc J. Pensabene*

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (*Pro Hac Vice*)
California State Bar No. 247738
nwhilt@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Marc J. Pensabene (*Pro Hac Vice*)
New York State Bar No. 2656361
mpensabene@omm.com
Laura Gore (*Pro Hac Vice*)
New York State Bar No. 5172879
lgore@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: 212-326-2000
Facsimile: 212-326-2061

Cameron Westin (*Pro Hac Vice*)
California State Bar No. 290999
cwestin@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

Sorin G. Zaharia (*Pro Hac Vice*)
California State Bar No. 312655
szaharia@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Ctr. 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Melissa R. Smith (Tex. Bar No. 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

***Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 17, 2025.

*/s/ Marc J. Pensabene*
Marc J. Pensabene

**CERTIFICATE OF CONFERENCE**

I hereby certify that counsel for Samsung and Empire complied with the meet and confer requirement specified in E.D. Tex. Local Rule CV-7(h) via conference call on March 16, 2025. The participants in the conference call were Nathaniel Browand, Andrew Lichtenberg, and Elizabeth DeRieux on behalf of Empire and Nicholas Whilt and Sorin Zaharia on behalf of Samsung. No agreement was reached because Empire refused to agree to remove opinions in its expert report. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve. This motion is opposed.

*/s/ Sorin G. Zaharia*
Sorin G. Zaharia

[redacted]

[redacted] ____________________