[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EMPIRE TECHNOLOGY DEVELOPMENT LLC<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.<br><br>Defendants. | Case No. 2:23-cv-00427-JRG-RSP |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF NO <u>INFRINGEMENT OF U.S. PATENT NO. 8,798,120</u>**

[redacted]

**TABLE OF CONTENTS**


INTRODUCTION ..... 1

RESPONSE TO SAMSUNG'S ISSUE STATEMENT ..... 2

RESPONSE TO "STATEMENT OF UNDISPUTED MATERIAL FACTS" ..... 3

COUNTERSTATEMENT OF FACTS – SAMSUNG'S ACCUSED PRODUCTS INCLUDE THE CHALLENGED LIMITATIONS OF THE ASSERTED CLAIMS ..... 4

I. The '120 Patent's Central Embodiments ..... 4

II. Empire's Expert, Dr. Akl, Confirms Infringement ..... 6

III. Samsung's Expert, Dr. Rangan, Confirms Infringement ..... 9

LEGAL STANDARDS ..... 10

ARGUMENT ..... 10

I. Samsung's "Control Signal" and "Mode Selection" Non-Infringement Arguments Require Adding Limitations That Are Not Recited in the Asserted Claims ..... 11

A. The Asserted Claims Do Not Recite a Base Station or How a Base Station Selects Transmission Mode ..... 11

B. Empire Presents Sufficient Evidence to Show the Accused Products Are Configured To Receive a Control Signal and To Select a Transmission Mode in Accordance with the Control Signal ..... 12

II. Samsung's "Circuit Power" and "Idle Power" Non-Infringement Arguments Also Require Changing the Claim Language ..... 12

A. The Asserted Claims Do Not Require the Ultra-Narrow Limitations Samsung Suggests ..... 12

B. Empire Presents Sufficient Evidence to Show the Control Signal Is Based at Least in Part on Circuit Power Consumption, Idle Power Consumption, and Number of Users ..... 13

III. Samsung's Claim Construction Argument Is Mistaken ..... 14

CONCLUSION ..... 15

[redacted]

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................10, 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....................10

*Staton Techiya LLC v. Samsung Elecs. Co., Ltd.*,
No. 2:21-cv-00413-JRG-RSP, 2023 WL 8443449 (E.D. Tex. Nov. 6, 2023)....................10

**Rules**

Fed. R. Civ. P. 56....................10

[redacted]

## INTRODUCTION

Samsung's motion ignores the voluminous evidentiary record of infringement, the claim construction phase of this litigation, and the central embodiments of U.S. Patent No. 8,798,120 (the "'120 Patent"). Samsung's three arguments against infringement fail.

*First*, Samsung's view that there is "no evidence of how any base station prepares the [claimed control signal] or what criteria the base station uses to select between MIMO and SIMO" is irrelevant to the question of infringement and is factually incorrect. *Cf.* Defs.' Mot. at 1, ECF No. 99. The '120 Patent's claims 25 and 29 (the "Asserted Claims") require that the mobile station's "controller is configured to receive a control signal and, in accordance with the control signal, to select between" MIMO and SIMO modes. How a base station prepares the control signal and the "criteria" for the base station's mode selection is simply not a part of the Asserted Claims. Nevertheless, Empire offers evidence on these points *and* on points actually material in view of the claim requirements.

*Second*, Samsung's assertion that "it is not even possible for the base station to base its [redacted] . . . on power consumption of the first and second circuitry in the mobile device or the idle power consumption of the mobile station because the base station never ***receives*** such data from the mobile station" also misreads the Asserted Claims and is factually incorrect. *Cf. id.* at 9 (emphasis added). There is no base station element in the Asserted Claims and certainly no requirement that any measurements of the power consumption of the first and second circuitry and idle power consumption must be ***received*** by a base station. Samsung's attempt to impose such requirements is contrary to the claim construction phase of this case and contrary to the intrinsic record, not least because the '120 Patent provides that the base station may approximate the power consumption of the circuitry. Nevertheless, the evidence shows that power

[redacted]

consumption of the first and second circuitry, and idle power consumption, are bases on which [redacted] (including MIMO/SIMO mode information) is generated. That is sufficient to satisfy, or at least raises a genuine dispute as to whether it satisfies, the "based, at least in part, on" claim text.

*Third*, Empire's contentions do not "run afoul of" the Court's claim constructions because Empire is not equating power consumption of the circuitry with "signal energy." *Cf. id.* at 12. The evidence shows that the accused [redacted] Thus, the power consumption of the circuitry is based on the transmit power, substantiating the Court's observation that "that there could be different ways of measuring it." Ex. 1 (*Markman* Hr'g Tr.) at 20:4-22:19.[1] The transmit power is the basis for information sent to the base station by the Accused Products, which in turn enables the base station to approximate the power consumption of the circuitry. And as to idle power, the evidence also shows that [redacted], and that [redacted]

In short, Samsung practices every element of the Asserted Claims in exactly the way the '120 Patent describes embodiments of the inventions.

**<u>RESPONSE TO SAMSUNG'S ISSUE STATEMENT</u>**

Empire disagrees with Samsung's statement of the issue. The proper statement of the issue is: Whether there is a genuine issue of a material fact that the Accused Products include a controller configured to receive a control signal that is (i) for claim 25, based, at least in part, on a power consumption of the first and second circuitry, and based, at least in part, on the idle power consumption of the mobile station, or (ii) for claim 29, based, at least in part, on a power

---

[1] Exhibits are attached to the Declaration of Nathaniel Browand, submitted herewith.

[redacted]

consumption of the first and second circuitry, and based, at least in part, on a number of users of the communications system.

**<u>RESPONSE TO "STATEMENT OF UNDISPUTED MATERIAL FACTS"</u>**

1-4. Not disputed.

5. Disputed, and not Rule 56 "facts." The Court's preliminary constructions did not state that "a power consumption of the first and second circuity" would "exclude 'signal energy emitted by the antennas,'" as Samsung argues. The Court's preliminary (and now final) construction of "a power consumption of the first and second circuity" is plain and ordinary meaning, and the Court stated the bracketed words in the preliminary construction clarifies that although power consumption of the circuitry is not the same as signal energy, the former could be measured using the latter. *See* Ex. 1 at 20:4-22:19; ECF No. 117 at 11.

6. Disputed, because Samsung mischaracterizes Dr. Akl's testimony. The cited testimony does not state, as Samsung argues, that the base station alone "configures" the phone's communication modes. Rather, Dr. Akl testified that the [redacted] Ex. 3 (Akl Dep. Tr.) at 105:2-106:3.

7-10. Disputed, and not material "facts" for purposes of summary judgement at least because the Asserted Claims do not require (i) a base station, (ii) "how the base station is to make the selection between MIMO and SIMO transmission mode," (iii) "how any base station operates," (iv) an analysis of base station source code or (v) "report[ing] any circuit power consumption or idle power consumption to the base station." Defs.' Mot. ¶¶ 7-9; *see also infra* at Argument §§ I(A), II(A), incorporated herein by reference. Empire provides substantial and sufficient evidence that the controller in Samsung's Accused Products is configured to receive a control signal and, in

[redacted]

accordance with the control signal, to select between MIMO mode and SIMO mode as required by the Asserted Claims. Ex. 4 (Akl Report) ¶¶ 150, 153, 156, 159, 162, 165, 262; Ex. 3 at 18:8-19:3; *see also infra* at Argument §§ I(B), II(B), incorporated herein by reference.

**COUNTERSTATEMENT OF FACTS – SAMSUNG'S ACCUSED PRODUCTS INCLUDE THE CHALLENGED LIMITATIONS OF THE ASSERTED CLAIMS**

## I. The '120 Patent's Central Embodiments

The '120 Patent describes two transmit modes: multiple-input multiple-output mode ("MIMO") and single-input multiple-output mode ("SIMO"). Ex. 5 ('120 Patent) at 2:37-39. Through use of multiple transmit antennas and multiple receive antennas, MIMO systems communicate data symbols over a communications system. *Id.* at 1:17-20. MIMO systems "advantageously increase an amount of data the communication systems are able to send to users." *Id.* at 1:23-24. SIMO systems, on the other hand, employ a single transmit antenna and one or more receive antennas to communicate data symbols. *Id.* at 1:25-28. MIMO and SIMO systems can be used in the wireless networks used by smartphones. *Id.* at 1:29-30. Such networks include, *e.g.*, "3G and 4G systems, such as 3GPP LTE-Advanced." *Id.* at 1:31-32.

Figure 4 of the '120 Patent depicts an example of the disclosed communications system. *Id.* at 7:1-3. A base station 405 is configured to communicate with mobile stations 410, 415, and 420 over the communications channel. *Id.* at 7:4-8. While Figure 4 depicts only three mobile stations, the base station may communicate with any number of mobile stations. *Id.* at 7:44-46. These "mobile stations" can be any number of devices, including cell phones. *Id.* at 10:52-57.

The '120 Patent further explains Figure 4 as follows:

> The mobile station **410** may include two antennas **450** and **452**. First circuitry **454** is coupled to the antenna **450** and configured to process signals for transmission by the antenna **450**. The first circuitry may include a digital-to-analog converter **455**, a filter **456**, a mixer **457**, a filter **458**, and a power amplifier **459**. Second circuitry **460** may be coupled to the antenna **452** and configured to process signals for transmission by the antenna **452**. The second circuitry **460** may also include a

[redacted]

> digital-to-analog converter **461**, a filter **462**, a mixer **463**, a filter **464**, and a power amplifier **465**. . . . An encoder **470** may be coupled to the first and second circuitry. A controller **475** may be coupled to the encoder **470** and configured to provide a signal to the encoder **470** to operate in a MIMO mode or a SIMO mode.

*Id.* at 7:17-33.

The ’120 Patent states that base station 405 does not have to receive a value for or measurement of the power consumption of the first and second circuitry—only information sufficient to allow the base station to “determine an approximation”:

> Accordingly, a signal indicative of the power consumption of the circuitry **454** may in some examples be communicated to the base station **405**. ***In other examples, the base station* 405 *may determine an approximation of the power consumption of the circuitry* 454 *and* 460**.

*Id.* at 11:19-24 (emphasis added). The ’120 Patent also notes that the base station may store “information related to” the circuitries’ power consumption and idle power consumption:

> Alternatively or in addition to storing ***information <u>related to</u> the power consumption of the mobile station 410 during an idle time***, a signal indicative of the power consumption during an idle time may be provided to the rate selector 430, without necessarily storing the parameter.
>
> …
>
> Alternatively or in addition to storing ***information <u>related to</u> the power consumption of the circuitry 454 or 460***, a signal indicative of the power consumption of the circuitry 454 or 460 may be provided to the rate selector 430, without necessarily storing the information.

*Id.* at 8:58-63, 9:7-12 (emphasis added).

Similarly with respect to the “number of users,” the ’120 Patent explains:

> [D]ata or other information indicating a number of users of the communications system 400 may be stored in the parameter storage 435, and a signal indicative of the number of users may be provided to the rate selector 430. In some examples, the signal may not be provided by the parameter storage 435, and may be provided by another component of the base station 405 (not necessarily shown in FIG. 4) that has access to the number of users, such as a component of the base station 405 involved in scheduling user transmission.

*Id.* at 9:20-28. The base station sends information indicating to the controller which mode to select:

[redacted]

> [T]he base station 405 may be configured to communicate a selected mode of MIMO or SIMO mode to the mobile station 410. If the selected mode is a MIMO mode, the controller 475 may provide a control signal to the encoder 470 to configure the encoder 470 for MIMO operation using both the antennas 450 and 452. If the selected mode is SIMO mode, the controller **475** may provide a control signal to the encoder **470** to configure the encoder **470** for SIMO operation using either the antenna **450** or **452**.

*Id.* at 11:35-50.

## II. Empire's Expert, Dr. Akl, Confirms Infringement

Dr. Akl opines that Samsung's Accused Products infringe the '120 Patent. Ex. 4 ¶¶ 24, 120, 124, 133; Ex. 3 at 14:2-7, 132:14-133:2. Those opinions rest on Dr. Akl's substantial, and uncontroverted, expertise, *see* Ex. 4 ¶¶ 5-18, 22, Appendix A, plus substantial documentary evidence, most of which is from Samsung's own files, *see*, *e.g.*, *id.* ¶ 20, Appendix B. Dr. Akl's opinions and testimony, coupled with the evidence from Samsung on which they are based, are more than sufficient grounds on which to deny Samsung's motion. *Cf. id.* ¶¶ 29-48, 62-67, 69-71, 73-75, 77-79, 81-83, 85-87, 89-91, 93-94, 96-97, 99-100, 102-103, 105-106, 108-109, 111-112, 115, 134-326 (element-by-element comparisons).

Dr. Akl explains that the Accused Products include a controller configured to receive a control signal and select a MIMO or SIMO mode in accordance with the control signal that meets the limitations of the Asserted Claims, *i.e.*, that the control signal is (i) for claim 25, based, at least in part, on a power consumption of the first and second circuitry, and based, at least in part, on the idle power consumption of the mobile station, and (ii) for claim 29, based, at least in part, on a power consumption of the first and second circuitry, and based, at least in part, on a number of users of the communications system. *Id.* More specifically, Dr. Akl testifies that the controller in the Accused Products is the [redacted] *id.* ¶ 194, and the received control signal is the [redacted], Ex. 3 at 100:2-102:12 ([redacted]). There is substantial evidence that the Accused Products [redacted]

[redacted]

[redacted] Ex. 4 ¶¶ 150, 153, 156, 159, 162, 165, 262; Ex. 3 at 18:8-19:3.

More specifically, Dr. Akl further testifies that the [redacted] is based at least in part on the power consumption of the first and second circuitry and the idle power consumption of the mobile station, *e.g.*, because the [redacted] Ex. 3 at 105:23-25. Dr. Akl explains that "in addition to the capability [] report, there is a power headroom [report] that is sent from the UE [user equipment] to the base station, and the power headroom [report] describes how much additional power" the UE can use for transmission. *Id.* at 110:3-6. Dr. Akl describes that the power headroom report is "[redacted], and that is based on the [redacted]." *Id.* at 112:12-113:7; *see also id.* at 110:9-11 ("[redacted]"); Ex. 4 ¶ 216 ("The Smart Transmit algorithm controls and manages the instantaneous transmit power (Tx) to maintain the time-averaged Tx power and therefore, time-averaged RF exposure in compliance with FCC limits." (quoting Ex. 6 (Samsung Compliance Summary Report) at Empire_0024091).

[redacted]

[redacted]

[redacted] Ex. 6 at Empire_0024091; Ex. 7 at SAMS376-0106916-17.

[redacted]

With respect to the idle power consumption of the mobile station, Dr. Akl confirms that the same analysis applies because [redacted] Ex. 3 at 140:6-15 (stating that "the instantaneous transmit power [] is taking into account idle power"). Dr. Akl opines that the [redacted] tested by Samsung and submitted to the FCC provides an example of where [redacted] *Id.* at 169:20-170:10 ("[redacted]"); Ex. 4 ¶¶ 287-89. [redacted] *Id.* ¶ 292 (citing Ex. 8 (Woo Dep. Tr.) at 53:14-54:4).

[redacted]

## III. Samsung's Expert, Dr. Rangan, Confirms Infringement

Dr. Rangan confirms the controller in Samsung's Accused Products selects the mode as indicated by the base station via the [redacted]: (i) "Once the base station makes its mode selection, the base station communicates the selection to the mobile phone via the [redacted]", and (ii) "The mobile phone configures the transmission mode selected by the base station and indicated by the [redacted]." Ex. 2 ¶ 105 (citations omitted).

The parties also appear to agree that, in the Accused Products, the [redacted] is the claimed "control signal." Ex. 9 (Rangan Dep. Tr.) at 118:15-17 ("the control signal is the [redacted]"); Defs.' Mot. at 7 ("Empire identifies [redacted] to the mobile phone (user equipment, or UE) as the claimed 'control signal' …"). The [redacted] "contains information" as to whether Samsung's Accused Products are to be in uplink MIMO or SIMO. Ex. 9 at 105:18-25 ("So remember I said the [redacted] is what contains whether you -- it contains information including whether you're an uplink MIMO or SISO …"), 106:7-15 ("Q. [I]s it transmitted then from the base station down to the user equipment through the [redacted]? A. Exactly. Q And that's how the communication works between Samsung's accused products and the base stations that are in the networks they're operating on? A. That's correct."). The [redacted] also carries the ***power grant*** for uplink transmission. *Id.* at 59:18-61:17.

Dr. Rangan further confirms that the base station may choose for the mobile station to uplink in MIMO or SIMO based, at least in part, on the Power Headroom Report[2] from the phone:

> [I]f the Power Headroom Report indicates that the UE has some headroom (spare

[2] "According to the 3GPP standard, the UE sends the base station a Power Headroom Report, informing the network about its available transmit power headroom, at regular intervals (such as every 10 ms) or in response to a significant change in power headroom or a request from the base station." Ex. 2 ¶ 100 (citing 3GPP TS 38.331, 38.213). "The Power Headroom Report provides the network with information regarding how much additional power the device can use for transmission before reaching its maximum power limit." *Id.*

[redacted]

> power) available to increase its transmit power if needed, then the base station may choose for the device to operate in uplink MIMO transmission mode, or, if the Power Headroom Report indicates that the UE is already operating near its maximum transmit power and cannot increase the transmission power further, then the base station may choose for the device to operate in SIMO transmission mode, as it may be less power-intensive and more suitable for scenarios where the UE has limited transmit power available.

Ex. 2 ¶ 105 (citing 3GPP TS 38.211, 38.213, 38.300, 38.321, 38.331, 38.214, 38.133).

## LEGAL STANDARDS

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will affect the outcome of a lawsuit, and a dispute over a material fact is "genuine" if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the burden of proving the absence of a genuinely disputed material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Only after that standard is satisfied does the burden shift to the non-movant to show a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Moreover, any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson*, 477 U.S. at 255. Infringement is a question of fact to be decided by a jury. *See Staton Techiya LLC v. Samsung Elecs. Co., Ltd.*, No. 2:21-cv-00413-JRG-RSP, 2023 WL 8443449, at *5 (E.D. Tex. Nov. 6, 2023) (recommending denial of a motion for summary judgment where "a reasonable jury could find that the accused products meet the disputed limitation").

## ARGUMENT

Samsung's initial argument that Empire is merely "speculat[ing] that the control signal received by the accused products 'may be based' on power consumption of the first and second circuitry" is sharply at odds with the record. *Cf.* Defs.' Mot. at 7. Empire is not "speculating" about how Samsung's Accused Products satisfy the claim language.

[redacted]

For example, as Dr. Akl explains, the Accused Products' [redacted], *see* Ex. 4 ¶ 278; *see also supra* at 7-8. During his deposition, Dr. Akl further confirmed that "the control signal from the base station is based, at least in part, on a power consumption of the first and second circuitry" because the [redacted] and "power headroom report takes into account the -- the transmitted power" from the Accused Products' [redacted]. Ex. 3 at 105:23-25, 108:22-24, 110:9-11. Samsung has taken the "may be based" on language out of context; it does not mean Empire wonders what the control signal is based on, as Samsung argues.

## I. Samsung's "Control Signal" and "Mode Selection" Non-Infringement Arguments Require Adding Limitations That Are Not Recited in the Asserted Claims

Samsung's non-infringement arguments address actions taken by a base station that are found nowhere in the Asserted Claims. Specifically, Samsung's arguments read into the claims (i) a base station (ii) that performs specific tasks in [redacted]. Samsung's motion, with no claim language to support its argument, simply adds major ***structural*** and ***process*** limitations into the claims, then argues that such major additions are not found in the Accused Products.

### A. The Asserted Claims Do Not Recite a Base Station or How a Base Station Selects Transmission Mode

Samsung's non-infringement argument rests on the following false premise: "Empire's failure to provide evidence explaining how the ***base station*** [redacted] ***determines whether to select MIMO or SIMO*** is fatal to its allegations of infringement." *Cf.* Defs.' Mot. at 9 (second emphasis added); *see also id.* at 4, ¶ 8. This point is immaterial and, in any event, genuinely disputed by Empire's substantial evidence to the contrary.

[redacted]

Neither Asserted Claim recites either a base station or "how" such base station "determines whether to select MIMO or SIMO." Each of claims 25 and 29 is directed to "a ***mobile station*** for use in a communications system," not a base station. And neither is a ***method*** claim. Even if a base station were an element of the Asserted Claims (it is not), neither Asserted Claim requires the base station to "determine whether to select MIMO or SIMO" in any particular way. Samsung identifies (i) no claim text to support its new, ultra-narrow interpretation of the Asserted Claims, (ii) no argument by either party even suggesting this ultra-narrow interpretation until Samsung's current motion papers, and (iii) no intrinsic evidence to support the ultra-narrow interpretation.

### B. Empire Presents Sufficient Evidence to Show the Accused Products Are Configured To Receive a Control Signal and To Select a Transmission Mode in Accordance with the Control Signal

For example, Dr. Akl testified that the [redacted] is the control signal received by the Accused Products' chipset from a base station. Ex. 3 at 100:2–102:12 ([redacted]). The parties agree that the [redacted] includes an indication for the Accused Products to transmit in MIMO or SIMO modes. *Id.* at 50:19-51:4; Ex. 9 at 105:18-25. There is substantial evidence that the Accused Products transmit in MIMO and SIMO uplink modes [redacted] Ex. 4 ¶¶ 150, 153, 156, 159, 162, 165, 262; Ex. 3 at 18:8-19:3. This suffices to show that these limitations are satisfied, and is a sufficient basis for a reasonable jury to find infringement. *See Anderson*, 477 U.S. at 248.

## II. Samsung's "Circuit Power" and "Idle Power" Non-Infringement Arguments Also Require Changing the Claim Language

### A. The Asserted Claims Do Not Require the Ultra-Narrow Limitations Samsung Suggests

Samsung's assertion that "it is not even possible for the base station to base its [redacted] … on power consumption of the first and second circuitry in the mobile device or the idle power consumption of the mobile station ***because the base station never receives*** such data from

[redacted]

the mobile station" is not grounds for summary judgment of non-infringement. *Cf.* Defs.' Mot. at 9 (emphasis added). Neither of the two Asserted Claims requires a base station to ***receive*** a value for or measurement of circuit power consumption or idle power consumption of the mobile device. In fact, as mentioned above, a base station is not recited in the Asserted Claims at all.

Rather, the '120 Patent describes, to a person of ordinary skill, structural components of the mobile station (*e.g.*, antennas, circuitry, controller) along with the combination of information (*e.g.*, power consumption of first and second circuity, idle power consumption) upon which the control signal is "based, at least in part." Indeed, the '120 Patent expressly states that the base station "may determine ***an approximation*** of the power consumption of the circuitry" without such information being communicated to the base station in the form of a value or measurement. Ex. 5 at 11:19-24 (emphasis added). The same is true for idle power. *Id.* at 8:61-62 ("information ***related to*** the power consumption of the mobile station 410 during an idle time" or "a signal ***indicative of*** the power consumption during an idle time may be provided" (emphasis added)).

Claim 25 requires the control signal to be based at least in part on (i) a power consumption of the first and second circuitry and (ii) an idle power consumption of the mobile station; it does ***not*** require circuit-power or idle-power consumption values to be received by a base station. Similarly, claim 29 does not require circuit-power values to be received by a base station.

### B. Empire Presents Sufficient Evidence to Show the Control Signal Is Based at Least in Part on Circuit Power Consumption, Idle Power Consumption, and Number of Users

Dr. Akl explains—citing Samsung's own documents—that each limitation of the Asserted Claims is found in the Accused Products. Ex. 4 ¶¶ 123-24, 133-293 (claim 25), 293-326 (claim 29). Specifically, Dr. Akl explains that [redacted] found in the Accused Products regulates the amount of transmit power used in uplink transmissions, which impacts mode selection. *Id.* ¶¶ 280-91; *see also* Ex. 9 at 114:14-25, 115:1-12. Dr. Akl also explains the

[redacted]

inputs to [redacted] found in the Accused Products. *See, e.g.*, Ex. 4 ¶¶ 193-293. And, importantly, he explains that the [redacted] in the Accused Products [redacted] *See, e.g.*, *id.* ¶ 278. [redacted] thus helps ensure that the base station's mode selection is based, at least in part, on the power consumption of the circuitry.

Empire's showing is sufficient, and there is at least a general dispute of material fact that:

- [redacted] is based, at least in part, on power consumption of the first and second circuitry (for claims 25 and 29); Ex. 3 at 104:21-105:25, 110:3-11, 112:12-113:7; Ex. 4 ¶¶ 216, 278; Ex. 7 at SAMS376-0106916-17;
- [redacted] is based, at least in part, on an idle power consumption of the mobile station (for claim 25); Ex. 3 at 140:6-15, 169:20-170:10; Ex. 4 ¶¶ 287-92; and
- [redacted] is based, at least in part, on a number of users of the communications system (for claim 29); Ex. 4 ¶¶ 318-26.

Even Samsung's witness, Dr. Rangan, explains what a person of ordinary skill understands—and as the '120 Patent also explains—that the mobile station sends the base station power information (called Power Headroom Report, in the Accused Products) that the base station uses to select the mode. Ex. 2 ¶ 105; *see also* Ex. 4 ¶ 35; Ex. 3 at 109:13-110:21; Ex. 9 at 116:16-18 ("I've shown how the SIMO and MIMO is selected, and it's selected from reading the [redacted]").

## III. Samsung's Claim Construction Argument Is Mistaken

Samsung appears to argue that Empire's assertions "run afoul of the Court's preliminary claim constructions" because Empire is allegedly equating power consumption of the circuitry with "signal energy." *See* Defs.' Mot. at 12. Samsung is incorrect and misunderstands both the preliminary constructions (now the Court's final constructions) and Empire's assertion.

[redacted]

As stated above, the Accused Products' [redacted] such that there is a relationship between the circuit power consumption and the transmit power, but they are distinct. Ex. 4 ¶ 278; *see* Ex. 7 at SAMS376-0106916-17. In other words, [redacted]. Thus, when the power headroom report indicates the transmit power to the base station, *see* Ex. 3 at 105:23-25, 110:3-11, 112:12-113:7, the base station receives an approximation of the power consumption of the first and second circuitry.

This infringement evidence does not run afoul of the Claim Construction Order because Empire is not equating power consumption of the circuitry with signal energy. Ex. 1 at 20:4-22:19. The Court's Claim Construction Order recognizes that the potential to measure power consumption of the circuitry using the signal energy is "a different issue not addressed by the construction." ECF No. 117 at 11. Nor is Empire ignoring the circuit-power-consumption aspects of the Asserted Claims. Thus, Samsung's claim construction argument fails.

**CONCLUSION**

Samsung's Motion should be denied because (i) Samsung's arguments are sharply at odds with the '120 Patent's claims and central embodiments, and (ii) Empire has provided evidence proving infringement or at least creating a genuine issue of material fact about infringement.

[redacted]

Dated: March 31, 2025

Respectfully submitted,

*/s/ Nathaniel Browand*

Nathaniel Browand (admitted pro hac vice)
New York Bar No. 4349981
Christopher Gaspar (admitted pro hac vice)
New York Bar No. 2932762
Rachel Wolf (admitted pro hac vice)
New York Bar No. 5857438
Leslie Irwin (admitted pro hac vice)
New York Bar No. 6060545
Nicholas Fallah (admitted pro hac vice)
New York Bar No. 6090542
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5000
nbrowand@milbank.com
cgaspar@milbank.com
rwolf@milbank.com
lirwin@milbank.com
nfallah@milbank.com

Marina Markarian (admitted pro hac vice)
California State Bar No. 340686
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, California 90067
(424) 386-4000
mmarkarian@milbank.com

Elizabeth L. DeRieux
Texas Bar No. 05770585
CAPSHAW DERIEUX, LLP
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

*Attorneys for Plaintiff*
*Empire Technology Development LLC*

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2025, all counsel of record are being served with a copy of the foregoing document via electronic mail.

*/s/ Nathaniel Browand*
Nathaniel Browand

[redacted]

[redacted]