[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

EMPIRE TECHNOLOGY DEVELOPMENT LLC,

*Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants*.

Civil Action No. 2:23-cv-00427-JRG-RSP

JURY TRIAL DEMANDED

[redacted]

**PUBLIC VERSION**

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S *DAUBERT* MOTION AND MOTION TO STRIKE THE OPINIONS OF AMBREEN SALTERS**

[redacted]

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. MS. SALTERS'S ANALYSIS ..... 2

A. Ms. Salters Relies On Three Comparable Samsung License Agreements ..... 3

B. Ms. Salters Relies On Non-Infringing Alternatives Disclosed During Fact Discovery And Supported By Several Sources Of Evidence ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 6

A. Ms. Salters Properly Relies on Three Comparable License Agreements ..... 6

1. Ms. Salters's Reliance On Settlement Agreements Is Permissible ..... 8

2. Ms. Salters Properly Accounts for the Hypothetical Negotiation Date and Remaining Patent Term ..... 10

3. Ms. Salters's Conservative Analysis Accounts for All Relevant Patents ..... 12

B. Ms. Salters Properly Relies on Dr. Rangan's Analysis for Non-Infringing Alternatives. 12

V. CONCLUSION ..... 14

[redacted]

# TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) .......... 2

*Apple Inc. v. Motorola, Inc.*,
757 F.3d 1286 (Fed. Cir. 2014) .......... 7

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) .......... 8

*Core Wireless Licensing S.a.r.l. v. LG Elecs, Inc.*,
No. 2:14-cv-911-JRG-RSP, 2016 WL 1090351 (E.D. Tex. March 19, 2016) .......... 8

*Datatreasury Corp. v. Wells Fargo & Co.*,
No. 2:06-CV-72-DF, 2010 WL 903259 (E.D. Tex. Mar. 4, 2010) .......... 10

*Eidos Display, LLC v. Chi Mei Innolux Corp.*,
No. 6:11-CV-00201-JRG, 2017 WL 1079441 (E.D. Tex. Mar. 22, 2017) .......... 6

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) .......... 7

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
No. 12-cv-04967-WHO, 2014 WL 4272771 (N.D. Cal. Aug. 28, 2014) .......... 13

*i4i Ltd. P'ship v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011) .......... 6, 10

*Laser Dynamics, Inc. v. Quanta Comput., Inc.*,
694 F.3d 51 (Fed. Cir. 2012) .......... 9

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
Nos. 2:07-CV-565-TJW-CE, 2:08-CV-478-TJW, 2011 WL 2417367 (E.D. Tex. June 14, 2011) .......... 6

*Moore v. Ashland Chem., Inc.*,
151 F.3d 269 (5th Cir. 1998) .......... 6

*Oracle Am.America, Inc. v. Google Inc.*,
No. C 10-03561 WHA 2011 WL 5914033 (N.D. Cal. Nov. 28, 2011) .......... 13

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
849 F.3d 1360 (Fed. Cir. 2017) .......... 8

*Realtime Data LLC v. EchoStar Corp.*,
No. 6:17-CV-00084-JDL, 2018 WL 6266301 (E.D. Tex. Nov. 15, 2018) .......... 1, 8

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
853 F.3d 1370 (Fed. Cir. 2017) .......... 8

*ResQNet.com, Inc. v. Lansa, Inc.*,
594 F.3d 860 (Fed. Cir. 2010) .......... 10

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015) .......... 6

[redacted]

## I. INTRODUCTION

Ms. Salters's opinions on damages, based on an analysis of the hypothetical negotiation in light of three comparable Samsung license agreements and the availability of non-infringing alternatives, are well reasoned, reliable, and fall squarely within the type of testimony courts have routinely permitted to be presented to a jury. Empire's objections are largely baseless or at most matters for cross-examination that go to the weight of her testimony and not its admissibility.

Ms. Salters properly relies, in her reasonable royalty analysis, on three Samsung license agreements that license patents that Samsung's technical expert Dr. Sundeep Rangan reviewed and found to be technologically comparable to the patents asserted in this case. Ex. 1[1] (Salters Report) ¶ 44. Although Empire objects that these licenses are settlements, courts permit reliance on settlement licenses where, as here, they are the most comparable licenses and the expert considered the circumstances of the settlement. *See, e.g.*, *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 6266301, at *10 (E.D. Tex. Nov. 15, 2018). Empire further objects that these licenses were executed a few years before and a few years after the hypothetical negotiation date of April 2019 and are therefore irrelevant, despite Ms. Salters's reasoned explanation that using agreements straddling this date tends to average out market trends. Empire further criticizes Ms. Salters for failing to analyze the value of the unasserted patents licensed by the comparable agreements. But Ms. Salters explains that by determining, through consultation with Samsung's technical expert, that at least some, if not all, of the patents asserted in those other cases were technically comparable to the patents asserted in this case, and by then crediting the entire value of the license agreement to those comparable patents, she simply presents a conservative analysis

---

[1] All references to numbered "Ex. ___" refer to the exhibits to the declaration of Sorin G. Zaharia in Support of Defendants' Response in Opposition To Plaintiff's Daubert Motion and Motion To Strike The Opinions of Ambreen Salters, filed concurrently herewith.

[redacted]

that would tend to ***increase*** the estimated value of the asserted patents in the present case. Indeed, Ms. Salters consistently presents a conservative analysis that balances factors tending to put downward and upward pressure on the estimated value of the patents-in-suit, and any challenges to her reliable methodology should be made through cross examination.

Relevant legal authority establishes that experts are not required to quantify all of the circumstances that may adjust the value of a comparable license. Instead, courts require that experts' methods and analysis be reliable and that their factual conclusions accounting for differences in the technological and economic circumstances of the contracting parties be challenged through cross examination. *See, e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012). That is how Ms. Salters's opinions should be addressed here.

Empire further challenges Ms. Salters's opinions regarding non-infringing alternatives, objecting that her opinions are defective because she does not specifically identify commercial devices on sale in the United States today that embody each of the non-infringing alternatives. But Ms. Salters's opinions are properly based on Dr. Rangan's analysis of non-infringing alternatives. Empire does not show that the law requires the specific identification it alleges is necessary, and Ms. Salters's reliance on Dr. Rangan is a practice that courts uphold and that further bolsters Ms. Salters's opinions.

Empire does not demonstrate that Ms. Salters's methods are unreliable or flawed such that they are inadmissible under Rule 702 of the Federal Rules of Evidence. Because Empire's objections are properly addressed by cross-examination, as opposed to exclusion, its motion should be denied.

## II. <u>MS. SALTERS'S ANALYSIS</u>

[redacted]

### A. Ms. Salters Relies On Three Comparable Samsung License Agreements

In her expert report, Ms. Salters relies on all of Samsung's [redacted] produced patent license agreements and Empire's [redacted] produced agreements to establish that the parties would use a lump-sum payment structure in a hypothetical negotiation. Salters Report ¶¶ 25, 34-41, 67, 69, 132. Ms. Salters then relies on three of the Samsung license agreements—[redacted]—to estimate a reasonable royalty resulting from a hypothetical negotiation with Empire. *Id.* ¶¶ 22, 44-63. Ms. Salters cites the opinion of Dr. Rangan, who opines that the three agreements cover patented technology that is comparable to the technology disclosed in the '120 and '331 Patents. *Id.* ¶¶ 48, 51, 55-56, 60-61. Ms. Salters then describes the dates, terms, and circumstances of the three licenses in her economic analysis:

- The licenses use lump-sum payments. *Id.* ¶¶ 41, 47, 53, 59.
- The licenses relate to at least the same Samsung products that Empire accuses in this case. *Id.* ¶¶ 64, 45, 52, 58.
- The licenses date from November 2013 to September 2024, and Ms. Salters accounts for the proximity to the April 2019 hypothetical negotiation. *Id.* ¶¶ 46, 53, 57, 59.
- The licenses are between Samsung and a non-competitor. *Id.* ¶¶ 45, 49, 52, 57-58, 62.
- The licenses are settlements, the circumstances of which Ms. Salters describes and accounts for in her analysis. *Id.* ¶¶ 49, 53, 57, 62.
- Ms. Salters adjusts the licenses, as needed, to have at least the same amount of remaining patent life left by the date of license. *Id.* ¶¶ 50, 57, 63.

[redacted]

- Ms. Salters applies an upward adjustment for the [redacted] agreement to account for the two distinct technologies of the '120 and '331 Patents. *Id.* ¶ 51.
- Ms. Salters also analyzes several qualitative considerations. *Id.* ¶¶ 64-68.

Ms. Salters reiterated these circumstances in her deposition. Ms. Salters testified that all of Samsung's agreements and "testimony from a deposition on the record" establish "Samsung's preference for a lump sum" and indicate "the structure that the hypothetical license would be in." Ex. 2 (Salters Dep. Tr.) at 54:14-55:10. Ms. Salters similarly noted that she saw "no evidence of Empire's particular licensing policies" and none that contradicted her belief that the parties would enter a lump-sump agreement. *See id.* at 55:11-56:24.

Ms. Salters also acknowledged that each of the licenses were settlements. Ms. Salters explained that being the result of settlement is not a reason to deem a license not comparable by itself. *Id.* at 68:8-75:11. For example, Ms. Salters explained that "certainty of validity [and] infringement doesn't exist in a settlement agreement and it doesn't exist in a regular agreement outside of settlement either, so in that construct you would never find a comparable license or anything that's relevant enough to your hypothetical license if that was a black and white way to look at it." *Id.* at 73:12-20, 100:11-20. Ms. Salters accounted for this fact by considering other circumstances that would result in upward adjustments, "including other patents that are licensed, other geographies, the scope of the products that are licensed," "the life of the license, especially in a lump sum agreement," "[a]nd then what the value is of the patents that are in that license versus the Patents-In-Suit." *Id.* at 70:13-75:11.

Ms. Salters further testified regarding various other factors and circumstances related to these licenses, including the proximity of the licenses to the hypothetical negotiation date (*id.* at 75:23-76:4, 107:21-108:14), that each of the entities in the licenses were similarly situated to

[redacted]

Empire (*id.* at 162:6-163:11), the remaining patent term when the licenses were executed (*id.* at 85:4-86:21, 108:17-110:9, 110:25-111:7, 124:3-126:1), and the number of independent technologies covered by the licenses (*id.* at 89:5-91:22, 112:7-14). Taken together, Ms. Salters accounts for various circumstances of these licenses to provide relative data points that establish the reasonability of her royalty figure.

**B. <u>Ms. Salters Relies On Non-Infringing Alternatives Disclosed During Fact Discovery And Supported By Several Sources Of Evidence</u>**

On October 9, 2024, in response to an Empire interrogatory, Samsung disclosed that it might rely on non-infringing alternatives disclosed in the prior art as well as on alternatives using components provided by licensed suppliers. Samsung provided supplemental responses to the same interrogatory on November 27, 2024, January 10, 2025, and February 7, 2025, identifying additional non-infringing alternatives and supporting evidence. On February 10, 2025, Samsung served Dr. Rangan's expert report that, consistent with Samsung's discovery responses, outlines several non-infringing alternatives for the '120 and '331 Patents. Ex. 3 (Rangan Opening Report) ¶¶ 567-76. On March 3, 2025, Samsung served Dr. Rangan's rebuttal expert report that reiterated the non-infringing alternatives and established that several of the theories were commercially acceptable by the hypothetical negotiation date. Ex. 4 (Rangan Rebuttal Report) ¶¶ 231-38. For example, in Dr. Rangan's opening and rebuttal reports and in his deposition, he establishes the availability and feasibility of using Exynos or MediaTek modems instead of Qualcomm modems, which are included in all of the accused Samsung products. Rangan Opening Report ¶ 567; Rangan Rebuttal Report ¶¶ 232-234; Ex. 7 (Rangan Dep. Tr.) at 152:1-156:26.

Also on March 3, 2025, Samsung served Ms. Salters's expert report, which concludes that the non-infringing alternatives would be economically feasible. Salters Report ¶¶ 77-82. In reaching her conclusions, Ms. Salters considered information from Dr. Rangan's reports regarding

[redacted]

the technical feasibility of the non-infringing alternatives and her discussions with him regarding the same.

## III. LEGAL STANDARD

Under Rule 702, expert testimony is admissible where "the methodology is reasonable and its data or evidence are sufficiently tied to the facts of the case." Fed. R. Evid. 702; *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1295 (Fed. Cir. 2015). The "question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." *Eidos Display, LLC v. Chi Mei Innolux Corp.*, No. 6:11-CV-00201-JRG, 2017 WL 1079441, at *2 (E.D. Tex. Mar. 22, 2017). The proponent of an expert's testimony "need not prove to the judge that the expert's testimony is correct," but instead "that the testimony is reliable." *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998). A court "is not permitted under *Daubert* to 'transform a *Daubert* hearing into a trial on the merits.'" *Mondis Tech., Ltd. v. LG Elecs., Inc.*, Nos. 2:07-CV-565-TJW-CE, 2:08-CV-478-TJW, 2011 WL 2417367, at *1 (E.D. Tex. June 14, 2011). Rather, when an expert's "methodology is sound, and the evidence relied upon sufficiently related to the case at hand," disputes about degree of relevance or accuracy go to weight, not admissibility. *Id.* at *1; *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

## IV. ARGUMENT

### A. Ms. Salters Properly Relies on Three Comparable License Agreements

Recognizing that no two licenses are identical, courts do not require a license to be perfectly analogous to use them in a reasonable royalty analysis, and they deem those differences matters for cross-examination, rather than bases for exclusion. In *Ericsson, Inc. v. D-Link Sys., Inc.*, the Federal Circuit observed that "[p]rior licenses ... are almost never perfectly analogous to the infringement action" and, thus, "the fact that a license is not perfectly analogous generally goes to

[redacted]

the weight of the evidence, not its admissibility." 773 F.3d 1201, 1227 (Fed. Cir. 2014) (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1326 (Fed. Cir. 2014). In *ActiveVideo*, the Federal Circuit likewise concluded that "[t]he degree of comparability of ... license agreements" is a "factual issue[] best addressed by cross examination and not by exclusion." 694 F.3d at 1333.

Here, Ms. Salters relies on three licenses that are comparable to what would have been agreed upon at a hypothetical negotiation between Samsung and Empire in April 2019. Although Empire contends that Ms. Salters "fails to reliably analyze and control for the commercial and technological differences" between the licenses and the hypothetical negotiation for the patents-in-suit, Ms. Salters considers only licensed patents established as technologically comparable in Dr. Rangan's report. And Empire does not contend that they are not technologically comparable.[2] Instead, Empire contends that Ms. Salters did not: "(i) quantify the impact of the comparable licenses being the product of settlement; (ii) control for differences in time between when the comparable and hypothetical licenses were executed; or (iii) analyze the technological comparability and value of the majority of patents covered by the three comparable licenses." D.I. 98 at 9. Empire also complains about Ms. Salters's upward, and lack of downward, adjustment for the patent term of the asserted patents in the licenses. To the contrary, Ms. Salters properly considers these differences—as well as many others—in her conservative analysis. *See supra* Section II.A. And if Empire disagrees, it is free to cross-examine Ms. Salters about these differences at trial.

[2] Empire's technical expert, Dr. Robert Akl, provided a single, conclusory statement regarding the technical comparability of the Samsung licenses produced in this action with no analysis or evidence that he reviewed the underlying patents. Ex. 5 (Akl Opening Report) ¶ 454.

[redacted]

### 1. Ms. Salters's Reliance On Settlement Agreements Is Permissible

There is no rule against using settlement licenses as comparators to a hypothetical negotiation. To the contrary, courts permit experts to rely on settlement licenses if they are the most comparable licenses and the expert accounts for the fact that the licenses result from litigation. Indeed, the Federal Circuit, as well as Courts in this district, have recognized that "[t]here is no *per se* ban on the use of settlements to establish a reasonable royalty." *See, e.g.*, *Realtime Data*, 2018 WL 6266301, at *10 (citing *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1368-71 (Fed. Cir. 2017); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1336 (Fed. Cir. 2015); *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1381 (Fed. Cir. 2017)). Indeed, Ms. Salters explained that "certainty of validity [and] infringement doesn't exist in a settlement agreement and it doesn't exist in a regular agreement outside of settlement either, so in that construct you would never find a comparable license or anything that's relevant enough to your hypothetical license if that was a black and white way to look at it." Salters Dep. Tr. at 73:12-20, 68:8-75:11, 100:11-20. Thus, "settlement agreements often may be introduced as comparable licenses, so long as technical and economic comparability is established." *Realtime Data*, 2018 WL 6266301 at *10 (denying motion to exclude expert testimony for relying on prior settlement agreements). Consistent with this rule, a court in this district denied a motion to strike an expert's damages opinions on the ground that the license agreements he relied on were not sufficiently comparable, because he "offer[ed] opinions for each license or valuation that explain[ed] his economic comparability analysis in detail." *Core Wireless Licensing S.a.r.l. v. LG Elecs, Inc.*, No. 2:14-cv-911-JRG-RSP, 2016 WL 1090351, at *5 (E.D. Tex. Mar. 19, 2016).

Here, Ms. Salters properly explains her opinion regarding economic comparability. At the outset, Ms. Salters relies on *all* of Samsung's and Empire's produced agreements—not just the three comparable agreements—to establish that the parties would use a lump-sum payment

[redacted]

structure in a hypothetical negotiation. Salters Report ¶¶ 25, 34-41, 67, 69, 132. In her report and deposition, Ms. Salters then expressly accounts for the fact of settlement in the [redacted] licenses. [redacted]. Ms. Salters also noted that "[w]hile certainty of validity and infringement exist in the hypothetical license, the [[redacted] agreements] included significant additional rights …." *Id.* ¶ 49, 62. For example, Ms. Salters considered circumstances of these licenses that would result in upward adjustments, "including other patents that are licensed, other geographies, the scope of the products that are licensed," "the life of the license, especially in a lump sum agreement," "[a]nd then what the value is of the patents that are in that license versus the Patents-In-Suit." Salters Dep. Tr. at 70:13-75:11.

Empire cites two cases, *Laser Dynamics, Inc. v. Quanta Comput., Inc.* and *Spreadsheet Automation Corp. v. Microsoft Corp.*, that rejected settlements as evidence of a reasonable royalty. D.I. 98 at 10. Neither suggests that Ms. Salters's opinions should be excluded. In *Laser Dynamics*, the Federal Circuit's chief concern was that plaintiff's expert ignored twenty-nine of the plaintiff's prior licenses, most of which were not settlements, and instead relied on a single settlement license entered on the eve of trial that imposed a license fee six times larger than any of the other twenty-nine licenses. 694 F.3d 51, 78 (Fed. Cir. 2012). Ms. Salters, on the other hand, does the opposite; rather than picking the most favorable settlement license, she considers three settlement licenses that are otherwise technically and economically comparable to provide a representative sample to establish that her royalty figure is reasonable.

Empire's reliance on the outdated decision in *Spreadsheet Automation Corp.* is also misplaced. Even in the newer *Laser Dynamics* decision, the Federal Circuit acknowledged that

[redacted]

"[d]espite the longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages, we recently permitted such reliance under certain limited circumstances," and noted that settlement agreements may be the "most reliable" licenses on which a damages expert can rely. 694 F.3d at 77 (citing *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870-72 (Fed. Cir. 2010)). And based on *ResQNet.com*, courts in this district have held that settlement licenses are admissible to prove a reasonable royalty and that concerns regarding the reliability of the licenses are better directed towards weight. *See, e.g.*, *Datatreasury Corp. v. Wells Fargo & Co.*, No. 2:06-CV-72-DF, 2010 WL 903259, at *1-2 (E.D. Tex. Mar. 4, 2010). Here, there is no dispute that the three settlement licenses are the most comparable: Empire's motion points to no other licenses that it deems more comparable. Ms. Salters's analysis should therefore be admitted.

### 2. Ms. Salters Properly Accounts for the Hypothetical Negotiation Date and Remaining Patent Term

Empire's next argument—that Ms. Salters fails to "control for differences in time between when the comparable and hypothetical licenses were executed"—merely goes to the degree of comparability. D.I. 98 at 9. In *ActiveVideo*, the damages expert relied on two agreements, one of which post-dated the hypothetical negotiations by two years, did not involve the patents-in-suit, and did not cover the technologies in the case, yet, the Federal Circuit concluded that the "degree of comparability" of the license agreements was a "factual issue[] best addressed by cross examination and not by exclusion." 694 F.3d at 1333. Similarly, here, despite differences between the license date and the hypothetical negotiation, "[t]he jury [is] entitled to hear the expert testimony and decide for itself what to accept or reject." *i4i Ltd.*, 598 F.3d at 856. Ms. Salters acknowledges the license dates and their proximity to the 2019 hypothetical negotiation in her report and testified that she reasonably considered the licenses as covering a "range," "straddling the hypothetical negotiation date in 2019." Salters Report ¶¶ 46, 53, 57, 59; Salters Dep. Tr. at

[redacted]

75:23-76:4, 107:21-108:14.

Ms. Salters also considers the term of the asserted patents at the time the licenses were executed. The asserted patents in the [redacted] agreements had significantly more life by the date of license than the '120 and '331 Patents at the hypothetical negotiation. Salters Dep. Tr. at 108:17-110:9, 110:25-111:7, 124:3-126:1; Salters Report ¶¶ 57, 63. And although the asserted patent in the [redacted] agreement had just over three years of remaining life by the date of license, Ms. Salters applies an upward adjustment to bring it closer to the average of the remaining life of the '120 and '331 Patents at the time of the hypothetical negotiation. Salters Dep. Tr. at 85:4-86:21; Salters Report ¶ 50.

Empire superficially challenges Ms. Salters's adjustment to the [redacted] agreement and erroneously states that "[t]he average remaining life between the two Patents-in-Suit is 13.67 years." D.I. 98 at 3 n.4. This is actually the later expiration date of the '120 and '331 Patents, as Empire's damages expert made clear in her report. Ex. 6 (Hall Report) ¶ 114. At the hypothetical negotiation date, the average of the remaining patent term for the '120 Patent (i.e., 13 years, 8 months) and '331 Patent (i.e., 12 years, 2 months), would have been approximately 12.9 years. Thus, when Ms. Salters multiplies the remaining life of the asserted patent in the [redacted] agreement (i.e., 3 years, 1.5 months) by a factor of four, she adjusts to a patent life of 12.5 years, which is "approximately 13 years" and even closer to the "more accurate" average of 12.9 years. Ms. Salters also adjusted the [redacted] agreement to account for the two distinct technologies of the '120 and '331 Patents, by further doubling the lump-sum amount for the license, resulting in an even more conservative estimate. Salters Report ¶ 51; Salters Dep. Tr. at 88:20-89:20.

Further, if Ms. Salters followed Empire's preferred approach and adjusted downward the terms of the [redacted] asserted patents, her [redacted] midpoint would decrease to

[redacted]

[redacted]. *See* Salters Report at Ex. 1. Thus, Ms. Salters provides a conservative analysis.

**3. Ms. Salters's Conservative Analysis Accounts for All Relevant Patents**

Empire's argument that Ms. Salters fails to make any adjustments to account for licenses that covered non-asserted patents only demonstrates that her analysis is conservative and reasonable. Had Ms. Salters accounted for the additional patents at issue in the licenses, it is likely that the royalty figure would have been even lower. Empire's argument is also factually untrue. Ms. Salters testified that because each of the settlements covered multiple patents and other rights, this was a factor that would tend to offset the fact that those settlements resulted from litigation. Salters Dep. Tr. at 70:13-75:11.

Further, Empire has not shown that considering the non-asserted patents would have made any difference. Empire attempts to use the [redacted] agreement as an example, contending that "Ms. Salters and Professor Rangan did not opine that the fourth bucket contains the *only* patents technologically comparable to the Patents-in-Suit." D.I. 98 at 12. But this too is factually untrue. Dr. Rangan testified that the patents listed in buckets one, two, and three are not technically comparable to the two patents-in-suit. Rangan Dep. Tr. at 178:24-179:3. Empire's strawman argument is without merit and again highlights the reasonability and conservative nature of Ms. Salters's analysis.

**B. <u>Ms. Salters Properly Relies on Dr. Rangan's Analysis for Non-Infringing Alternatives</u>**

Properly relying on Dr. Rangan's technical opinion regarding the availability and feasibility of non-infringing functionality, Ms. Salters establishes that several non-infringing options were available at the time of the hypothetical negotiation and would incur no additional cost to Samsung to implement. Salters Report ¶¶ 77-85. Empire challenges Ms. Salters's opinions because they rely on conversations with Dr. Rangan. But courts routinely permit damages experts

[redacted]

to rely on information provided by technical experts like Dr. Rangan. For example, in *France Telecom S.A. v. Marvell Semiconductor Inc.*, the court found that even though the damages expert "did not disclose the specific monetary impact of purported non-infringing alternative on the damages quantification," "she opined that purported alternatives 'could have been implemented at little cost and engineering time' ... cit[ing] a discussion with technical expert Dr. Min in support for this contention." No. 12-cv-04967, 2014 WL 4272771, at *2 (N.D. Cal. Aug. 28, 2014). The court upheld the damages expert's opinions, stating that plaintiff "can cross-examine her regarding her basis for this opinion and her lack of specificity. The alleged deficiencies in [her] opinion are a matter of weight, not admissibility." *Id.* In *Oracle Am., Inc. v. Google Inc.*, the court likewise upheld the opinions of Google's damages experts because they "relied on Google's non-infringement experts, interviews with Google's employees, and documentary evidence for the technical points." No. C 10-03561 WHA, 2011 WL 5914033, at *1 (N.D. Cal. Nov. 28, 2011).

Although Ms. Salters and Dr. Rangan discussed details of the non-infringing alternatives during scheduled conversations, Ms. Salters also relies on Dr. Rangan's well-reasoned analysis outlined in his reports. Salters Report ¶¶ 77-85. For example, in both Dr. Rangan's opening and rebuttal reports, he establishes the availability of using Exynos or MediaTek modems instead of Qualcomm modems, which are included in all of the accused Samsung products. Rangan Opening Report ¶ 567; Rangan Rebuttal Report ¶¶ 232-234. [redacted] Yet, Dr. Rangan explains that "Samsung regularly manufactures and sells smartphones and tablets nearly identical to the Accused Products but with Exynos and MediaTek chips. For

[redacted]

example, many of Samsung's flagship devices are manufactured and sold with Exynos and MediaTek chips outside of the U.S. and are equally acceptable to consumers." Rangan Rebuttal Report ¶ 233. Further, Dr. Rangan cites articles establishing that Samsung currently sells non-infringing devices—including the Galaxy S24—with Exynos modems in major markets outside of the U.S. with no discernable difference to the consumer. *See id.* And Dr. Rangan explains that "there would be no additional development time or costs to implement Exynos and MediaTek chips as a non-infringing alternative because Samsung already does so." *Id.* ¶ 234. In fact, Dr. Rangan testified that he felt qualified to speak to the commercial viability of these non-infringing alternatives based on his extensive experience working on engineering products, including his time at Qualcomm and Flarion Technologies. Rangan Dep. Tr. at 152:18-156:26.

Ms. Salters properly relies on Dr. Rangan's analysis in establishing the feasibility and availability of these non-infringing alternatives.[3] Nonetheless, as in *France Telecom* and *Oracle America*, the alleged deficiencies in Ms. Salters's opinion as a result of learning information in conversations with Dr. Rangan are a matter of weight, not admissibility. Samsung intends to bring Ms. Salters and Dr. Rangan to trial, where both can be cross-examined about the feasibility of these non-infringing alternatives.

## V. CONCLUSION

Plaintiff's motion to exclude Ms. Salters's testimony as to a reasonable royalty should be denied in its entirety.

[3] Notably, Ms. Hall contends that "a non-infringing alternative may cap reasonable royalties" and "any reasonable royalty determination should take into consideration the cost to implement such non-infringing alternatives." Hall Report ¶ 112. However, Ms. Hall provides no analysis regarding the cost of implementing non-infringing alternatives in her royalty determination and relies entirely on Dr. Akl's conclusory opinion about their availability. *See id.* ¶¶ 127-31, 156.

[redacted]

Dated: March 31, 2025

Respectfully submitted,

*/s/ Marc J. Pensabene*

Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (*Pro Hac Vice*)
California State Bar No. 247738
nwhilt@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Marc J. Pensabene (*Pro Hac Vice*)
New York State Bar No. 2656361
mpensabene@omm.com
Laura Gore (*Pro Hac Vice*)
New York State Bar No. 5172879
lgore@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: 212-326-2000
Facsimile: 212-326-2061

Cameron Westin (*Pro Hac Vice*)
California State Bar No. 290999
cwestin@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

Sorin G. Zaharia (*Pro Hac Vice*)
California State Bar No. 312655
szaharia@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Ctr. 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Melissa R. Smith (Tex. Bar No. 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

[redacted]

***Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.***

**CERTIFICATE OF SERVICE**

The undersigned certifies that counsel of record are being served with a copy of this document via email on March 31, 2025.

*/s/ Marc J. Pensabene*
Marc J. Pensabene

[redacted]

[redacted]
[redacted]