[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

EMPIRE TECHNOLOGY DEVELOPMENT LLC,

*Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants*.

Civil Action No. 2:23-cv-00427-JRG-RSP

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(C) FOR LACK OF CONSTITUTIONAL STANDING**

[redacted]

## TABLE OF CONTENTS


OVERVIEW .......... 1

ARGUMENT .......... 2

I. Empire Has Exclusionary Rights to the '120 Patent .......... 2

A. The MLA's Plain Language Gives Empire All Substantial Rights .......... 2

B. An ISA Is Not Required to Affect a Transfer of All Substantial Rights .......... 3

C. An ISA Was Not Necessary Given IDMC's Waiver of the Closing Conditions .......... 5

D. IDMC Obtained a License to the '120 Patent by Amending the MLA .......... 6

II. Empire Has Exclusionary Rights to the '331 Patent .......... 9

CONCLUSION .......... 10

[redacted]

**TABLE OF AUTHORITIES**

**Cases** ........ **Page(s)**

*Barbier v. Barry*,
345 S.W.2d 557 (Tex. App. 1961) ........ 9

*Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*,
590 S.W.3d 471 (Tex. 2019) ........ 7

*Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*,
86 F.4th 667 (5th Cir. 2023) ........ 9

*Harris v. BMW of N. Am., LLC*,
No. 4:19-CV-00016, 2019 WL 4861379 (E.D. Tex. Oct. 2, 2019) ........ 10

*Intellectual Tech LLC v. Zebra Techs. Corp.*,
101 F.4th 807 (D.C. Cir. 2022) ........ 10

*James Constr. Grp., LLC v. Westlake Chem. Corp.*,
650 S.W.3d 392 (Tex. 2022) ........ 2, 9

*Kachina Pipeline Co. v. Lillis*,
471 S.W.3d 445 (Tex. 2015) ........ 7

*Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, L.L.C.*,
99 F.4th 821 (5th Cir. 2024) ........ 5

*Llort v. BMW of N. Am., LLC*,
No. 1:20-CV-94-LY, 2020 WL 2928472 (June 2, 2020), *report and recommendation adopted*, 2020 WL 10054589 (W.D. Tex. June 19, 2020) ........ 10

*Rustic Nat'l Res. LLC v. DE Midland III LLC*,
669 S.W.3d 494 (Tex. App. 2022) ........ 7

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
580 U.S. 328 (2017) ........ 10

*Tekway, Inc. v. Pinnacle Tech. Res., Inc.*,
No. 05-22-00752-CV, 2024 WL 1826436 (Tex. App. Apr. 26, 2024) ........ 9

*URI, Inc. v. Kleberg Cnty.*,
543 S.W.3d 755 (Tex. 2018) ........ 7

*Valence Operating Co. v. Dorsett*,
164 S.W.3d 656 (Tex. 2005) ........ 7

[redacted]

**Statutes**

Patent Act § 286 .......................................................................................................................10

[redacted]

## OVERVIEW

Defendants' Reply (Dkt. 139) confirms that their '120 Patent argument hangs by a single thread: the claim that an ISA is required to select an Invention Disclosure for licensing. Defendants' claim fails, for at least four reasons. *First,* Defendants' focus on only a single provision—MLA § 1.2—contravenes the core principle of Texas contract interpretation that the agreement must be considered as a whole to effectuate the parties' intent. As Empire's Opposition ("Opp.") notes, the MLA expressly grants Licensee "all substantial rights" to the '120 Patent with no reference at all to any ISA, or even to § 1.2. Defendants do not address that point in their Reply whatsoever.

*Second*, applying Defendants' focus on only § 1.2, their motion still fails. The plain text of § 1.2 confirms that an ISA is simply one of multiple ways to ***inform*** the University ***once a selection has already been made***. And the record is clear: IDMC selected the '120 Patent and informed the University, regardless of an ISA. Defendants' entire standing argument falls because an ISA is not required for there to be a Selected Invention Disclosure. Defendants' remaining points in Reply—on the Amendment[1] and whether IDMC properly waived closing conditions—are all premised on the notion that transmitting an ISA is necessary to select an invention disclosure. They thus fail.

*Third*, even under Defendants' incorrect assumption that an ISA was necessary to select an Invention Disclosure under one path (a § 1.2 path), the Amendment provides an *additional* pathway to selection and licensing. While the Amendment left §§ 1.1 and 1.2 intact, nowhere does it (or the MLA) state that those provisions provide the *sole* selection mechanism. *Finally*, IDMC properly waived the exchange of a signed and countersigned the ISA when it closed on the '120 Patent by making the required payment.

[1] Capitalized terms not defined herein have the meaning ascribed to them in the Opposition.

[redacted]

Defendants' Reply on the '331 Patent likewise fails to justify dismissal. Having conceded that [redacted], Defendants again turn to the inapplicable substantial compliance doctrine. But that doctrine is intended to *prevent* parties from playing "gotcha" to "avoid *their own contractual obligations*." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 406 (Tex. 2022) (emphasis added). Instead, Defendants use this doctrine to *undermine* the contract parties' 15-year-old accord. Neither party to the MLA seeks or has sought to avoid its obligations. To the contrary, Empire and the University have operated for years—and continue to—with the mutual understanding that Empire is the exclusive licensee of and has all substantial rights to the '331 Patent.

Defendants' motion should be denied in its entirety.

## ARGUMENT

### I. Empire Has Exclusionary Rights to the '120 Patent

#### A. The MLA's Plain Language Gives Empire All Substantial Rights

The MLA states that "[t]his Agreement transfers to Licensee all substantial rights under the *Patents* and, as a result, Licensee has the right to bring any future action or proceeding to enforce claims under the ***Patents***." Ex. 1[2] at -342 (emphasis added); *see also id.* at -343 ("Licensor intends by this Agreement to provide to Licensee all substantial rights under the Patents."). "Patents" means "all (a) patents or patent applications claiming ***Inventions***." *Id.* at -354. "Inventions," as redefined by the Amendment, means "inventions and discoveries [i] ***disclosed*** in an Invention Disclosure and [ii] ***claimed*** in [a] ***the*** provisional patent application filed by Licensor *and/or* [b] the patent applications filed by Licensee in accordance with Section 1.3 of the Agreement." Ex. 3 at -986 (emphasis added). The [redacted] Invention Disclosure undisputedly disclosed the '120

[2] "Ex. __" refers to an exhibit to the Declaration of Nathaniel Browand, submitted in connection with Empire's Opposition.

[redacted]

Patent's inventions to IDMC. This satisfies the first aspect of the Inventions definition. The University also undisputedly filed "***the*** provisional patent application" for [redacted] before the Amendment took effect.[3] Thus, the second and final aspect of the Inventions definition has been met. The standing analysis properly ends here because the plain language of the MLA grants IDMC all substantial rights. The unambiguous terms of a contract must be enforced. *Cf.* Reply at 1.

**B. An ISA Is Not Required to Affect a Transfer of All Substantial Rights**

Empire's Opposition highlights *exactly* the MLA's text set out above. Opp. at 3. Defendants ignore all those provisions, offering no response. Instead, Defendants continue to insist that § 1.2(b) requires an ISA as the *sole* means to *select* an Invention Disclosure. But "Selected Invention Disclosure," "ISA," and "Section 1.2(b)" are found nowhere in any provision mentioned above in Argument § I.A, *supra*. Because Defendants argue that IDMC has failed to meet a requirement IDMC never had to meet, Defendants' motion should be denied for this reason alone.

Moreover, an ISA is not a means to ***select*** an Invention Disclosure. Section 1.2(b) itself confirms the ISA is not the ***mechanism*** of selecting an Invention Disclosure, but rather just a short form submitted to the University once Licensee had already made its selection—it is a confirmation of what IDMC has already selected. ***Selection*** under the MLA is achieved unilaterally by Licensee. The pertinent language reads: "***If Licensee*** selects an Invention Disclosure to be a Selected Invention Disclosure," then Licensee must "notify [the University] in writing" that it has made the selection and "send to [the University] a Transmitted Copy of the Invention-Specific Agreement." Ex. 1 at -332. Section 1.2's requirement to transmit a countersigned ISA would be

[3] Indeed, that was the only provisional application the University submitted to IDMC for licensing.

[redacted]

triggered only ***after IDMC has already selected an Invention Disclosure***.[4] An ISA was therefore not required to *create* a Selected Invention Disclosure for the '120 Patent.[5]

The record is clear that the University and IDMC [redacted] [redacted]; [redacted]. The ISA is defined in the MLA as "a document in the [sic] *substantially the form* attached as Exhibit A." Ex. 1 at -355 (emphasis added). Exhibit A is a one-page, two-paragraph form. The form's *only* substance is a chart that lists the relevant Invention Disclosure along with its "unique UT identifier" and a checkbox for whether Licensee has "Accepted" or "Not Accepted" it. Ex. 1 at -356. [redacted]; [redacted]. Even the parties' [redacted]—which identifies the [redacted] Invention Disclosure—is a document in "substantially the form" of Exhibit A to the MLA, Ex. 1 at -355, and therefore fully consistent with the MLA's text and IDMC's selection of [redacted] It is unassailable that IDMC told the University that IDMC selected the '120 Patent under § 1.2(b).

That reality further dooms Defendants' motion. Indeed, every single section of Defendants' Reply rests on the incorrect premise that an ISA was required for Licensee to select an Invention Disclosure. *See* Reply § II.A.1 ("The lack of an ISA means the '120 Patent was never selected. . . ."); § II.A.2 (arguing the Amendment does not create a separate pathway to license the '120 Patent

---

[4] And, of course, only if the University supplied the ISA for a particular Invention Disclosure.

[5] A June 29, 2009 MLA cover memo further suggests that an ISA was unnecessary. The memo notes that IDMC "will be granted an exclusive license and all substantial rights in the patents resulting from the Selected Invention Disclosures" but makes no mention of an ISA. Ex. 29 at -046.

[redacted]

because it "does not apply to inventions not accepted under § 1 ***by the execution of an ISA*** and notification to UT); § II.A.3 (arguing no waiver because "the MLA explicitly requires an ISA for each Invention Disclosure to qualify as a Selected Invention Disclosure"). Defendants' focus on only one section of the MLA to the exclusion of all others (and to the exclusion of the Amendment) "violates Texas's long-established rule that no one phrase, sentence, or section of a contract should be isolated from its setting and considered apart from the other provisions." *Kinsale Ins. Co. v. Flyin' Diesel Performance & Offroad, L.L.C.*, 99 F.4th 821, 828 (5th Cir. 2024) (cleaned up).

**C. An ISA Was Not Necessary Given IDMC's Waiver of the Closing Conditions**

Even if an ISA, in exactly the form set out in Exhibit A to the MLA, was required for effective transmission of IDMC's selection under § 1.2(b), that requirement was properly waived through IDMC's payment. Defendants contest this point in their Reply on two fronts; both futile. *First*, Defendants argue that IDMC's waiver of all closing conditions through payment fails because "payment serves as conclusive evidence of satisfying or waiving Closing conditions [under § 4.3] only '[w]ith respect to a ***Selected Invention Disclosure***.'" Reply at 5 (emphasis in original). But, as discussed above, IDMC selected [redacted] bringing it within § 4.3.

Section 4.3 instructs that payment under paragraph 2.1(a)(ii) is "conclusive evidence of Licensee's determination that the [closing conditions] have been satisfied or waived." Defendants do not dispute that IDMC made the payment contemplated under paragraph 2.1(a)(ii) for the '120 Patent. Nor could they. *See* Opp'n at 5. The parties to the MLA therefore closed on the '120 Patent, further confirming that IDMC and, through the Assignment, Empire, have the rights to it.

*Second*, Defendants assert that "an ISA was a non-waivable condition" because it is not a "Deliverable" under § 4.1. Reply at 5. That is incorrect. Section 4.1 defines Deliverables as "[t]he items required to be delivered by ***Licensor*** under this paragraph." The paragraph states that Licensee must "receive[]" the "applicable [ISA] executed by Licensor." The ISA is thus "required

[redacted]

to be delivered" by the University under § 4.1 and is a waivable condition. Regardless, IDMC's payment nevertheless waived the ISA. Section 4.3 lists three Closing Conditions—all of which can be waived through payment—including that the University "performed and complied in all respects with all of the obligations under this Agreement." Ex. 1 at -339. Under § 1.1, ***the University*** may submit an ISA ***to IDMC*** alongside a corresponding Invention Disclosure. The exchange of a signed and countersigned ISA was therefore triggered by the University's obligation and is a Closing Condition IDMC waived through payment.

**D. IDMC Obtained a License to the '120 Patent by Amending the MLA**

Defendants argue that the Amendment does not provide an additional path to license the '120 Patent because § 1.3, as amended "concern[s] patent application filings for ***selected*** inventions" and "lacks any language explicitly removing or replacing the selection requirement." Reply at 4 (emphasis in original). But the '120 Patent is a Selected Invention Disclosure, as discussed above, and thus plainly falls within the terms of § 1.3, as amended. Because Licensee can select and accept an Invention Disclosure independently from sending an executed ISA, Licensee can generate a Selected Invention Disclosure under § 1 of the Agreement without an ISA at all. And since Licensee can generate a Selected Invention Disclosure without an ISA, § 1.2 did not need to be amended. The Amendment properly modified key definitions and § 1.3 to make clear that acceptance and licensing can occur through patent applications instead of ISAs.

Moreover, even if an ISA was somehow required, the Amendment confirms that Empire obtained a license and has all substantial rights to the '120 Patent, for at least three reasons.

*First*, the Amendment states the parties' intent to add a pathway to those originally present in the MLA: "Licensor and Licensee wish to amend the MLA to provide that Licensor may *also* submit patent applications to Licensee for possible *acceptance* and licensing by Licensee under the MLA." Ex. 3 at -986 (emphasis added). This text confirms at least (i) the Amendment provided

[redacted]

an alternative to the MLA's existing paths to licensing, and (ii) Licensee's "acceptance" was all that was needed—not any hyperformal "ISA" procedure, as Defendants suggest. When interpreting a contract, "courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). If Defendants' argument were correct, then there would have been no reason to amend the MLA and the Amendment's provisions would be superfluous. Put differently, the Amendment did not need to mention or alter § 1.1 or 1.2 to add a separate pathway because the Amendment changed, for example, "Invention," "Invention Disclosure," and § 1.3. Nor does leaving §§ 1.1 and 1.2 intact amount to a *requirement* that those sections must always be used. Nowhere does the Amendment say that in addition to § 1.3, "all requirements under §§ 1.1 and 1.2 must be met," as Defendants' argument would require.

The context in which the Amendment was executed confirms its purpose. Courts interpret contracts "in light of the circumstances present when the contract was entered." *Rustic Nat'l Res. LLC v. DE Midland III LLC*, 669 S.W.3d 494, 500-01 (Tex. App. 2022) (citation and internal quotation marks omitted). Context is properly considered even when the contract is unambiguous. *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 483-84 (Tex. 2019); *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 767-68 (Tex. 2018); *Kachina Pipeline Co. v. Lillis*, 471 S.W.3d 445, 450 (Tex. 2015). The Amendment was executed (i) after the University disclosed [redacted] to IDMC and filed a provisional application; and (ii) against the backdrop of the [redacted], which further confirms [redacted] (and the provisional application's) selection and which the parties understood to be exercised through the Amendment. [redacted]

*Second,* the change to the definition of Invention Disclosure confirms Defendants' interpretation is wrong. The amended definition specifies that an ISA was *not* required. As

[redacted]

amended, the MLA permitted the University to give IDMC an Invention Disclosure "either alone or together with a provisional patent application with respect to an Invention that has already been filed *prior to submission to Licensee under Section 1.1*." Ex. 3 at -986. That is precisely what happened here: the University gave IDMC a provisional application for [redacted] *before* submitting it "under Section 1.1," thereby making an ISA unnecessary by express contractual text.

*Third*, in keeping with the parties' statement of intent on the Amendment's cover page, the Amendment expressly changed § 1.3, which, as amended, says: "[I]f Licensor has already filed a provisional patent application with respect to such Selected Invention Disclosure, then Licensee will file a non-provisional patent application on or prior to the deadline for converting such provisional patent application." "Selected Invention Disclosure" means simply "an Invention Disclosure *accepted* by Licensee under Section 1 of the Agreement." Ex. 1 at -355. Here, it is undisputed that the University filed a provisional patent application for [redacted] and that IDMC timely filed a non-provisional application. *See* Ex. 8 at -060-61; Ex. 15 at -657. It also is beyond dispute that the University's provisional patent application was "with respect to such Selected Invention Disclosure" because [redacted] was "accepted" as indicated in contemporaneous correspondence. Ex. 3 at -987; [redacted]. IDMC was not required to do more than file the non-provisional patent application and make the agreed-upon payment to gain all substantial rights. Having satisfied § 1.3, IDMC had satisfied all applicable aspects of § 1, entitled "SUBMISSION AND ACCEPTANCE OF INVENTION DISCLOSURES." Ex. 1 at -332.

*Finally*, if the MLA is ambiguous about whether IDMC could waive the University's ISA requirement, the decade-plus course of conduct confirms Empire has all substantial rights.[6]

[6] Defendants selectively quote a single October 6, 2022 email from [redacted] to suggest the parties' conduct does not show Empire has all substantial rights to the '120 Patent. Reply at 6-7, citing Exhibit 9 to Defendants' Motion to Dismiss at -437. The full context of that email

[redacted]

## II. Empire Has Exclusionary Rights to the '331 Patent

Defendants concede that Empire did not follow [redacted] protocol stated in §§ 5.4 and 10.8 of the MLA. Instead, their Reply simply reiterates the substantial compliance doctrine, a doctrine never applied as Defendants now suggest it should be. Defendants seek to use the substantial compliance doctrine as a "sword" to invalidate a patent license (and related rights) the parties to the MLA do not dispute exists. Every case Defendants cite in their Reply involves a situation where, unlike here, a *party* to the underlying agreement raises the doctrine as a *defense* to a lawsuit by *another party to the agreement* seeking to enforce a contract.[7] Empire is not aware of any case applying the substantial compliance doctrine to permit a non-party to an agreement to force its termination, years later, despite the contract parties continuing to treat the agreement as effective.

The Texas Supreme Court's decision in *James Construction* confirms why. There, the Court held that the substantial compliance doctrine's purpose is to prevent parties from "'gotcha' tactics to *avoid their own contractual obligations based on a technicality*." 650 S.W.3d at 406 (emphasis added). Neither party to the MLA is seeking to avoid its contractual obligations. To the contrary, both parties have continued to perform for years after Ms. Rudersdorf sent her [redacted].

Finally, even if the Court were to find that Empire [redacted], Empire nonetheless has standing because infringement began in 2019. Citing nothing, Defendants argue

---

reveals that [redacted] Nowhere does he state that Empire has not licensed the '120 Patent.

[7] *See Elmen Holdings, L.L.C. v. Martin Marietta Materials, Inc.*, 86 F.4th 667, 679-80 (5th Cir. 2023) (in a royalty payment dispute between the parties to an agreement, email from plaintiff's predecessor in interest satisfied notice requirement to defendant of missed royalty payment); *Tekway, Inc. v. Pinnacle Tech. Res., Inc.*, No. 05-22-00752-CV, 2024 WL 1826436, at *11 (Tex. App. Apr. 26, 2024) (in a dispute between contract parties, court held that plaintiff could not sue for breach of contract because defendant had substantially complied with termination notice); *Barbier v. Barry*, 345 S.W.2d 557, 562 (Tex. App. 1961) (same).

[redacted]

only that the 2021 [redacted] "forfeited all rights to the patent." Reply at 10. A party does not need to continue suffering ongoing harm to have constitutional standing to sue.[8] *See, e.g.*, *Harris v. BMW of N. Am., LLC*, No. 4:19-CV-00016, 2019 WL 4861379, at *3 (E.D. Tex. Oct. 2, 2019) (finding that plaintiffs had standing where "the injuries [p]laintiffs allege in their complaint have already occurred"); *Llort v. BMW of N. Am., LLC,* No. 1:20-CV-94-LY, 2020 WL 2928472, at *6 (June 2, 2020), *report and recommendation adopted*, 2020 WL 10054589 (W.D. Tex. June 19, 2020) (same). Under § 286 of the Patent Act, "a patentee may recover damages for any infringement committed within ***six years*** of the filing of the claim." *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 336 (2017). Empire filed the present case in 2023. The effect of [redacted] thus would be—at best for Defendants—limiting damages to an infringement period spanning 2019-2021. There is no dispute that Empire had paid all prosecution costs, all Closing fees, and all USPTO maintenance fees for the '331 Patent before (and after) the 2021 [redacted] and that the contract parties have continued to act as Licensor and Licensee from the date the rights were granted until the date of this filing.

There is no basis to dismiss the '331 Patent infringement claims.

## **CONCLUSION**

For the reasons stated herein and in the Opposition, Defendants' motion should be denied.

[8] Defendants' lone legal authority, *Intellectual Tech LLC v. Zebra Techs. Corp.*, 101 F.4th 807 (D.C. Cir. 2022), does not suggest otherwise. Other than being a patent opinion, that case bears no resemblance to the issues here. The issue in *Intellectual Tech* was whether plaintiff "retained exclusionary rights even though [defendant] had the non-exclusive ability to license" the patent at issue. *Id.* at 815.

[redacted]

Dated: April 16, 2025

Respectfully submitted,

*/s/ Nathaniel Browand*
Nathaniel Browand (admitted pro hac vice)
New York Bar No. 4349981
Christopher Gaspar (admitted pro hac vice)
New York Bar No. 2932762
Rachel Wolf (admitted pro hac vice)
New York Bar No. 5857438
Leslie Irwin (admitted pro hac vice)
New York Bar No. 6060545
Nicholas Fallah (admitted pro hac vice)
New York Bar No. 6090542
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5000
nbrowand@milbank.com
cgaspar@milbank.com
lirwin@milbank.com
nfallah@milbank.com

Marina Markarian (Pro Hac Vice)
California State Bar No. 340686
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, California 90067
(424) 386-4000
mmarkarian@milbank.com

Elizabeth L. DeRieux
Texas Bar No. 05770585
CAPSHAW DERIEUX, LLP
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

Attorneys for Plaintiff
Empire Technology Development LLC

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that on April 16, 2025, all counsel of record are being served with a copy of the foregoing document via electronic mail.

/s/ *Nathaniel Browand*
Nathaniel Browand

[redacted]

[redacted]