# EXHIBIT 6

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| EMPIRE TECHNOLOGY DEVELOPMENT LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | Civil Action No. 2:23-cv-00427-JRG-RSP |

**JOINT PROPOSED JURY INSTRUCTIONS**

**PRELIMINARY INSTRUCTIONS**[1]

**INTRODUCTION**

Ladies and Gentlemen, you are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the evidence, I will give you detailed instructions about the law to apply in deciding this case and I will give you a list of questions that you are then to answer. This list of

[1] The preliminary instructions have been adapted from *Mojo Mobility v. Samsung*, Dkt. 273-1, No. 2:22-CV-00398-JRG-RSP.

questions is called the "verdict form." Your answers to those questions will need to be unanimous and those unanimous answers will constitute the verdict in this case.

**INTRODUCTION TO PATENTS**

I want to briefly tell you what this case is about. This case involves a dispute relating to two United States patents. I know that each of you saw the patent film this morning, but I need to give you some additional instructions now and on the record about a patent and how one is obtained.

A patent is a form of property called "intellectual property." And like all other forms of property, a patent may be bought or sold.

If the PTO grants the inventor a patent, that means that for 20 years from the date of the patent application, the patent owner can keep others from making, using, or selling that invention within the United States or from importing it into the United States without the patent holder's permission.

The violation of a patent holder's rights is called infringement, and a patent holder may seek to enforce a patent against persons it believes to be infringers by filing a lawsuit in a federal court. That is why Empire has brought its allegations in this case.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO, the United States Patent and Trademark Office. The PTO is an agency of the United States Government, and it employs trained examiners who review patents and applications for patents.

The application submitted to the PTO includes within it what is called a specification. The specification contains a written description of the claimed invention, telling what the invention is, how it works, how to make it, and how to use it. The specification concludes or ends with one or more numbered sentences. These numbered sentences are the patent claims.

When a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

Patent claims exist in two forms referred to as either independent or dependent claims. An independent claim does not refer to any other claim in the patent. It is independent. It is not necessary to look at any other claim to determine what an independent claim covers.

On the other hand, a dependent claim refers to at least one other claim in the patent. A dependent claim includes each limitation or element of that other claim or claims to which it refers, or as we sometimes say, from which it depends, as well as those additional limitations or elements recited within the dependent claim itself. Therefore, to determine what a dependent patent claim covers, it is necessary to look at both the dependent claim itself and the independent claim or claims to which it refers or from which it depends.

The claims of the patents-in-suit in this case use the word "comprising." Comprising means including or containing. A claim that includes the word "comprising" is not limited to the devices or systems having only the elements that are recited in the claim but also covers devices or systems that add additional elements.

Let me give an example. If you take a claim that covers a table and the claim recites a table comprising a tabletop, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains other additional structures, such as a leaf to go in the tabletop or wheels to go on the ends of the legs. That is a simple example of using the word comprising and what it means. In other words, a product covered by the claim can have other features in addition to those covered by the patent.

On the other hand, using the same simple example, if a claim recites a table comprising a tabletop, four legs, and glue, it will not cover a table that has only three legs, even if it still has a

tabletop and glue. In other words, if a single feature recited in the claim is missing, a product is not covered by that claim.

After the applicant files the application, an examiner at the United States Patent and Trademark Office reviews the application to determine whether or not the claims are patentable, that is to say that they are appropriate for patent protection, and whether or not the specification adequately describes the invention claimed.

In examining a patent application, the examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews this type of information that is publicly available or that is submitted by the applicant. This type of information is called prior art. The examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time.

Prior art is defined by law, and I will give you, at a later time, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a patent was filed.

A patent contains a list of certain prior art that the examiner has considered. The items on this list are called the cited references. After the prior art search and examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim in the application to be patentable, in which case it would be allowed. This writing from the examiner to the applicant is called an office action. If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try and persuade the examiner to allow the claims. The applicant also has a chance to change the claims or to submit

new claims. The papers generated during these back-and-forth communications between the examiner and applicant are called the prosecution history.

This process may go back and forth between the applicant and the examiner for some time until the examiner is satisfied that the application meets the requirements for a patent. And in that case, the application issues as a United States Patent. Or, in the alternative, if the examiner ultimately concludes that the application should be rejected, then no patent is issued. Sometimes patents are issued after appeals within the PTO or to a court.

## THE POSITIONS OF THE PARTIES

To help you follow the evidence, I will give you a brief summary of the positions of the parties in this case and their positions. As I'm sure you all know, the party that brings a lawsuit is called the Plaintiff, and the Plaintiff in this case is Empire Technology Development LLC, and you will hear them referred to throughout trial as either Empire or the Plaintiff.

As you know, the parties against whom a lawsuit is brought are called the Defendants. The Defendants in this case are Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., which will be referred to throughout the trial collectively as Samsung or Defendants.

As I told you during jury selection, this is a case of alleged patent infringement. And, as I mentioned, there are two United States patents that have been asserted by Empire in this case against Samsung.

The first asserted patent in this case is United States Patent No. 8,798,120. And patents, you should know, are commonly referred to by their last three digits. So, in this case, Patent No. 8,798,120 will be referred to as '120 patent. The other asserted patent is U.S. Patent No. 8,565,331 which will be referred to as the '331 patent.

These patents can be referred to and will be referred to at various times during the trial collectively and together as the Patents-in-Suit. They are sometimes also called the Asserted Patents.

The plaintiff in this case, Empire, contends that the defendants, Samsung, are and have infringed certain claims of the two patents-in-suit by importing, making, using, or selling products that include Empire's patented technology in the United States. Empire alleges that Samsung's infringement is willful. Finally, Empire further contends that it is entitled to money damages as a result of such infringement.

The defendants, Samsung, deny that they infringe any of the claims of Empire's asserted patents, and Samsung denies that any infringement has been willful. Samsung also contends that Empire is not entitled to any money damages.

I know there are new words, and I know there are a lot of new concepts that have been thrown at you today. I am going to define a lot of these words and concepts for you as we go through my instructions. The attorneys are going to discuss many of these in their opening statements. The witnesses are also going to help you through their testimony to understand these terms and concepts.

**OVERVIEW OF THE APPLICABLE LAW**

One of your jobs in this case is to decide whether or not the asserted claims of the patents-in-suit have been infringed. If you decide that any claim from the patents-in-suit has been infringed by the defendants, then you will need to decide whether or not that infringement has been willful and what amount of money damages, if any, should be awarded to the plaintiff as compensation for that infringement.

My job in this case is to tell you what the law is, to handle matters and rulings on evidence and procedure, to oversee the conduct of the trial as efficiently as possible, and to maintain the proper decorum of this courtroom.

In determining the law, it is specifically my job to determine the meaning of the claim language from the asserted claims of the patents-in-suit that needs interpretation. I have already determined the meanings of the claims of the patents-in-suit, and you must accept the meanings or constructions that I give you and use those meanings when you decide whether any particular claim has or has not been infringed. And you are going to be given a document in a few moments that will reflect these meanings or constructions that I have determined.

For any of the claim language or claim terms that I have not provided you with a specific definition or construction, you should apply the plain and ordinary meaning. But if I have provided you with a definition, sometimes called a construction, you are to apply my definition to those terms throughout the case.

However, my interpretation of the language of the claims should not be taken as an indication by you that I have a personal opinion or any opinion at all regarding the issues of infringement. Those issues are yours as the jury to decide, and they are yours to decide alone.

In deciding the issues in this case, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Empire has shown, by a preponderance of evidence, that Samsung has infringed any asserted claims of the asserted patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another.

I will explain the requirements for patent infringement to you in detail at the conclusion of the case, but, in general, Samsung may infringe the asserted patents by making, using, selling, or offering for sale in the United States, or by importing into the United States, a product meeting all the requirements of an asserted claim.

If you decide that any claim has been infringed, then you will need to decide whether Samsung's infringement has been willful, and the amount of money damages, if any, that are to be awarded to Empire as compensation for that infringement.

A damage award in a patent case must be adequate to compensate the patent holder for the infringement, and in no event may the damage award be less than what the patent holder would have received if it had been paid a reasonable royalty for the use of its patented technology. However, the damages that you award, if any, are meant to compensate the patent holder, and they are not meant to punish the defendants, and you may not include in any damages award an additional amount as a fine or a penalty or whatever is above what is necessary to fully compensate the patent holder for the infringement. Also, patent damages cannot be speculative, and Empire, the plaintiff, must prove the amount of its damages for the alleged infringement by a preponderance of the evidence. However, the fact that I am instructing you on damages now does not mean that Empire is or is not entitled to recover damages. I will give you more detailed instructions on the calculation of damages at the conclusion of the case, including giving you specific instructions with regard to the calculation of a reasonable royalty.

**STANDARD OF PROOF**

The standard of proof that you will apply in this case is called "preponderance of the evidence." A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale,

even if slightly, in its favor. This standard is different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt.

**CREDIBILITY OF WITNESSES**

Over the course of the trial, you are going to be hearing from a number of different witnesses, and I want you to keep an open mind while you are listening to the evidence and not decide any of the facts until you have heard all of the evidence.

And this is important: While the witnesses are testifying, remember, you, the jury, will have to decide the degree of credibility and believability to allocate to each of the witnesses and the evidence that they give.

So, while the witnesses are testifying, you should be asking yourselves things like this:

Does the witness impress you as being truthful?

Did he or she have a reason not to tell the truth?

Does he or she have any personal interest in the outcome of the case?

Does the witness seem to have a good memory?

Did he or she have the opportunity and ability to observe accurately the things that they testified about?

Did the witness appear to understand the questions clearly and answer them directly? And, of course, does the witness's testimony differ from the testimony of other witnesses? And if it does, how does it differ?

These are some of the kinds of things that you should be thinking about while you are listening to each witness during the trial of this case and while each and every witness testifies from the witness stand.

**EXPERT WITNESSES**

Also, I want to talk to you briefly about expert witnesses. When knowledge of a technical subject may be helpful to you, the jury, a person who has special training and experience in that particular field—we call him or her an expert witness—is permitted to testify to you about his or her opinions on those technical matters.

However, you are not required to accept an expert witness's or any other witness's opinions. It is up to you to decide who to believe and who not to believe and whether an expert witness or any witness, for that matter, is correct or incorrect about what he or she tells you.

I anticipate that there will be expert witnesses testifying in support of both sides in this case. But when an expert witness is called to testify, it will be up to you to listen to his or her qualifications, and when he or she gives an opinion and explains the basis for it, you will have to evaluate what he or she says, whether you believe it, and to what degree, if any, that you want to give it weight.

As I said, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

**DEPOSITION TESTIMONY**

During the course of the trial, it is possible that there will be testimony from one or more witnesses that is going to be presented to you through what is called a deposition. In trials like this, it is difficult and sometimes almost impossible to get every witness physically present in court to testify at the same time. Therefore, before the trial begins, the lawyers for both sides take the depositions of the witnesses. In a deposition, the witness is present and sworn and placed under oath—just as if he or she were personally in court—a court reporter is present, and the lawyers for both plaintiff and defendants are present.

The witness is asked questions and gives answers to those questions under oath. And those answers to the questions, along with the questions themselves, are taken down and transcribed and recorded.

Often in these depositions, in addition to taking down the written version of the questions and answers, the deposition is recorded by video so that you can see the witness, hear the question asked, and hear the answer given.

These depositions generally go on for several hours. If a witness is going to be presented at trial through a deposition and he or she cannot appear in person, then portions of that deposition will be selected by the parties to be played to the jury as that witness's testimony.

And you will not have to listen to a seven-hour deposition. You may hear a few minutes or some portion of it that has been selected by the plaintiff and defendant to be presented to you from that witness.

So, when you see deposition testimony that will be played for you, if it looks like there are places where it is spliced together or joined together, that is so the part that is not important for you to hear is cut out, and you do not have to listen to seven hours straight to get 20 or 30 minutes' worth of important testimony before you.

So, if you see areas in the deposition that look like they are spliced or there is a transition, that is because there was a splice or a transition. But that is to save you a lot of time and effort. The important part, the part that the plaintiff and the defendant believe that you should hear as evidence in this case, will be played to you as deposition testimony.

And I want to remind you that deposition testimony is entitled to the same consideration and is to be evaluated by you, the jury, in the same way as if the witness had appeared in Court and testified live in open court.

Also, during the course of the trial you are going to be presented with various documents which the Court has admitted into evidence as exhibits. Some of these documents are going to have portions of them that have been redacted. Said another way, there are going to be portions that have been blacked out. Those happen because the Court determined in advance of the trial that those portions you cannot see are not relevant or not important and that you do not need to see them. When you are presented with a document that may have portions of it redacted, do not focus on what is redacted. Do not try to guess what has been blacked out. Focus on what is there and visible and that you can read and understand. In other words, focus on the unredacted portions of the document and do not try to guess what has been blacked out per the Court's earlier instruction.

**RULING ON OBJECTIONS**

During the course of the trial, it is possible that the lawyers will periodically make certain objections, and when they do, I will give rulings on those objections. It is the duty of an attorney to object on each side of the case if the other side purports to offer testimony or other evidence that the objecting attorney believes is not proper under the rules of the Court or the orders of the Court.

Upon allowing the testimony or other evidence to be introduced over an objection of an attorney, the Court does not, unless expressly stated, indicate an opinion about the weight or effect of that testimony. As I have said before, you are the sole judges of the credibility and believability of all the witnesses and the weight and effect, if any, to give to the testimony that is presented through the course of this trial.

Prior to this trial today, both sides have worked with the Court very diligently to go through the exhibits that will be presented in this trial. And any exhibits proposed by either party that the

other side has objected to, the Court has considered those objections in earlier pre-trial hearings before you were selected and seated.

And I have heard all the arguments, I have seen all the documents, and I have already decided what is admissible. And in some cases, the objections have been overruled and the document has been ruled admissible. In other cases, where I think the document is not admissible under the Rules of Evidence, I have sustained the objection, and the document is not a part of this case, and you will never see it.

That means that from that list of pre-admitted exhibits that the Court has already acted on and approved as to its admissibility, you do not have to sit through all those arguments, and you do not have to hear the back-and-forth between the lawyers about whether it is or is not admissible under the Rules of Evidence. I have already done that. And with their effort and my effort together, we have saved you hours and hours of time listening to all of that.

We are now in a position where all those documents have been dealt with, and either side can show you any item from the list of exhibits that I have already approved and simply show it to you and use it over the course of the trial without a formal offer, without a predicate, without an argument, without a dispute.

However, it is still possible that objections may arise during the course of trial, and in that case, I will rule on them. If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely, and you can draw no inference from its wording or speculate about what the witness would have said if I had allowed him or her to answer the question.

On the other hand, if I overrule an objection to a question addressed to a witness, then the witness will answer the question, and you should consider the answer and the question just as if no objection had been made.

**COMMENTS ON THE EVIDENCE**

You should know that the law of the United States permits a United States District Judge to comment to the jury regarding the evidence in the case, but such comments from the Judge on the evidence are only an expression of the Judge's opinion. And the jury can disregard those comments in their entirety as I have said before, you, the jury, are the sole judges of the facts. You are the sole judges of the credibility and believability of the witnesses and how much weight, if any, to give to all of the testimony that is presented to you over the course of the trial.

So, even though the law of the United States permits me to offer comments on the evidence, as I told you during jury selection, I am going to work very hard not to do that and not to indicate to you what I think about any of the evidence presented over the course of the trial. Evaluating and considering the evidence and determining what the facts are in this case is your job. It is not my job.

**THE WRITTEN TRANSCRIPT**

The court reporter in front of me is taking down everything that is said in the courtroom. And the transcription of everything that is said over the course of the trial is being prepared in case there is an appeal of this case or for other purposes, but I want you to understand it is not being prepared so that you will have it to use as a resource during your deliberations after you have heard all the evidence. You are not going to have a written version of all this testimony. You are going to have to rely on your memories of the evidence over the course of the trial.

**JUROR NOTEBOOKS**

In a moment, each member of the jury is going to be given a juror notebook. And in the back of those notebooks, you will find legal pads, and you will find a pen in the front pocket where you can make notes as the witnesses testify over the course of the trial.

It is up to each member of the jury to decide whether you want to take notes, and if you do, how detailed you want those notes to be. But, remember, any notes taken by any member of the jury are for that juror's personal use only. You still have to rely on your memory of the evidence. And that is why you need to pay close attention, as I am sure you will, to the testimony of each and every witness.

You should not abandon your own recollection because some other juror's notes indicate something differently. The notes that you take are to refresh your recollection, and that is the only reason you should be taking them.

I am going to ask our Court Security Officer at this time to pass out these juror notebooks to the members of the jury.

Thank you.

In these notebooks, you will see that you each have a copy of each of the two patents-in-suit. You are also going to find a section for the witnesses that may testify in this case. And for each witness that may testify, there should be a separate tabbed page for that witness and his or her picture superimposed at the top of the page and his or her name there as well, identifying the witness. The remainder of those pages have ruled lines for note taking if you choose to do so.
You will also find a chart in there that provides you with the Court's construction or definitions of certain parts of the language from the asserted claims. Those are the definitions or constructions that I told you I have already reached, and you must apply my constructions or definitions to that claim language in deciding the issues that you are required to decide.

You should find a chart with, on one side, the language from the claims that needed to be construed or interpreted by the Court, and directly across from it the actual construction or definition that the Court has already reached and given to you. You must use my definitions or constructions as you discharge your duty as jurors.

And, again, you should find a new three-hole punched legal pad in the back for additional note taking.

These notebooks should be in your possession throughout the trial. They are not to be left around loosely. They should either be with you in the jury box where you are now, or they should be on the table in the jury room. At the end of each day, I am going to ask you to leave them on the table in the jury room as you exit the courthouse and go to your respective homes. They will be there in the morning when you come back.

There may be one slight exception to this rule, and that is over the course of the trial, we may take a short recess or break where I will simply say, because I know you are not going to be out of the jury box very long, that you can simply close and leave your notebooks in your chairs. And in that case, you can simply close them, put them where you are seated, and they will be there when you get back.

But unless I give you those kinds of instructions, they either need to be in your possession, or they need to be on the table in the jury room and not left out in the courtroom.

**OUTLINE OF THE TRIAL**

In a moment, we are going to get to the lawyers' opening statements. These opening statements are designed to give you a roadmap of what each side expects that their evidence will show you. You should remember throughout the trial that what the lawyers tell you is not evidence. It is what they believe the evidence will show.

The evidence in this case will be the admitted exhibits and the sworn testimony from the witnesses from the witness stand who testify to you subject to cross-examination. And that includes any witness who presents testimony through a sworn deposition where you see and hear the testimony, but the person is not physically present the courtroom. They have nonetheless been sworn and are under oath and are subject to cross-examination, and that deposition testimony, and the live testimony of the witnesses who appear and testify under oath in this courtroom and the exhibits that you are shown that the Court has admitted into evidence, those are the evidence in this case, nothing else, and certainly not what the lawyers tell you.

What the lawyers tell you is their impression of what they believe the evidence is, and they have a duty to try and point out to you where they believe the evidence supports their side of the case. But, remember, what they are telling you is not evidence itself.

After the lawyers present their opening statements, the plaintiff will go forward with its evidence and its case. This is called the plaintiff's case-in-chief, and the plaintiff will call its witnesses and present its testimony. After the witnesses have been called and testified, cross-examined, and released by the Court and all the plaintiff's witnesses have been called, the plaintiff will rest its case-in-chief.

And when the plaintiff rests its case-in-chief, then we will transition to the defendants' case-in-chief, and the defendants will call their witnesses and present their testimony, and their witnesses will be cross-examined by the plaintiff. And when all the defendants' testimony and witnesses have been presented, then the defendants will rest their case-in-chief.

At that point, the rules allow for the plaintiff to present what are called rebuttal witnesses to rebut what the defendants have shown in their case-in-chief. The plaintiff is not required to present rebuttal witnesses. We will not know until we get to that point if the plaintiff chooses to.

But if the plaintiff calls rebuttal witnesses, then those witnesses will testify in the same way and will be subject to cross-examination by the defendants. And when all the plaintiff's rebuttal witnesses, if any, have testified, then at that point, you will have heard all the evidence in this case. Once you have heard all of the evidence in this case, I will present to you my final instructions on the law that you are to apply. Those instructions from the Court to the jury are sometimes called the Court's charge to the jury. Once I have given you my charge, my final instructions, then the lawyers for both sides will present their closing arguments to you.

And once the closing arguments have been completed by both sides, then I will instruct you to retire to the jury room. Only when all the evidence is complete and you retire to the jury room to deliberate and reach your verdict, only then is it proper for you to discuss the case among yourselves.

I will send with you the verdict form that contains the questions that you are to answer. At that time, but not before, you will be obligated to talk to each other about the evidence as a part of addressing those questions and doing your best to come to a unanimous answer to each of those questions in the verdict form.

**CONDUCT OF JURY**

Throughout this trial and until I release you as jurors, you are not to communicate with anybody about this case in any way, and you are not to communicate with the eight of yourselves about this case in any way until I direct you to retire to the jury room and deliberate on your verdict. And then when that happens, you become obligated to discuss among the eight of you the evidence that you have heard over the course of the trial in an effort to come to a unanimous agreement about how to answer the questions that are going to be submitted to you in the verdict form. Over the course of this trial the lawyers in this case, the witnesses, and anybody associated with either

side, is not going to visit with you, not going to speak, not going to be friendly, not going to interact with you. And that is because they are following my instructions. Do not take it for rudeness, do not take it for anything negative; they are simply doing what I have instructed them to do.

With these instructions, we will proceed to hear opening statements from the parties. We will begin with Empire's opening statement.

# FINAL JURY INSTRUCTIONS[2]

## INTRODUCTION

Ladies and Gentlemen:

You have now heard the evidence in this case, and I will now instruct you on the law that you must apply.

Each of you is going to have your own printed copies of these final jury instructions that I'm giving you now, so there's really no need for you to take notes unless you just particularly want to.

Ladies and Gentlemen, as I have said previously, you, the jury, are the sole judges of the facts in this case. Do not consider any statement that I have made in the course of the trial or make during these instructions as an indication to you that I have any opinion about the facts in this case.

You are about to hear closing arguments from the attorneys. Statements and arguments of the attorneys are not evidence, and they are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

A verdict form has been prepared for you. You will take this verdict form with you to the jury room, and when you have reached a unanimous decision or agreement as to the verdict, you will have your foreperson fill in the blanks in the verdict form, date it, and sign it.

---

[2] Unless otherwise noted, the proposed final jury instructions are adapted from *G+ v. Samsung*, 2:22-cv-00078-JRG, Dkt. 554-10. Submissions that are agreed by both Empire and Samsung are not highlighted. Submissions proposed by Empire that are not agreed to by Samsung are bracketed and highlighted in green. Submissions proposed by Samsung that are not agreed to by Empire are bracketed and highlighted in yellow.

Answer each question in the verdict form from the facts as you find them to be. Do not decide who you think should win the case and then answer the questions to reach that result. Again, your answers and your verdict must be unanimous.

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all the witnesses, regardless of who may have called them, and you may consider the effect of all the exhibits received and admitted into evidence, regardless of who may have produced or presented them. Some of the testimony you heard was translated from Korean. In consideration of a witness's testimony, it is not relevant whether his or her testimony was in English or translated from Korean into English. You should consider the translated testimony in the same way that you would consider testimony given in English.

You, the jurors, are the sole judges of the credibility of each and every witness and the weight and effect to be given to the evidence in this case. Now, in deciding the facts in this case, you may have to decide which testimony to believe and which testimony to not believe. You alone are to determine the questions of credibility or truthfulness of the witnesses, and in weighing the testimony of the witnesses, you may consider the witness's manner and demeanor as reflected on the witness stand.

You may consider any feelings or interest a witness may have in the case and any bias or prejudice about the case that the witness may have, and you may consider the consistency or inconsistency of his or her testimony considered in the light of the circumstances.

Has the witness been contradicted by other evidence? Has he or she made statements at other times in other places contrary to what he or she said on the witness stand? You must give the testimony of each witness the amount of credibility and weight that you think it deserves. You

must keep in mind, however, ladies and gentlemen, that a simple mistake does not mean that a witness is not telling the truth.

You must consider whether any misstatement was an intentional falsehood or a simple lapse of memory and what significance could be attached to that testimony.

Now, unless I instruct you otherwise, you may properly determine that the testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all of the evidence you believe that single witness.

As I have told you previously, the attorneys in this case are acting as advocates for their competing parties and their competing claims, and they have a duty to object when they believe evidence is offered that should not be admitted under the rules of the Court.

In that case, when the Court has sustained an objection to a question addressed to a witness, you are to disregard the question entirely, and you may not draw any inferences from its wording or speculate about what the witness would have said if I had permitted them to answer the question. If, on the other hand, the objection was overruled, then you are to treat the answer to the question and the question itself just as if no objection had been made; that is, like any other question and answer.

At times during the trial, it was necessary for the Court to talk to the lawyers here at the bench or outside of your hearing when you were in the jury room. This happens because during a trial, there are things that sometimes come up that do not involve the jury. You should not speculate about what was said during such discussions that took place outside of your presence.

Certain testimony in the case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. If a witness cannot be present to testify in person, then the witness's testimony may be presented under oath in

the form of a deposition. Before the trial, the attorneys representing the parties in this case questioned these deposition witnesses under oath. At that time, a court reporter was present and recorded their sworn testimony. Deposition testimony is entitled to the same consideration by you, the jury, as testimony given by a witness in person from the witness stand in open court. Accordingly, you should judge the credibility and importance of the deposition testimony to the best of your ability, just as if the witness had testified before you from the witness stand.

While you should consider only the evidence in this case, you should understand that you are permitted to draw such reasonable inferences from the testimony and the exhibits as you feel are justified in the light of common experience.

In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and the evidence in this case. However, you should not base your decisions on any evidence not presented by the parties in open court during the trial of this case, including your own personal experiences with any particular products that are at issue in this case.

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence; that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you, the jury, find the facts based on the evidence presented, both direct and circumstantial.

The Parties have stipulated or agreed to some facts in the case. When the lawyers for both sides stipulate as to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence and regard the fact as proven.

The attorneys have used slides and other visual aids, sometimes referred to as "demonstrative exhibits," while presenting or examining a witness. Demonstrative exhibits are a party's picture or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection. The demonstrative is not evidence, but the witness's testimony during which they use the demonstrative is evidence.

When knowledge of a technical subject may be helpful to the jury, a person who has special training and experience in that technical field, called an expert witness, is permitted to state his or her opinion on those technical matters to the jury. However, you are not required to accept that opinion. As with any other witness, it is solely up to you to decide who you believe and who you don't believe and whether or not you want to rely on their testimony.

Any patent holder has the right to file a suit in a United States District Court, and the right to a trial by jury, if it believes its patent rights are being infringed. However, you should make no inference from the fact that a suit was filed or brought to trial. You are to consider this suit as a dispute between two parties of equal worth and standing in the community, and render your verdict based solely on the evidence presented in the trial.

In any legal action, facts must be proven by a required amount of evidence known as the burden of proof. The burden of proof in this case is on the Plaintiff, Empire.

Empire has the burden of proving patent infringement by a preponderance of the evidence. Empire also has the burden of proving willful patent infringement by a preponderance of the evidence. Empire also has the burden of proving damages for any patent infringement by a preponderance of the evidence.

A preponderance of the evidence means evidence that persuades you that a claim is more probably true than not true. Sometimes this is talked about as being the greater weight and degree of credible testimony.

This burden of proof is not to be confused with the burden of proof known as beyond a reasonable doubt, which is the burden of proof applied in a criminal case, not in a civil case such as this.

In determining whether any fact has been proved by a preponderance of the evidence you may, unless otherwise instructed, consider the stipulations, the testimony of all the witnesses, regardless of who called them, and all the exhibits received into evidence during the trial, regardless of who may have produced them.

**CONTENTIONS OF THE PARTIES**

As I did at the beginning of the case, I'll give you a summary of each side's contentions, and then I'll provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I told you previously this case concerns two United States Patents asserted by Empire. They are U.S. Patent Nos. 8,798,120 and 8,565,331, which you have consistently heard referred to throughout the trial as the '120 and '331 patents. I will refer to them as the patents-in-suit or the asserted patents.

Empire seeks money damages from Samsung for allegedly infringing the patents-in-suit, by making, using, importing, selling, and/or offering to sell in the United States certain Samsung smartphones and tablets. Sometimes in these instructions I will refer to these as the Samsung accused products. Empire contends that the accused products infringe the following claims:

Claims 25 and 29 of the '120 Patent.

Claims 1 and 5 of the '331 Patent.

These claims are sometimes referred to as the asserted claims. Empire alleges that the accused products infringe the asserted claims either literally or through the Doctrine of Equivalents. Empire also alleges that Samsung's infringement is and has been willful. Empire seeks a reasonable royalty in the form of a running royalty for all past infringement of the asserted patents.

Samsung denies that the accused products infringe the asserted claims of the '120 and '331 patents.

Samsung further denies Empire's allegation that it willfully infringed. Samsung denies it owes Empire any damages in this case.

[Your job is to decide whether Samsung has infringed any of the asserted claims and whether Samsung's infringement has been willful and the amount of money damages, if any, to be awarded to Empire.[3]] [Your job is first to decide whether Samsung has infringed any of the asserted claims. If you decide that any claim has been infringed, you will then need to decide whether Samsung's infringement has been willful and the amount of money damages, if any, to be awarded to Empire to compensate it for that infringement. If you decide that there was any infringement of the asserted patents and that such infringement was willful, your decision as to willfulness should not affect any damages that you might award. I will take willfulness into account later.[4]]

**PATENT CLAIMS**

[3] Empire: Authority: *G+ v. Samsung*, Final Jury Instructions, Dkt. 592 at 51:13-18; *Mojo Mobility v. Samsung*, Final Jury Instructions, Dkt. 314 at 1256:1-9.

[4] Samsung: Authority: *Mojo v. Samsung*, No. 2:22-cv-00398-JRG-RSP, Final Jury Instructions at 7, Dkt. 314 at 1256:5-15.

Before you can decide many of the issues in this case, you will need to understand the role of the patent claims.

The claims of a patent are numbered sentences at the end of the patent. The claims define Empire's rights under the law. The claims are important, because it is the words of the claims themselves that define what the patent covers. The figures and the text in the rest of the patent provide a description or examples of the invention, and they provide a context for the claims; but it is the claims that define the breadth of the patent's coverage.

Each claim is effectively treated as if it were its own separate patent, and each claim may cover more or may cover less than any other claim. Therefore, what a patent covers depends on what each of its claims cover.

**CLAIM CONSTRUCTION**

You first need to understand what each claim covers in order to decide whether or not there is infringement of that claim. And the first step is to understand the meaning of the words used in the patent claim. The law says that it is my role to define the terms of the claims, but it is your role to apply my definitions to the issues that you're asked to decide in this case.

Accordingly, as I explained at the beginning of the case, I have determined the meaning of certain claim language. I have provided the definitions of those claim terms in your jury notebooks. You must accept my definitions of these words in the claims as being correct, and it is your job to take these definitions that I have supplied and apply them to the issues that you are asked to decide, including the issues of infringement.

For claim limitations where I have not construed, that is defined or interpreted, any particular term, you are to use the plain and ordinary meaning of that term as understood by one of ordinary skill in the art, which is to say, in the field of technology of the patent at the time of the alleged invention.

**PATENT CLAIMS AND LIMITATIONS**

I will now explain how a claim defines what it covers. A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or method satisfies each of these requirements in that sentence, then it is covered by and infringes the claim. There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by claim basis.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."

When a product meets all the requirements of a claim, the claim is said to "cover" that product; and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product.

If a product is missing even one limitation or element of a claim, the product is not covered by that claim unless an equivalent of the limitation is present. If the product is not covered by the claim, the product does not infringe the claim.

This case involves two types of patent claims: independent claims and dependent claims. An independent claim does not refer to any other claim in the patent. An independent claim sets forth all the requirements that must be met in order to be covered by the claim. Thus, it is not necessary to look to any other claim to determine what an independent claim covers.

By contrast, a dependent claim does not by itself recite all the requirements of the claim but refers to another claim or claims for some of its requirements. In this way, the dependent claim depends on another claim.

A dependent claim incorporates all the requirements of the claim or claims to which it refers or from which it depends, as well as the additional requirements set forth in the dependent claim

itself. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers or from which it depends. A product that meets all the requirements of both the dependent claim and the claim or claims to which it refers is covered by that dependent claim.

Taking the ’331 patent as an example, claim 1 of the ’331 patent is an independent claim. Claim 5 of the ’331 patent is a dependent claim that refers back to independent claim 1. Therefore, dependent claim 5 includes all the requirements of claim 1 as well as all of the requirements of claim 5.

**COMPRISING**

The claims of the patents-in-suit use the word “comprising.” Comprising means “including but not limited to” or “containing but not limited to.” When “comprising” is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed. This is true even if the accused product contains additional elements.

For example, if you take a claim that covers the invention of a table, if the claim recites a table comprising a tabletop, four legs and glue that holds the legs and the tabletop together, the claim will cover any table that contains those structures, even if the table also contains other structures, such as leaves to go in the tabletop or wheels to go on the ends of the legs. That is a simple example using the word “comprising” and what it means. But, in other words, it can have other features, in addition to those that are covered by the patent.

**INFRINGEMENT**

I will now instruct you on infringement in more detail. If a person makes, uses, sells, or offers for sale within the United States or imports into the United States what is covered by a patent claim without the patent owner’s permission, that person is said to infringe the patent. [Once a patent is issued, the owner of a patent has the right to stop others from infringing the patented

invention throughout the United States for the life of the patent. For any claim of infringement, an accused infringer's ownership of its own patent is not a defense to infringement.[5]]

To determine whether there is infringement, you must compare the asserted patent claims, as I have defined each of them, to the accused products. You should not compare the accused products with any specific example set out in the patent in reaching your decision on infringement. [In deciding infringement, the only correct comparison is between the accused products and the limitations of the asserted claims as the Court has construed any claim language.[6]]

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and the scope of the claims, the legal requirements for infringement, and the evidence presented to you by both of the parties.

I will now instruct you on the specific rules that you must follow to determine whether Empire has proven that Samsung has infringed one or more of the patent claims involved in this case. [There are two possible ways that a claim may be directly infringed. The two types of infringement are called literal infringement and infringement under the doctrine of equivalents. Empire contends that Samsung directly infringes the asserted patents both literally and under the doctrine of equivalents. I'll explain the requirements of each of these types of infringement to you. In order to infringe a patent claim, the accused device must include each and every element of the claim either literally or under the doctrine of equivalents.[7]] [This case implicates different types of alleged infringement. I'll explain the requirements of each of these types of infringement to you.]

---

[5] Empire: Authority: *Mass Engineered Designs, Inc. v. Ergotron, Inc.,* Case No. 06-cv-272-LED, Final Jury Instructions, Dkt. 658 (E.D. Tex. Nov. 19, 2008).

[6] Samsung: Authority: *Mojo v. Samsung* Final Jury Instructions at 12, Dkt. 314 at 1263:9-13; *G+ v. Samsung* Final Jury Instructions, Dkt. 592 at 57:18-25.

[7] Empire: As Empire will present both literal infringement and doctrine of equivalents arguments, this instruction will help the jury delineate between the two theories and assess the evidence accordingly.

**DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"**

In order to prove direct infringement by literal infringement, Empire must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Samsung made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim.

A claim element is literally present if it exists in the accused product as it is described in the claim language either as I have explained it to you or if I did not explain it according to its ordinary meaning as understood by one of ordinary skill in the art. In making your determination you must consider each claim separately. [Not all of the claims of a patent must be infringed for infringement to exist.[8]] [If an Accused Product omits any element recited in a claim, then you must find the product in question does not literally infringe that claim.[9]] [The Plaintiff need only establish by a preponderance of the evidence that one claim is infringed.[10]] If you find that each and every element of a patented claim is found in the accused product then the claim is infringed, even if the accused product may include additional features or functions not found in the claims.

---

Samsung: While this instruction was proposed by the plaintiff in *G+ v. Samsung*, it was not adopted by the Court and given to the jury in the final jury instructions. *See G+ v. Samsung*, Dkt. 592 at 60-61. Instead, the Court instructed the jury similar to Samsung's proposed instructions.

[8] Empire: Authority: *KAIST IP US LLC, v. Samsung Elecs. Co, et al.,* No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

[9] Samsung: Authority: *G+ v. Samsung* Final Jury Instructions, Dkt. 592 at 60; *Atlas v. TP Link*, No. 2:21-CV-00430-JRG-RSP, Final Jury Instructions at 12.

[10] Empire: Authority: *KAIST IP US LLC, v. Samsung Elecs. Co, et al.,* No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018).

Samsung: redundant, as the preponderance of the evidence standard for infringing a claim is mentioned in many other places, including in the preceding paragraph.

[An accused product infringes a claim if it satisfies the claim elements, even though it may be capable of non-infringing modes of operation.[11] So long as an accused product has each and every one of the claim limitations, infringement in that claim is shown even if the product contains additional features or elements not required by the claim.[12]]

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim. A patent may also be directly infringed, even though the accused infringer believes in good faith that what it is doing is not infringement of the patent.[13]

**DIRECT INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS**

If you find that the accused product does not literally infringe a claim of the asserted patents, then you may still find infringement if you find each element is met under the doctrine of equivalents. Under the doctrine of equivalents, if a person makes, uses, sells, offers to sell within or imports into the United States a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim under the doctrine of equivalents.

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the product. You may find that an element is equivalent to a requirement

---

[11] Empire: Authority: *Netlist v. Samsung*, 2:21-CV-00463-JRG, final jury instructions.

[12] Empire: Authority: *Mojo v. Samsung* Final Jury Instructions at 12, Dkt. 314 at 1264:25-1265:4.

Samsung: this phrase is redundant – the "additional features" sentence is repeated from the previous paragraph.

[13] 0 *KAIST IP US LLC, v. Samsung Elecs. Co, et al.*, No. 2:16-cv-1314-JRG-RSP, Dkt. 498 (E.D. Tex. June 15, 2018); *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the action or structure: (1) performs substantially the same function, (2) in substantially the same way, (3) to achieve substantially the same result as the requirement of the claim. [In order for a structure or action to be considered interchangeable, the structure or action must have been known at the time of the alleged infringement to a person having ordinary skill in the field of the technology of the patent. Interchangeability, ladies and gentlemen, at the present time today is not sufficient.[14]]

[Under the doctrine of equivalents, the proper time for evaluating equivalency is at the time of infringement, not at the time the patent was filed or issued.[15]]

**INDIRECT INFRINGEMENT[16]**

I will now instruct you on indirect infringement. In this case, Empire has accused Samsung of indirect infringement by actively inducing Samsung's U.S. distributors and users of the accused products to directly infringe the asserted claims of the Asserted Patents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Samsung is liable for induced infringement of a claim only if Empire proves by a preponderance of the evidence that:

---

[14] Samsung: Authority: *G+ v. Samsung* Final Jury Instructions (Dkt. 592) at 62:3-9.

[15] Empire: Authority: *Warner-Jenkins Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 37 (1997); *Siemens Medical Sol. USA, Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1282 (Fed. Cir. 2011)

[16] Adapted from *Seagen, Inc. v. Daiichi Sankyo Co., Ltd.*, No. 2:20-cv-337-JRG (E.D. Tex. Apr. 8, 2022), ECF No. 378 at 75:3-76:12.

1. Acts have been carried out by Samsung's U.S. distributors or users of the accused products that directly infringe that claim;
2. Samsung has taken action during the time the Asserted Patents were in force, intending to cause the infringing act by Samsung's U.S. distributors or users of the accused products; and
3. Samsung has been aware of the Asserted Patents and has known that the acts of Samsung's U.S. distributors or users of the accused products constitute infringement of the Asserted Patents [or were willfully blind to that infringement.

Willful blindness is established if Samsung believed there was a high probability that the acts if taken, would constitute infringement of the asserted claims, but deliberately avoided confirming that belief.[17]]

[If you find that Samsung was aware of the asserted patents, but believed that the acts it encouraged did not infringe that patent, Samsung cannot be held liable for inducement. In order to establish active inducement of infringement, it is not sufficient that the end users of the Samsung accused products themselves directly infringe the claim. Nor is it sufficient that Samsung was aware of the acts by its end users that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Samsung specifically intended its end users to infringe the asserted patent or that Samsung believed there was a high probability that its end users would infringe the asserted patents, but deliberately avoided learning the infringing nature of its end user's acts. The mere fact, if true, that Samsung knew or should have

[17] Empire: <u>Authority</u>: Adapted from N.D. Cal. Model Patent Jury Instr. 3.7 (2017) (citing 35 U.S.C. § 271(b); *Commil USA, LLC v. Cisco Systems, Inc.*, 135 S. Ct. 1920, 1928-31 (2015); *Global-Tech Appliances, Inc. et. al. v. SEB S.A.*, 131 S. Ct. 2060, 2070-71 (2011)).

known that there was a substantial risk that its end user's acts would infringe the asserted patents would not be sufficient to support a finding of active inducement of infringement.[18]]

**WILLFULNESS**

In this case, Empire contends that Samsung willfully infringed the asserted patents. If you decided that Samsung has infringed, you must go on and separately address the additional issue of whether or not that infringement was willful.

The Plaintiff Empire has the burden of proving willful infringement by a preponderance of the evidence.[19]

You may not determine that the infringement was willful just because Samsung knew of the Asserted Patents and infringed them. Instead, you must find that Samsung deliberately [or intentionally] infringed the Asserted Patents. [You may find that Samsung willfully infringed if you find that Samsung deliberately or intentionally infringed the asserted patents or acted in reckless disregard of or with indifference to the rights of Empire. A defendant is indifferent to the rights of another when it proceeds in disregard of a high or excessive danger of infringement that was known to it or was apparent to a reasonable person in its position.[20]] Your determination of

---

[18] Samsung: Authority: *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1364 (Fed. Cir. 2016).

[19] Empire: Authority: *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00366-JRG, (E.D. Tex. Jan. 9, 2020); *Netlist v. Samsung*, 2:21-CV-463-JRG, final jury instructions.

[20] Empire: Authority: *Id.*, *Mojo Mobility v. Samsung*, 2:22-cv-00398-JRG-RSP, Dkt. 314 at 1267-68.

Samsung: Empire's allegation that "reckless disregard of or with indifference to the rights of Empire" satisfies the willfulness standard is legally incorrect. The Federal Circuit has explained that willful infringement requires deliberate or intentional infringement. *See, e.g.*, *Provisur Techs., Inc. v. Weber Inc.*, 119 F.4th 948, 956 (Fed. Cir. 2024); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021) ("Knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient, for a finding of willfulness. Rather, willfulness requires deliberate or intentional infringement." (emphasis added)); *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020). Empire's instruction also does not properly

willfulness should incorporate the totality of the circumstances based on all the evidence presented during the trial. Willfulness can be established by circumstantial evidence. Knowledge of the existence of a patent [or patent family[21]] can be relevant to the question of willful infringement. [For example, if Samsung knew of the existence of a patent or subjectively believed that there was a high probability that a patent existed and took deliberate actions to avoid learning of the patent,

---

define the willful blindness standard. For there to be willful blindness, "the defendant must subjectively believe that there is a high probability that a fact exists" and "the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech*, 563 U.S. at 769. Empire's instruction, however, requires only indifference to infringement and does not require active efforts to avoid knowing about the infringing nature of the activities. *Id.* at 770 (finding that the Federal Circuit's "deliberate indifference" test inaccurately defines the willful blindness standard).

[21] Empire: Authority: *See WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 & n.4 (Fed. Cir. 2018) (suggesting patent applications can be considered as evidence if publicly available); *SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 WL 3624957, at *4 (E.D. Tex. Aug. 17, 2011), *aff'd,* 709 F.3d 1365 (Fed. Cir. 2013).

Samsung: Knowledge of patents in the same portfolio or family is insufficient to establish a willfulness claim. *Optis Wireless Tech. LLC, et al v. Apple Inc.*, 2:19-cv-066-JRG, Dkt. 520 (Aug. 10, 2020); *WCM Industries, Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609 (D. Mass. 2018); *Dentsply Sirona, Inc. v. Edge Endo, LLC*, 2019 WL 1517584, at *4 (D.N.M. April 8, 2019). Further, "the Federal Circuit held that knowledge of a patent application alone cannot support a finding of willful infringement." *Nonend Inventions, N.V. v. Apple. Inc.*, No. 2:15-CV-466-JRG-RSP, 2016 WL 1253740, at *2 (E.D. Tex. Mar. 11, 2016), *R & R adopted*, 2016 WL 1244973 (E.D. Tex. Mar. 30, 2016) (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985)).

you may take this into account when considering willfulness.[22] You may also take into account whether Samsung had knowledge of a patent family.[23]]

Your determination of willfulness should incorporate the totality of the circumstances based on all the evidence presented during the trial. To determine whether Samsung acted willfully, consider all the facts and assess Samsung's knowledge at the time of the challenged conduct. Facts that may be considered include but are not limited to the following:

1. Whether or not Samsung acted consistently with the standards of behavior for its industry;

---

[22] Empire: Authority: *See WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 & n.4 (Fed. Cir. 2018) (suggesting patent applications can be considered as evidence if publicly available); *SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 WL 3624957, at *4 (E.D. Tex. Aug. 17, 2011), *aff'd,* 709 F.3d 1365 (Fed. Cir. 2013).

Samsung: The Federal Circuit has been clear that showing knowledge of a patent and infringement of that patent is not sufficient for willfulness. *Provisur Techs., Inc. v. Weber Inc.*, 119 F.4th 948, 956 (Fed. Cir. 2024); *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 988 (Fed. Cir. 2021). Decisions from this District have held that the behavior Empire alleges of Samsung here does not qualify as willful blindness sufficient to prove willfulness. *See, e.g., Nonend Inventions, N.V. v. Apple. Inc.*, No. 2:15-CV-466, 2016 WL 1253740, at *3 (E.D. Tex. Mar. 11, 2016) ("[T]he Court finds Motorola's policy of asking its employees to ignore patents and patent applications does not per-se constitute 'willful blindness[,]' [and] [t]he Court finds that more must be alleged to show a policy of ignoring patents caused an alleged infringer's actions to 'surpass recklessness and negligence' and rise to the level of "willful blindness."), *R&R adopted*, 2016 WL 1244973 (E.D. Tex. 2016).

[23] Empire: Authority: *See WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 970 & n.4 (Fed. Cir. 2018) (suggesting patent applications can be considered as evidence if publicly available); *SynQor, Inc. v. Artesyn Techs., Inc.*, 2011 WL 3624957, at *4 (E.D. Tex. Aug. 17, 2011), *aff'd,* 709 F.3d 1365 (Fed. Cir. 2013).

Samsung: Knowledge of patents in the same portfolio or family is insufficient to establish a willfulness claim. *Optis Wireless Tech. LLC, et al v. Apple Inc.*, 2:19-cv-066-JRG, Dkt. 520 (Aug. 10, 2020); *WCM Industries, Inc. v. IPS Corp.*, 721 F. App'x 959, 970 (Fed. Cir. 2018); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 609 (D. Mass. 2018); *Dentsply Sirona, Inc. v. Edge Endo, LLC*, 2019 WL 1517584, at *4 (D.N.M. April 8, 2019). Further, "the Federal Circuit held that knowledge of a patent application alone cannot support a finding of willful infringement." *Nonend Inventions, N.V. v. Apple. Inc.*, No. 2:15-CV-466-JRG-RSP, 2016 WL 1253740, at *2 (E.D. Tex. Mar. 11, 2016), *R & R adopted*, 2016 WL 1244973 (E.D. Tex. Mar. 30, 2016) (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985)).

2. Whether or not Samsung intentionally copied a product of Empire that is covered by the asserted patents;
3. Whether or not Samsung reasonably believed that it did not infringe;
4. Whether or not Samsung made a good-faith effort to avoid infringing the asserted patents; for example, whether Samsung attempted to design around the asserted patents; and
5. Whether or not Samsung tried to cover up its infringement.

If you decide that any infringement was willful, that decision should not affect any damages award that you give. I will take willfulness into account later.[24]

**PERSON WITH ORDINARY SKILL IN THE ART**

Several times in my instructions, I will refer to a person of ordinary skill in the field of the invention. It is up to you to decide the level of ordinary skill in the field of the invention.

In deciding what the level of ordinary skill is, you should consider all of the evidence introduced at trial including but not limited to:

1. The levels of education and experience of the inventors and other persons actively working in the field;
2. The types of problems encountered in the field;
3. Prior art solutions to those problems;
4. Rapidity with which innovations are made; and
5. The sophistication of the technology.

A person of ordinary skill in the art is a hypothetical person who is presumed to be aware of all of the relevant prior art at the time of the claimed invention.

**DAMAGES**

[24] *Mojo*, Dkt. 314 at 1268:5-19.

If you find that Samsung infringed any claim of the asserted patents you must then consider what amount of damages, [if any,[25]] to award to Empire [for that infringement[26]]. Now, I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case. [If you find that Samsung has not infringed any claim of the Patents-in-Suit, then Empire is not entitled to any patent damages. Also, if you do not find that Samsung infringes any claims of a particular patent, Empire is not entitled to damages for that patent.[27]]

[The damages that you award in this case[28]] [If you award damages, they[29]] must be adequate to compensate Empire for any infringement. [You must not award Empire more damages than are adequate to compensate it for the infringement.[30]] You should also not include any additional amount for the purposes of punishing Samsung or for setting an example. Empire in this case has the burden to establish the amount of its damages by a preponderance of the evidence. [In other words, you should award only those damages that Empire establishes that it more likely than not suffered as a result of Samsung's infringement.[31]]

[25] Samsung: Authority: *G+ v. Samsung*, Final Jury Instructions (Dkt. 592) at 78:1.

[26] Samsung: Authority: *TQ Delta, LLC v. CommScope Holding Co.*, No. 2:21-cv-000310-JRG, Final Jury Instructions, Dkt. No. 534, Vol. 1 Tr. 21:14-73:13 (E.D. Tex. Mar. 30, 2023); 35 U.S.C. § 284. This language is necessary to make clear that the only damages Empire may recover is for the infringing acts it has proved.

[27] Samsung: Authority: *G+ v. Samsung*, Final Jury Instructions (Dkt. 592) at 78:15-20.

[28] Empire: Authority: *G+,* Dkt. 592 at 79:5.

[29] Samsung: Authority: *Netlist, Inc. v. Samsung Elecs. Co.*, No. 2:21-cv-00463-JRG, Final Jury Instructions, Dkt. No. 478 at 1320:14-16 (E.D. Tex. Apr. 21, 2023). Empire's proposal misleadingly suggests damages are to be awarded. It is black-letter law that damages are conditional on a finding of infringement of a claim.

[30] Samsung: Authority: *G+ v. Samsung*, Final Jury Instructions (Dkt. 592) at 79:7-8.

[31] Samsung: Authority: *G+ v. Samsung*, Final Jury Instructions (Dkt. 592) at 78:23-25.

The patent laws specifically provide that damages for infringement may not be less than a reasonable royalty. Plaintiff Empire must prove the amount of its damages with reasonable certainty but need not prove the amount of damages with mathematical precision. [The determination of a damages award is not an exact science, and the amount need not be proven with unerring precision. You may approximate, if necessary, the amount to which Empire is entitled. Damages, however, may not be determined by a mere speculation or a guess. It may be proper to award damages in an amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.[32]] [But Empire is not entitled to damages that are remote or that are only speculative.[33]]

A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time immediately prior to when the infringement first began.[34]

[You may have heard references throughout this trial as to whether Empire should be entitled to a running royalty or a lump-sum royalty.[35]] [Reasonable royalty awards can take the form of a running royalty or a lump-sum royalty.[36]] If you find Empire is entitled to damages, you must decide whether the parties would have agreed to a running royalty or a fully paid-up lump-sum royalty at the time of the hypothetical negotiation. A running royalty is a fee paid for the right to use the patent that is paid for each unit of the infringing products that have been sold. If there are

---

[32] Empire: Authority: *Optis Wireless Tech., LLC, et al., v. Huawei Techs. Co. Ltd.*, et al., No. 2:17-cv-123-JRG-RSP, Dkt. 310 (E.D. Tex. Aug. 24, 2018).

[33] Samsung: Authority: *G+ v. Samsung*, Final Jury Instructions (Dkt. 592) at 79:3-4; *Headwater v. Samsung*, Final Jury Instructions at 17.

[34] *G+*, Dkt. 592 at 79:15-19.

[35] Empire: Authority: *Mojo*, Dkt. 314 at 1277:21-23.

[36] Samsung: Empire's instruction improperly implies that Empire is entitled to one or the other. That is only the case if Empire proves that Samsung infringed at least one asserted claim.

additional units sold in the future any damages for these sales will not be addressed by you. If you decide that a running royalty is appropriate then the damages that you award, if any, should reflect the total amount necessary to compensate Empire for Samsung's past infringement. By contrast, a lump sum royalty is when the infringer pays a single price for a license covering both past and future infringing sales for the life of the patent. If you decide that a lump-sum is appropriate then the damages you award, if any, should reflect the total amount necessary to compensate Empire for Samsung's past and future infringement. Now, in considering this hypothetical negotiation, you should focus on what the expectations of Empire and Samsung would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the Asserted Claims were infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. In the context of the hypothetical negotiation, it is not necessarily the case that each infringed patent in the hypothetical negotiation contributes equally to the amount that Samsung would pay for that license, or that each patent covered by other licenses that were presented contributes equally to the amount that was paid for those licenses.

The law requires that any damages awarded to Empire correspond to the value of the alleged inventions within the accused products, as distinct from other, unpatented features of the accused product, or other market factors. This is particularly true where the Accused Product has multiple features and multiple components not covered by the patent or where the Accused Product works in conjunction with other non-patented items. Therefore, the amount you find as damages must be based on the value attributable to the patented technology. [If the unpatented features contribute to an accused product, you must apportion that value to exclude any value attributable to

unpatented features. You must determine an appropriate royalty rate and an appropriate royalty base that reflect the value attributable to the patented invention alone. Empire bears the burden to establish the amounts attributable to the patented features.[37]]

In determining a reasonable royalty, you should consider all facts known and available to the parties at the time the infringement began. Some of the factors you may consider in making your determination are:

1. The royalties received by the patentee for the licensing of the patent(s) in suit, proving or tending to prove an established royalty.
2. The rates paid by the licensee for the use of other patents comparable to the patent in suit.
3. The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.
4. The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.
5. The commercial relationship between the licensor and the licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promotor.

[37] Samsung: Authority: *Mojo v. Samsung* Final Jury Instructions at 23, Dkt. 314 at 1279:22-1280:4.

6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.
7. The duration of the patent and the term of the license.
8. The established profitability of the product made under the patent; its commercial success; and its current popularity.
9. The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.
10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.
11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.
12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.
13. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.
14. The opinion testimony of qualified experts.
15. The amount that a licensor (such as Empire) and a licensee (such as Samsung) would have agreed upon at the time the infringement began if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—

who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

Now, no one of these factors is dispositive, and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may have heard these factors referred to during the trial as the *Georgia-Pacific* factors during testimony.

You may also consider any other factors which in your minds would have increased or decreased the royalty Samsung would have been willing to pay and that Empire would have been willing to accept, with both acting as normally prudent business people.

[When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for the right to the patent in question or for rights to similar technologies.[38]] Comparable license agreements are one factor that may inform your decision as to the proper amount and form of the reasonable royalty award, similar to the way in which the value of a house is determined relative to comparable houses sold in the same neighborhood. If a license agreement is not sufficiently comparable, you may not rely on it in determining damages. Whether a license agreement is comparable to the license under the hypothetical license scenario depends on many factors, such as whether they involve comparable technologies, comparable economic circumstances, comparable structure, and comparable scope. If there are differences between a license agreement and the hypothetical license, you must take those into account when you make your reasonable royalty determination.

---

[38] Samsung: Authority: *Mojo v. Samsung*, Final Jury Instructions at 26, Dkt. 314 at 1283:1-4.

[A reasonable royalty is the minimum amount of compensation, but not the only form of compensation. You are permitted to consider all the benefits conferred to Samsung through its infringement of the asserted patents, including evidence of cost savings that Samsung achieved through the use of the asserted patents as well as evidence of additional profits and other benefits. A reasonable royalty can exceed the profits expected by Empire.[39]]

Now, for purposes of determining a reasonable royalty, you may consider whether at the time of the hypothetical negotiation Samsung had acceptable, non-infringing alternatives to taking a license. [To be an acceptable, non-infringing alternative, a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product.[40]] [A non-infringing alternative is a way of providing the same or comparable functionality or achieving the same or a comparable result that does not require using the asserted claims.[41]] Samsung bears the burden to show by a preponderance of the evidence that this non-infringing alternative would have been available at the time of the hypothetical negotiation and during the damages period.

**DATE OF COMMENCEMENT OF PATENT DAMAGES**

In calculating patent damages, you must determine when the damages began.

---

[39] Empire: Authority: *United Services Automobile Association v. Apple Bank, N.A.*, No. 2:18-cv-00245-JRG, (E.D. Tex. Nov. 5, 2019).

Samsung: This language is wholly inapplicable since there has been no evidence presented in this case, either through experts or otherwise, regarding any other alleged benefits. The case Empire cites is distinguishable, as there the plaintiff's expert had opined on "cost savings, increased profit, and ecosystem benefits." *USAA v. Apple Bank*, No. 2:18-cv-00245-JRG, Dkt. 335 at 87:4-6.

[40] Empire: Authority: *G+*, Dkt. 592 at 87:11-14.

[41] Samsung: Authority: *Touchstream v. Charter*, No. 2:23-cv-00059-JRG-RSP, Final Jury Instructions at 29; *Headwater Res. LLC v. Samsung Elecs. Co., Ltd.*, No. 2:22-cv-00422-JRG-RSP, at 22.

With regard to the ’120 patent, the damages period begins on April 1, 2019.

With regard to the ’331 patent, the damages period begins on April 1, 2019.

Now, with those instructions, we’re ready to hear closing arguments from the attorneys in this case.

**DELIBERATIONS**

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. You have heard all of the evidence in this case. You have now heard the argument of counsel. The Court has now given you the charge in this case. In just a few moments you’re going to retire to the jury room, select one of your members to act as foreperson and begin performing the function for which you have been chosen and for which you have been impaneled in accordance with the oath that you took as jurors.

You will remember at the beginning of this trial the Court admonished you not to discuss this case with each other until it was submitted to you.

It is now time for you to begin your discussions, and you certainly may express an opinion from the evidence that you have heard and use any reasonable means to persuade other members of the jury to your convictions and to your honest opinion. You are to reach a verdict which speaks the truth and which does justice to all parties without favor, bias or prejudice in any particular, either for or against any party to this lawsuit.

In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous, but do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinions of your fellow jurors or for the mere purpose of returning a verdict.

Answer the questions in the verdict form based on the facts as you find them to be, following the instructions that the Court has given you on the law. Do not decide who you think should win this case and then answer the questions accordingly. Again, I remind you, your answers and your verdict in this case must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.

The law recognizes no distinction between types of parties. All corporations, all partnerships, all other organizations stand equal before the law, regardless of their size, regardless of who owns them, and they are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you'll each have a copy of these written jury instructions to take with you. If you desire, during your deliberations, to review any of the exhibits which the Court has admitted into evidence during the trial, you should advise me by written note delivered to the Court Security Officer. He will bring me your note, and then I will send you that exhibit or those exhibits.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you've taken over the course of the trial are aids to your memory only. If your memory should differ from your notes, then you should rely on your memory and not your notes.

The notes are not evidence. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, you should give a written message or a question to the Court Security Officer who will bring it to me. I'll then respond as promptly as possible, either in writing or by having you brought back into the courtroom where I can address you orally. I will always first disclose to the attorneys in the case your question and my response before I answer your question.

After you have reached your verdict and I have discharged you from your duty as jurors, you need to understand that you are not required to talk with anyone about your service in this case. By the same token, after I have discharged you from your duty as jurors, you are completely free to discuss your service as jurors in this case with anyone that you choose to. The choice is yours.

You should understand the practice in this Court is that after you are discharged, if you wish to talk about your service as jurors with any of the attorneys in the case, it's up to you to initiate a conversation with them. They are not permitted to initiate a conversation with you.

All right. I will now hand eight copies of these final jury instructions and one clean copy of the verdict form to the Court Security Officer to deliver to the jury in the jury room.

Ladies and Gentlemen of the Jury, you may now retire to the jury room to deliberate. We await your verdict.

Dated: May 20, 2025

Respectfully submitted,

*<u>/s/ Christopher Gaspar</u>*
Nathaniel Browand (admitted pro hac vice)
New York Bar No. 4349981
Christopher Gaspar (admitted pro hac vice)
New York Bar No. 2932762
Andrew Lichtenberg (admitted pro hac vice)
New York Bar No. 4881090
Rachel Wolf (admitted pro hac vice)
New York Bar No. 5857438
Leslie Irwin (admitted pro hac vice)
New York Bar No. 6060545
Nicholas Fallah (admitted pro hac vice)
New York Bar No. 6090542
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5000
nbrowand@milbank.com
cgaspar@milbank.com
alichtenberg@milbank.com
rwolf@milbank.com
lirwin@milbank.com
nfallah@milbank.com

Marina Markarian (Pro Hac Vice)
California State Bar No. 340686
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, California 90067
(424) 386-4000
mmarkarian@milbank.com

Elizabeth L. DeRieux
Texas Bar No. 05770585
CAPSHAW DERIEUX, LLP
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

Attorneys for Plaintiff
Empire Technology Development LLC

*/s/ Marc J. Pensabene*
Ryan K. Yagura (Tex. Bar No. 24075933)
ryagura@omm.com
Nicholas J. Whilt (*Pro Hac Vice*)
California State Bar No. 247738
nwhilt@omm.com
**O'MELVENY & MYERS LLP**
400 S. Hope Street
Los Angeles, CA 90071
Telephone: 213-430-6000
Facsimile: 213-430-6407

Marc J. Pensabene (*Pro Hac Vice*)
New York State Bar No. 2656361
mpensabene@omm.com
Laura Gore (*Pro Hac Vice*)
New York State Bar No. 5172879
lgore@omm.com
**O'MELVENY & MYERS LLP**
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: 212-326-2000
Facsimile: 212-326-2061

Cameron Westin (*Pro Hac Vice*)
California State Bar No. 290999
cwestin@omm.com
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Telephone: 949-823-6900
Facsimile: 949-823-6994

Darin W. Snyder
California State Bar No. 136003
dsnyder@omm.com
Sorin G. Zaharia (*Pro Hac Vice*)
California State Bar No. 312655
szaharia@omm.com
**O'MELVENY & MYERS LLP**
Two Embarcadero Ctr. 28th Floor
San Francisco, CA 94111
Telephone: 415-984-8700
Facsimile: 415-984-8701

Patric Reinbold (Pro Hac Vice)

D.C. Bar No. 90007388
preinbold@omm.com
**O'MELVENY & MYERS LLP**
1625 Eye Street, NW
Washington, DC 20006
Telephone: 202-383-5165

Melissa R. Smith (Tex. Bar No. 24001351)
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

***Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.***