[redacted]

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

EMPIRE TECHNOLOGY DEVELOPMENT LLC,

*Plaintiff*,

v.

SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC.,

*Defendants*.

Civil Action No. 2:23-cv-00427-JRG-RSP

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION TO STRIKE AND EXCLUDE PORTIONS OF THE EXPERT REPORT OF PLAINTIFF'S EXPERT DR. ROBERT AKL**

[redacted]

# TABLE OF CONTENTS

Page(s)


Table of Authorities ..... ii

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 2

III. LEGAL STANDARD ..... 4

IV. DR. AKL'S OPINIONS DO NOT VIOLATE THE CLAIM CONSTRUCTION ORDER ..... 5

V. THE PARTIES' EXPERTS' COMPETING OPINIONS PRESENT A FACTUAL DISPUTE FOR THE JURY ..... 9

VI. CONCLUSION ..... 10

[redacted]

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993) ....................4

*Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*,
No. 6:10-cv-379 LED-JDL, 2012 WL 12911053 (E.D. Tex. Sept. 7, 2012) ....................9

*GREE, Inc. v. Supercell Oy*,
No. 2:19-cv-00070-JRG-RSP, 2020 WL 4501341 (Aug. 5. 2020)....................8, 9

*Kara Tech. Inc. v. Stamps.com Inc.*,
582 F.3d 1341 (Fed. Cir. 2009)....................8

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999) ....................4

*Micro Chem., Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003)....................5

*Mobile Equity Corp. v. Walmart Inc.*,
No. 2:21-cv-00126-JRG-RSP, 2022 WL 4368146 (E.D Tex. Sept. 21, 2022)....................8, 9

*Pipitone v. Biomatrix, Inc.*,
288 F.3d 239 (5th Cir. 2002) ....................5

*Thorner v. Sony Comput. Ent. Am. LLC*,
669 F.3d 1362 (Fed. Cir. 2012)....................8

*Ultravision Techs., LLC. v. GoVision LLC*,
No. 2:18-cv-00100-JRG-RSP, 2021 WL 2144788 (E.D. Tex. May 25, 2021) ....................8

*United States v. Valencia*,
600 F.3d 389 (5th Cir. 2010) ....................4

**Rules**

Fed. R. Evid. 702 ....................4

[redacted]

## I. INTRODUCTION

Plaintiff Empire Technology Development LLC ("Empire") opposes Defendants Samsung Electronics Co., Ltd.'s and Samsung Electronics America, Inc.'s (collectively, "Samsung") supplemental motion to strike portions of the Expert Report of Dr. Robert Akl.

Samsung's motion seeks to turn a factual dispute between the experts into an alleged violation of Court's Claim Construction Order ("CCO"). But a close review of the record leads to only one conclusion: Dr. Akl's testimony is consistent with the CCO, and the disagreement between the parties' experts is a question for the jury.

Nevertheless, Samsung overreads the CCO and twists snippets from Dr. Akl's testimony in a manner that changes its meaning to generate a contradiction. *Cf.* Dkt. 146 at 1; Dkt. 117. But Samsung's effort is mistaken because Dr. Akl's deposition testimony is fully consistent with his expert report and the CCO. The CCO construed the term "replicated data" to have its "plain and ordinary meaning." Dkt. 117 at 17. The Court's comment that "a pilot symbol cannot be replicated data and vice versa," *id*. at 16, is intended to make clear that the same thing cannot be both a pilot symbol and replicated data. Guided by the CCO, Dr. Akl opines that [redacted]. In both his deposition and expert report, Dr. Akl testifies that [redacted] Nothing in the CCO prevents Dr. Akl from asserting that [redacted] As the Court recognized, whether there "could be 'overlap' between a pilot symbol and replicated data" simply raises "an infringement issue." Dkt. 117 at 16. Thus, Samsung and its expert Dr. Rangan can explain their disagreement with Empire's assertion at trial, and Samsung's supplemental motion to strike should be denied.

## II. FACTUAL BACKGROUND

U.S. Patent No. 8,565,331 ("the '331 Patent"), titled "Inserting and Decoding Replicated Data Symbols in Wireless Communications," describes methods of decoding a signal transmitted over a communications channel. Specifically, the invention of the '331 Patent is directed "to [the] use of replicated data as a pilot symbol in a communications system." Ex. 1 at 4:4-5.[1]

Claim 1 of the '331 Patent reads as follows:

> 1. A method of decoding a signal transmitted over a communications channel, the method comprising:
>
> receiving a pilot symbol over the communications channel;
>
> estimating a channel matrix of the communications channel based, at least in part, on the pilot symbol;
>
> receiving replicated data from multiple data streams transmitted over the communications channel;
>
> decoding the replicated data using the estimated channel matrix;
>
> generating an updated estimate of the channel matrix based, at least in part, on the replicated data; and
>
> decoding subsequently received signals over the communications channel using the updated estimate of the channel matrix.

*Id*. at 15:41-16:7. The '331 Patent also states that the "use of replicated data symbols as pilot symbols may advantageously increase the channel estimation accuracy" and "the number of pilot symbols may be effectively increased through the use of replicated data symbols." *Id*. at 9:5-7, 10:54-56. The patent states that signals encoding replicated data "may also encode an indication that the data includes one or more replicated data symbols." *Id*. at 10:19-22. The same is true of signals encoding pilot symbols. *Id*. at 10:2-3 ("The received signals may also provide an indication that the encoded symbol is a pilot symbol."). Based on this indication, the receiver recognizes the

[1] Exhibits are attached to the Declaration of Nathaniel Browand submitted herewith.

data replicated as replicated data. The same is true of pilot symbols. *Id.* at 10:10-13. In this way, both replicated data and pilot symbols are known to the transmitter and receiver.

Despite these teachings in the ’331 Patent, Samsung sought to establish a dichotomy between pilot symbols and replicated data during claim construction. Specifically, Samsung sought to construe “replicated data” to mean “copied, non-pilot symbols.” Dkt. 117 at 15. At the *Markman* hearing, the Court “did not think it was necessary to include Samsung’s recommendation of non-pilot.” Ex. 2 at 44:24-25. Samsung’s counsel argued that the problem was Empire’s infringement contentions “identify the same thing, the DMRS signal, the same thing as being both the pilot symbol and the replicated data.” *Id.* at 49:19-22. The Court stated that “pilot symbols” and “replicated data” “cannot be the same” and recognized that Empire’s “infringement contentions may have to give way to the claim construction.” *Id.* at 57:3-9, 59:4-7. The Court ultimately construed the term “replicated data” to have its “plain and ordinary meaning,” Dkt. 117 at 17, and because they “are not the same thing,” “a pilot symbol cannot be replicated data and vice versa.” *Id.* at 15-16.

On February 10, 2025, Empire served the opening report of Dr. Robert Akl. In his report, Dr. Akl opines that [redacted] Ex. 3 ¶ 361. Dr. Akl testifies that [redacted] *Id.* ¶ 376. Dr. Akl further states [redacted] *Id.* ¶ 417.

At his deposition, Dr. Akl testified that [redacted] Ex. 4 at 196:15-17. He further testified that [redacted]

[redacted] *Id.* at 196:11-14. Upon further questioning, Dr. Akl clarified that [redacted] *Id.* at 197:22-25.

Samsung's expert Dr. Rangan offers that opinion that [redacted] Ex. 5 ¶ 203. According to Dr. Rangan, [redacted] *Id.* ¶ 204. He further states that [redacted] *Id.* ¶¶ 206, 218.

## III. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152. The ultimate inquiry is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

The Court's role is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'The trial court's role as gatekeeper . . . is not intended to serve as a replacement for the adversary system.'") (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendments)).

## IV. DR. AKL'S OPINIONS DO NOT VIOLATE THE CLAIM CONSTRUCTION ORDER

Dr. Akl's opinion that [redacted] does not violate the CCO because it satisfies the plain and ordinary meaning of the term since it is both data and replicated in a data stream. *See* Ex. 3 ¶ 376. In addition, Dr. Akl identifies the [redacted] *Id.* ¶ 361. [redacted] is reproduced below.

[redacted]

Ex. 3 ¶ 416. Thus, Dr. Akl's testimony is fully consistent with the CCO because Dr. Akl does not [redacted] which is exactly what the parties agreed, and Samsung's counsel sought to protect against, at the *Markman* hearing.

Samsung's motion rests on the false premise that all received signals are either pilot symbols or payload data. The figure above [redacted] shows the fallacy of Samsung's premise. As the Court recognized, whether there "could be 'overlap' between a pilot symbol and replicated data" raises "an infringement issue." Dkt. 117 at 16. This should end the inquiry and Samsung's motion should be denied on this basis alone.

Samsung's assertion that Dr. Akl concedes [redacted] is incorrect because it misconstrues both his deposition testimony and expert report. *Cf.* Dkt. 146 at 5. Samsung's attempt to find fault with Dr. Akl's deposition testimony is based on misleading snippets ***that cut off the rest of his sentences explaining exactly why Samsung's interpretation is incorrect***. *Id.* (quoting Ex. 4 at 196:8-11, 197:22-23) (emphasis added). The rest of the quoted sentences disprove Samsung's argument as Dr. Akl testifies that [redacted]" *Id.* at 197:23-25; *see also id.* at 196:12-14 [redacted] Dr. Akl's deposition testimony does not support, and in fact contradicts, Samsung's argument.

Samsung's reading of Dr. Akl's expert report is even more strained. According to Samsung, Dr. Akl's statement that [redacted] Dkt. 146 at 5. Samsung is simply incorrect. No reasonable person would draw such a conclusion because these two examples are not intended

to be opposites and it is directly contradicted by multiple other passages where Dr. Akl expressly states that [redacted]. Ex. 3 ¶ 416 [redacted]; *id.* ¶ 417 [redacted].

Samsung's argument against Dr. Akl's opinion that [redacted]. *First*, Samsung's contention that Dr. Akl's opinion [redacted] misses the mark, *cf.* Dkt. 146 at 6, because it again takes a stray comment out of context to change its meaning. Dr. Akl opines that [redacted] Ex. 3 ¶¶ 414-16. Dr. Akl states that [redacted] *Id.* ¶ 416. Thus, paragraph 416 is clearly intended to show that [redacted] As Dr. Akl further stated at his deposition, [redacted] Ex. 4 at 196:13-19.

*Second*, Samsung's contention that [redacted] to increase the data rate does not support Samsung, *cf.* Dkt. 146 at 7, because this teaching is not limiting, and it cannot be used to restrict the scope of replicated data to payload data. Samsung overstates the teachings of the '331 Patent because the specification merely states that "the use of replicated data symbols as pilot symbols may increase the data rate . . . in some examples." Ex. 1 at 7:17-19. In other words, although data

rate improvement may be possible using replicated data in some examples, it is not required and replicated data is not limited to circumstances where the data rate increases. *See Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1348 (Fed. Cir. 2009) ("The patentee is entitled to the full scope of his claims, and we will not limit him to his preferred embodiment or import a limitation from the specification into the claims."); *see also Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012) ("The patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning unless the patentee explicitly redefines the term or disavows its full scope."); *Mobile Equity Corp. v. Walmart Inc.*, No. 2:21-cv-00126-JRG-RSP, 2022 WL 4368146, at *3 (E.D. Tex. Sept. 21, 2022) (denying motion to strike expert testimony where the movant was seeking to limit the scope of the claim term "to the examples in the specification").

At the *Markman* hearing, the parties agreed that replicated data should not be limited to payload data. *See* Ex. 2 at 52:9-11 (stating "we didn't want to just limit the replicated data to being payload data. You know, we actually went broader than that. . . ."); *id.* at 55:2-5 (stating "the specification never says that replicated data has to be payload data. All of the passages that counsel just took you through were all 'may.'"). Samsung's current argument is erroneous because it seeks to rescind that agreement and limit replicated data to payload data.

Finally, Samsung's cited case law is unavailing. *Cf.* Dkt. 146 at 2-3, 8. In *Ultravision Technologies, LLC v. GoVision LLC*, No. 2:18-cv-00100-JRG-RSP, 2021 WL 2144788, at *5 (E.D. Tex. May 25, 2021), the expert there, unlike Dr. Akl, stated in his deposition that "the precise embodiment the Court cited as an example of the Court's construction would be read out under his interpretation of the claim construction." In *GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00070-JRG-RSP, 2020 WL 4501341, at *2 (E.D. Tex. Aug. 5. 2020), an expert's non-infringement opinion,

unlike Dr. Akl's opinion, was conditioned on the Court granting Supercell's objection to the claim construction of a specific claim term, but the Court did not grant the objection and thus struck the contrary opinion. In *Eon Corp. IP Holdings, LLC v. T-Mobile USA, Inc.*, No. 6:10-cv-379-LED-JDL, 2012 WL 12911053, at *2 (E.D. Tex. Sept. 7, 2012), Eon's expert, unlike Dr. Akl, offered testimony that ignored a "condition of the claims." Specifically, the claims included "the conditional language 'if said [local] subscriber units are unable to communicate,'" but Eon omitted "this portion of the limitation from its theory of infringement." *Id.* at *2. By contrast, Dr. Akl's testimony does not ignore any claim language.

## V. THE PARTIES' EXPERTS' COMPETING OPINIONS PRESENT A FACTUAL DISPUTE FOR THE JURY

The dispute between the parties' experts over whether [redacted] in the asserted claims is a factual question for the jury. As stated above, Dr. Akl asserts that [redacted] Dr. Rangan does not dispute that [redacted] According to Dr. Rangan, [redacted]. Ex. 5 ¶¶ 204, 206, 218. This factual dispute between the experts should be resolved by the jury.

The Court's decision in *Mobile Equity* is instructive. 2022 WL 4368146, at *3. There, the Court denied Walmart's motion to strike the infringement opinions of plaintiff's expert for allegedly applying incorrect claim constructions. *Id.* One of Walmart's arguments was that the infringement expert "conflates the 'mobile enablement center' element of the claims with the payment processing center element." *Id.* The Court rejected Walmart's argument "about conflating components" because "it would recast what is a fact issue to be a legal question regarding claim scope." *Id.*

Similarly, here Samsung's motion accuses Dr. Akl of conflating the "replicated data" and "pilot symbol" claim elements by [redacted] But whether [redacted] satisfies the "replicated data" limitation is a factual issue. As in *Mobile Equity*, the Court correctly observed that whether there could be "overlap" between a pilot symbol and replicated data is "an infringement issue," not a legal question regarding claim scope. Dkt. 117 at 16.

## VI. CONCLUSION

For the foregoing reasons, the Court should deny Samsung's supplemental motion to strike certain opinions of Dr. Akl.

Dated: May 27, 2025

Respectfully submitted,

*/s/ Nathaniel Browand*
Nathaniel Browand (admitted pro hac vice)
New York Bar No. 4349981
Christopher Gaspar (admitted pro hac vice)
New York Bar No. 2932762
Andrew Lichtenberg
New York Bar No. 4881090
Rachel Wolf (admitted pro hac vice)
New York Bar No. 5857438
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5000
nbrowand@milbank.com
cgaspar@milbank.com
alichtenberg@milbank.com
rwolf@milbank.com

Marina Markarian (Pro Hac Vice)
California State Bar No. 340686
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, California 90067
(424) 386-4000
mmarkarian@milbank.com

Elizabeth L. DeRieux
Texas Bar No. 05770585
CAPSHAW DERIEUX, LLP
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

Attorneys for Plaintiff
Empire Technology Development LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2025, all counsel of record are being served with a copy of the foregoing document via electronic mail.

/s/ *Nathaniel Browand*
Nathaniel Browand

[redacted]

[redacted]