# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| EMPIRE TECHNOLOGY DEVELOPMENT LLC, | |
| *Plaintiff*, | Civil Action No. 2:23-cv-00427-JRG-RSP |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD. and SAMSUNG ELECTRONICS AMERICA, INC., | JURY TRIAL DEMANDED |
| *Defendants*. | |

# DEFENDANTS' RULE 50(b) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND, IN THE ALTERNATIVE, FOR A NEW TRIAL UNDER RULES 50(b) AND 59

# TABLE OF CONTENTS

Page

I. INTRODUCTION ...................................................................................................1

II. BACKGROUND ...................................................................................................2

    A. The '120 Patent and Asserted Claim 25 ................................................2

    B. The Accused Products and Functionality ..............................................4

III. LEGAL STANDARD............................................................................................5

IV. ARGUMENT ........................................................................................................6

    A. Samsung Is Entitled to JMOL Of No Infringement...............................6

        1. Empire Did Not Present Any Evidence Of What Information the DCI Is Based Upon .................................................................... 7

        2. Empire's Evidence Concerning Smart Transmit and Envelope Tracking Does Not Support A Finding That DCI (The Control Signal) Is Based On Power Consumption Of The First And Second Circuitry .................................................................................... 8

        3. Empire's Evidence Concerning Smart Transmit Does Not Support A Finding That DCI (The Control Signal) Is Based On Idle Power Consumption Of The Mobile Station.................................... 12

    B. Alternatively, Samsung Is Entitled To A New Trial..............................14

V. CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

Page

## CASES

*Amgen Inc. v. Hospira, Inc.*,
    944 F.3d 1327 (Fed. Cir. 2019)...................................................................................... 5

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
    631 F.3d 1279 (Fed. Cir. 2011).................................................................................... 6

*CommScope Techs. LLC v. Dali Wireless Inc.*,
    10 F.4th 1289 (Fed. Cir. 2021) ................................................................................... 6

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
    192 F.3d 973 (Fed. Cir. 1999)............................................................................... 5, 6

*Georgia-Pac. Corp. v. U.S. Gypsum Co.*,
    195 F.3d 1322 (Fed. Cir. 1999)................................................................................ 14

*Mirror Worlds, LLC v. Apple, Inc.*,
    784 F. Supp. 2d 703 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012) ...................... 5

*Smith v. Transworld Drilling Co.*,
    773 F.2d 610 (5th Cir. 1985) .................................................................................... 14

*Tercero v. Tex. Southmost College Dist.*,
    989 F.3d 291 (5th Cir. 2021) ...................................................................................... 5

*Yoon Ja Kim v. ConAgra Foods, Inc.*,
    465 F.3d 1312 (Fed. Cir. 2006).................................................................................. 6

## STATUTES

35 U.S.C. § 271(a) ........................................................................................................... 6

## RULES

Fed. R. Civ. P. 50(a)(1).................................................................................................... 2

Fed. R. Civ. P. 50(b) ............................................................................................. 2, 5, 14

Fed. R. Civ. P. 59 .................................................................................................... 2, 14

## I.    **INTRODUCTION**

After a four day trial, the jury found that Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") did not infringe Patent No. 8,565,331 (the "'331 Patent") and infringed only one claim, claim 25, of Patent No. 8,798,120 (the "'120 Patent"). But even as to claim 25, the evidence was insufficient as a matter of law to support the finding of infringement because Plaintiff Empire Technology Development LLC ("Empire") failed to present any evidence for two separate limitations of that claim. Specifically, Empire did not present any evidence from which a juror could reasonably conclude that Samsung's accused smartphones and tablets ("mobile stations")[1] are configured to receive a control signal for selecting between MIMO and SIMO transmission modes wherein that control signal is based on (i) the power consumption of the transmission circuitry and (ii) the idle power consumption of the mobile station.

The only "control signal" alleged by Empire to inform the mobile station's selection between MIMO mode and SIMO mode is the downlink control information ("DCI"). Yet fatally, Empire presented no evidence regarding what the DCI, and the MIMO/SIMO mode indicated by the DCI, are based upon, let alone evidence sufficient to show that it is based on the two specific criteria recited by claim 25. In fact, Empire conceded that the DCI is generated and sent by the base station to the mobile station, yet Empire admitted it did not investigate the algorithms or source code of any base station to show any relation between the DCI (and its indicated MIMO/SIMO mode) and the circuit or mobile station idle power consumption.

Because Empire presented no evidence that any Samsung accused device is configured to receive a DCI (the accused "control signal") based on power consumption of any circuitry or idle power consumption of the mobile station, the jury did not have a "legally sufficient evidentiary

---

[1] As Empire concedes, "mobile station" is the term used in the '120 Patent to refer to a mobile phone, mobile tablet, or mobile computer.  Tr. 163:10-17.

basis to find" for Empire on infringement. Accordingly, Samsung is entitled to judgment as a matter of law ("JMOL") or, at a minimum, a new trial. Fed. R. Civ. P. 50(a)(1), 50(b), 59.

## II.  BACKGROUND

### A.  The '120 Patent and Asserted Claim 25

The '120 Patent describes a system that selects a multiple-input-multiple-output (MIMO) or single-input-multiple-output (SIMO) transmission mode for communicating data between a mobile station and a base station in a communications system based on certain parameters. JX-1, '120 Patent, 2:12-24, 2:48-55, 7:44-46. The use of MIMO and SIMO transmission modes was known well before the invention of the '120 Patent, as was the switching between the two modes. The alleged improvement of the '120 Patent is a system that selects between MIMO and SIMO mode "based, at least in part, on an energy consumption of the first and second transmission rates." *Id.*, 4:45-48. That is, the patent describes selecting a transmission mode from either a SIMO or MIMO based "on which mode provides a lower energy per bit for transmission in the communications system." *Id.*, 4:47-51. The '120 Patent explains that, in some instances, either a SIMO or MIMO mode may be more energy efficient as a "crossover point" when SIMO consumes less power than MIMO exists based on a variety of variables, including the power consumed by the circuitry of the mobile station during transmission. *Id.*, 4:62-5:7.

Asserted claim 25 of the '120 Patent recites:

25. A mobile station for use in a communications system comprising:

> first antenna and a second antenna;
>
> first circuitry coupled to the first antenna and configured to process signals for transmission by the first antenna;
>
> second circuitry coupled to the second antenna and configured to process signals for transmission by the second antenna; and
>
> ***a controller*** coupled to the first and second circuitry, wherein ***the controller***

*is configured to receive a control signal and, in accordance with the control signal, to select between a multiple-input multiple-output (MIMO) mode* wherein both the first and second antennas transmit data over a communications channel *and a single-input multiple-output (SIMO) mode* wherein only one of the first and second antennas transmit data over a communications channel,

> *wherein the control signal is based, at least in part, on a power consumption of the first and second circuitry*,
>
> *wherein the control signal is based, at least in part, on an idle power consumption of the mobile station*.

JX-1, '120 Patent, cl. 25 (emphasis added).

Following briefing and a *Markman* hearing, the Court provided the following constructions relevant to claim 25 of the '120 Patent:

| Claim Term | Court's Construction |
|---|---|
| "in accordance with" | "as indicated by" |
| "a power consumption of the first and second circuitry" | plain and ordinary meaning |
| "an idle power consumption of the mobile station" | "a power consumed by the mobile station when the mobile station is powered on and waiting to send" |

Dkt. 117, 8-12.

In construing "a power consumption of the first and second circuitry" to have its plain and ordinary meaning, the Court acknowledged Samsung's argument that the prosecution history clearly disclaims "signal energy" (*i.e.*, the transmitted power emitted by the antennas) from the term. Dkt. 58, 7-12; Dkt. 117, 11. Thus, the Court clarified in its Claim Construction Order that the plain and ordinary meaning of the term "excludes signal energy emitted by the antennas." Dkt. 117, 11.

### B.     The Accused Products and Functionality

Empire alleged infringement of the '120 Patent, claim 25 by Samsung mobile phones and tablets that include a Qualcomm modem to implement 5G wireless communications. *See, e.g.*, Tr. 335:10-19, 364:11-365:14, 367:4-8 (Akl (Empire expert)).  There is no dispute that these accused phones and tablets communicate with a base station (i.e., cell tower), which configures the mobile device's communication modes. *Id.* 335:20-336:4, 336:24-338:21, 374:15-375:11, 375:23-25, 382:15-18 (Akl (Empire expert)), 582:24-583:5, 587:21-589:7, 590:12-591:9, 632:12-635:8 (Rangan (Samsung expert)).  The parties' experts further agree that the selection of whether the mobile phone or tablet operates in a MIMO mode or a SIMO mode is controlled by the base station through the downlink control information (DCI) signal, which is generated by the base station and sent to the mobile station. *Id.* 335:20-336:4 (Akl (Empire expert)) ("DCI, which stands for a downlink control information signal … [is] a control signal that comes from the base station to the phone, and it instructs the phone to either use SIMO mode or MIMO mode"); *see also id.* 374:15-375:11, 375:23-25, 382:15-18 (Akl (Empire expert)), 582:24-583:5, 587:21-589:7, 590:12-591:9, 632:12-635:8 (Rangan (Samsung expert)).

It is also undisputed that the 3GPP standards that govern 5G communications do not specify how the base station is to determine or generate the DCI, including its selection between MIMO and SIMO transmission modes.  Tr. 713:10-18 (Rangan (Samsung expert)); *see also id.* 571:25-572:8, 664:14-19, 664:23-665:4, 665:8-16, 711:7-13, 718:5-14    (Rangan (Samsung expert)).  In particular, the standards do not require that the DCI control signal, including its MIMO/SIMO selection, be based in any way on circuit power consumption or idle power consumption of the mobile station. *Id.* 369:10-370:16, 371:9-16, 376:7-14 (Akl (Empire expert)), 587:21-588:18, 590:12-591:2 (Rangan (Samsung expert)); *see also id.* 443:1-6 (Kowalski (Empire expert)), 696:24-697:1, 697:5-7, 698:7-10, 700:6-19, 726:21-24 (Rangan (Samsung expert)).  In

fact, the standards do not even mention such power consumption as something that may be considered in generating the DCI.  *See id.*  Instead, base station suppliers are free to decide how, and based on what criteria, to generate the DCI and make the MIMO/SIMO selection; accordingly, the DCI generation and MIMO/SIMO selection process is vendor-specific without any requirement or suggestion that it be based on any power consumption criteria.  *Id.* 664:14-19, 664:23-665:4, 665:8-16, 711:7-13, 713:10-18, 718:5-14 (Rangan (Samsung expert)).

## III.    <u>LEGAL STANDARD</u>

Under Federal Rule of Civil Procedure 50(b), judgment as a matter of law is appropriate where, "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find for the nonmovant." *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1333 (Fed. Cir. 2019); *Tercero v. Tex. Southmost College Dist.*, 989 F.3d 291, 299 (5th Cir. 2021).  "Judgment as a matter of law of no literal infringement is appropriate if no reasonable fact finder could determine that the accused devices meet every limitation of the properly construed claims." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999).

"While a jury's collective wisdom should always be honored as to disputed factual issues, it is equally true that the party with the burden of proof must present sufficient evidence as to each and every element required in its cause of action.  This is often a painstaking task—especially in a complex patent case—but it is important ….  No matter how attractive a party paints the facade of its case, it is worthless without the requisite foundational support.  It is the Court's job to inspect that foundation, and where it has not been properly laid under the law, to set aside the verdict to protect the reliability of our jury system." *Mirror Worlds, LLC v. Apple, Inc.*, 784 F. Supp. 2d 703, 731 (E.D. Tex. 2011), *aff'd*, 692 F.3d 1351 (Fed. Cir. 2012) (granting JMOL and overturning infringement and damages verdict for lack of sufficient evidence).

A patentee's expert should not be credited where the expert offers only conclusory and unsupported testimony. *See, e.g.*, *CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1297 (Fed. Cir. 2021) (reversing the denial of accused infringer's JMOL motion seeking to overturn jury's infringement verdict) ("Not only was there a lack of evidence to show that the accused product met the proper construction of the claims, there is unrebutted evidence showing the opposite."); *Yoon Ja Kim v. ConAgra Foods, Inc*., 465 F.3d 1312, 1320 (Fed. Cir. 2006) (affirming JMOL of non-infringement where patentee's expert offered only conclusory, unsupported testimony).

## IV.    ARGUMENT

### A.    Samsung Is Entitled to JMOL Of No Infringement

To prove infringement, Empire bore the burden of showing that Samsung practices every element of claim 25.  35 U.S.C. § 271(a); *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011). Empire failed to meet this burden because it failed to present any evidence for two separate claim limitations, both of which are required for there to be infringement.  Specifically, Empire presented no evidence that the accused products satisfy the claim 25 requirements that the claimed mobile station be configured to select between MIMO mode and SIMO mode in accordance with a "control signal,"  "wherein the ***control signal*** is based, at least in part, on" (1) "***a power consumption of the first and second circuitry***" and (2) "***an idle power consumption of the mobile station***."  JX-1, '120 Patent, cl. 25 (emphasis added).  Empire's failure to offer legally sufficient evidence for each of these limitations presents two independent grounds for judgment as a matter of law that Samsung has not, and does not, infringe claim 25 of the '120 Patent.  *See Elkay*, 192 F.3d at 980.

### 1.    Empire Did Not Present Any Evidence Of What Information the DCI Is Based Upon

While Empire identified the downlink control information (DCI) sent from the base station to the mobile station as the claimed "control signal," it proffered no evidence of how the base station creates the DCI or what information the DCI is based upon.  Empire conceded that the accused downlink control information (DCI) does not originate from the mobile station but is generated and sent by the base station to the mobile station to select MIMO or SIMO mode.  Tr. 335:20-336:4 (Akl (Empire expert)) ("DCI, which stands for a downlink control information signal … [is] a control signal that comes from the base station to the phone, and it instructs the phone to either use SIMO mode or MIMO mode"); *see also id.* 374:15-375:11, 375:23-25 (Akl (Empire expert)), 582:24-583:5, 587:21-588:9, 588:10-589:7, 590:12-591:9, 632:12-635:8 (Rangan (Samsung expert)).  Yet Empire offered no evidence of what any base station actually uses to determine the DCI and its MIMO/SIMO selection—it did not offer any evidence of how any base station operates and it did not present any analysis of any base station source code or MIMO/SIMO selection algorithm.  *Id.* 383:24-384:1 (Akl (Empire expert)) ("Q. You did not present any information about how the DCI is formed to this jury.  A. That's not part of the claim language.  I agree."), 382:25-383:2 ("Q. You don't provide any analysis to this jury of how the base station actually generates a DCI.  Correct?  A. It's not relevant.  That's true."), 384:6-8 (admitting no source code regarding how the DCI is generated was shown), 391:5-7 (admitting no testimony regarding any source code running on the base station was provided), 384:9-12 (admitting no algorithms or formulas that the base station uses to generate the control signal was shown), 382:22-24 (admitting no analysis of any source code for any base stations was performed) 383:19-21 (admitting no base station source code was reviewed), 391:8-10 (same), 383:22-23 (admitting no base station inspection); *see also id.* 383:3-5 (Akl (Empire expert)), 713:19-23 (Rangan (Samsung

expert)).  Empire, thus, presented *no evidence* that the DCI is based on the specific power consumption criteria required by the claims.

Empire and its expert attempted to excuse this fatal hole in Empire's case by arguing that Empire was not required to show how a base station generates the DCI because the base station is not recited in the claim.  *See, e.g.*, *id.* 423:5-7 (Akl (Empire expert)) ("Q. And does it matter what the base station uses to create the control signal sent to the mobile station?  A. No. What matters are the words in the claim."); *see also id.* 424:4-11 (Akl (Empire expert)).  However, while claim 25 does not explicitly recite a base station, it does recite the "control signal" and requires that the control signal, regardless of its source, be based on specific criteria.  Therefore, even though the accused DCI control signal originates at the base station, Empire was still required to prove what the DCI is based upon.  *Id.* 586:11-21 (Rangan (Samsung expert)) ("…[I]f the downlink control signal is to come from the base station, it's -- and the base station makes that decision, we have to understand how that decision was based on."); *see also id.* 587:21-588:9, 710:13-711:16 (Rangan (Samsung expert)).

Because Empire presented no evidence regarding how any base station generates DCI or what information the DCI received by the accused mobile stations is based upon, Empire cannot prove that the accused DCI "control signal" is based on the circuit power consumption and idle power consumption of the mobile station, as claim 25 requires.  For this reason alone, the jury's infringement verdict cannot stand and the Court should grant JMOL of no infringement.

2.    **Empire's Evidence Concerning Smart Transmit and Envelope Tracking Does Not Support A Finding That DCI (The Control Signal) Is Based On Power Consumption Of The First And Second Circuitry**

At trial, Empire cited the Smart Transmit and envelope tracking features of the Samsung products as allegedly supporting its argument that the DCI is a "control signal" "based, at least in part, on a power consumption of the first and second circuitry," as required by claim 25.  Tr.

336:24-338:21 (Akl (Empire expert)).  But these features, either alone or in combination, do not provide any information regarding power *consumption* to the base station and, even if they did, their use in the accused products does nothing to show that any DCI signal received by the accused products is based in any way on power consumption of circuitry in the mobile phone or tablet. These features are, therefore, irrelevant and do not provide a basis for a jury to find infringement.

According to the testimony of Empire's expert Dr. Akl, Smart Transmit controls the "instantaneous transmit power" in the mobile stations.  *Id.* 336:24-338:21 (Akl (Empire expert)). As a result, the mobile station sends the communication signals (e.g., a phone call) to the base station using the "instantaneous transmit power" determined by Smart Transmit and the base station "takes [this] into account when it sends the DCI signal back to the phone to instruct the phone to switch -- or to select between MIMO and SIMO."  *Id.*  Finally, Empire's expert opined that, because envelope tracking "aligns the voltage of the circuitry in the phone to just above the voltage of the RF signal that is being transmitted," when the base station receives the communication signals, "it is receiving an approximation of the power consumption of the circuitry in the phone."  *Id.*  But Empire's claim that this evidence shows that the accused DCI control signal is based on the mobile station's circuit power consumption fails for multiple reasons.

As Dr. Akl admitted, Smart Transmit controls the "instantaneous *transmit* power," not circuit power *consumption*, as required by claim 25.  In fact, Dr. Akl testified how Smart Transmit is used to specifically control "*transmit* power" in order to satisfy FCC regulations  *Id.* 337:6-24; *see also id.* 379:16-380:20 (explaining that Smart Transmit relates to "instantaneous *transmit* power"), 379:16-22.  This "instantaneous transmit power" represents nothing more than the "signal energy" or output of the circuitry that the patentee distinguished during prosecution and that the Court expressly excluded from the scope of claim 25.  *See* Dkt. 117, 11.

And combining Smart Transmit with envelope tracking does not fix this fatal flaw. Empire's expert opined that the use of envelope tracking by the Samsung products allows the base station to "approximate" the power consumption of the circuitry based on the received signal.  Tr. 338:9-21, 430:22-431:24 (Akl (Empire expert)).   In other words, Empire asserted that the "instantaneous transmit power" (*i.e.*, RF signal energy emitted by the antennas) serves as a proxy for circuit power consumption.  This argument fails for multiple reasons.  ***First***, this argument relying on transmit power is precisely what the Court's claim construction forbids.  *See* Dkt. 117, 11 ("the Court adopts its preliminary construction of 'plain and ordinary meaning,' and reiterates that the meaning ***does not include signal energy emitted by the antennas***.") (emphasis added). ***Second***, Empire submitted no evidence that the base station even receives any information about the actual transmit power of the signal from the mobile station (from which power consumption allegedly could be approximated or derived); instead, the base station knows only the power of the signal as received by the base station.  *See, e.g.*, Tr. 376:20-378:21, 379:16-382:10 (Akl (Empire expert)),  589:16-596:16,  663:17-664:13,  665:23-673:4,  711:7-713:18,  713:19-714:15,  714:21-717:8 (Rangan (Samsung expert)).  As the undisputed evidence at trial clearly showed, the power of the signal received at the base station is dependent on multiple factors and could not serve as a reliable indicator of transmit power (let alone power consumption of any circuitry).  *Id.* 596:16, 663:17-664:13,  665:23-673:4,  711:7-713:18,  713:19-714:15,  714:21-717:8  (Rangan  (Samsung expert)); *see also id.* 376:20-378:21, 379:16-382:10 (Akl (Empire expert)).  ***Third***, even if the base station did receive information about the actual transmit power used (something for which there is no evidence), there is no evidence that the base station actually approximates or derives the power consumption of the mobile station circuitry from such transmit power, such that the DCI could be based on the power consumption information.

10

Finally, even if, contrary to the evidence, there were some connection between the "instantaneous transmit power" and circuit power consumption, or the base station otherwise received information regarding circuit power consumption in the mobile station, Empire offered no evidence that any information about circuit power consumption is actually used in generating the DCI or making the MIMO/SIMO selection, much less that the accused DCI control signal is based on such circuit power consumption.  In fact, the undisputed evidence presented at trial supports the opposite conclusion and shows that the standards governing the operation of the Samsung products do not require or even suggest that DCI and/or its MIMO/SIMO selection be based in any way on circuit power consumption (or idle power consumption of the mobile station (Section IV.A.3, *infra*)).  *Id.* 369:10-370:16, 371:9-16, 376:7-14 (Akl (Empire expert)), 587:21-588:18, 590:12-591:2 (Rangan (Samsung expert)); *see also id.* 443:1-6 (Kowalski), 696:24-697:1, 697:5-7, 698:7-10, 700:6-19, 726:21-24 (Rangan (Samsung expert)).  For example, Dr. Akl testified:

> Q. Now let's look at the very last part of claim 25.  It says, "Wherein, the control signal is based, at least in part, on an idle power consumption of the mobile station." Do you see that language, sir?
> A. Yes.
> Q. For your opinion regarding that claim element, you did not rely on the 5G standard.
> A. No.
> …
> Q. And you agree that that element is not required by the 5G standard.
> A. That's fair.
> …
> Q. The portion beginning wherein just above what we read in claim 29, that's also found in claim 25, correct, sir, "wherein the control signal is based, at least in part, on a power consumption of the first and second circuitry"?
> A. Yes, sir.
> Q. So beginning again with wherein, that portion of claim [25] is not required by 5G.  Correct?
> A. Yes, sir.

*Id.* 369:10-371:16 (Akl (Empire expert)).

Accordingly, the evidence and testimony concerning Smart Transmit and envelope tracking do not provide a basis for a jury to reasonably conclude that DCI is a "control signal" "based, at least in part, on a power consumption of the first and second circuitry," as required by claim 25. The Court should, therefore, grant JMOL of no infringement on this basis.

### 3. Empire's Evidence Concerning Smart Transmit Does Not Support A Finding That DCI (The Control Signal) Is Based On Idle Power Consumption Of The Mobile Station

As with the "power consumption of the first and second circuitry" limitation discussed above, Empire's expert relied on Smart Transmit to support his opinion that DCI is a "control signal" "based, at least in part, on an idle power consumption of the mobile station," as required by the last limitation of claim 25. This testimony and other evidence submitted by Empire fails to support a finding of infringement for the same reasons as discussed in connection with the prior limitation (Section IV.A.2). Indeed, the evidence is even weaker for this idle power consumption limitation and it fails to support a finding of infringement for addition, independent reasons.

For example, Empire failed to present any evidence supporting its allegation that Smart Transmit (or any other feature of the accused products) somehow conveys information to the base station regarding the idle power consumption *of the mobile station*. Claim 25 recites two different power consumptions: "power consumption of the *first and second circuitry*" (Section IV.A.2) and "idle power consumption of the *mobile station*." JX-1, '120 Patent, cl. 25. The claim further specifies that the "first and second circuitry" are the circuitry "coupled to the [first/second] antenna and configured to process signals for transmission by the [first/second] antenna." *Id.* And while the claim does not define the "mobile station" beyond the recited limitations, Empire concedes that this term is used in the '120 Patent to refer to a mobile phone or tablet (*i.e.*, the entire device). Tr. 163:10-17, 323:11-19. Thus, the claim limitations plainly address the power consumption of

two different things.[2]

Nonetheless, Empire relies exclusively on the "instantaneous transmit power" for both limitations. *See, e.g.*, *id.* 336:24-338:21, 339:22-342:11. For the idle power limitation, Empire's expert Dr. Akl opined that Smart Transmit takes idle power consumption into account because it averages transmit power over periods where the RF transmit power is held at P reserve, *i.e.*, a minimum reserve power level, and when a call is dropped. *Id.* 336:24-338:21, 339:22-342:11 (Akl (Empire expert)). However, in addition to this evidence relating to ***transmit*** power rather than power ***consumption*** as required by the claims (*see* Section IV.A.2), the evidence relates to the transmit circuitry (the alleged "first and second circuitry," as Empire argued at trial); it provides no information about the ***mobile station*** (the phone or tablet) as a whole. In fact, Dr. Akl admitted that, during what he considered to be "period[s] [of] idle power consumption," Smart Transmit is considering a "transmitted power [of] zero" despite the fact that the mobile station is still "consuming idle power." *Id.* 384:13-389:13. That is, as Dr. Rangan testified, "during these idle power periods the mobile station … could be consuming power, but Smart Transmit will take the power during these periods as zero," which "means that it's not looking at the idle power consumption" of the mobile station; instead, "to the extent" "Smart Transmit" is "looking at anything," it is "only looking at the transmit circuitry, but is not considering anything outside that in the mobile station." *Id.* 599:3-22; *see also id.* 635:11-636:3. Thus, far from supporting Empire's assertions, the evidence presented at trial showed that Smart Transmit's consideration of the alleged idle periods does not, in any way, reflect the internal power consumption of the mobile station. *See, e.g.*, *id.* 593:18-22, 596:3-11.

---

[2] Indeed, while the Court's preliminary construction of the "idle power" limitation referred to "the first and second circuitry," this was corrected in the final Claim Construction Order to refer to the "mobile station." Dkt. 116, 23:13-29:8; Dkt 117, 12.

Finally, even if there were some connection between the purported "instantaneous transmit power" and the "idle power consumption of the mobile station" (something for which there is no evidence), Empire offered no evidence that the idle power consumption of the mobile station is actually used in generating the DCI or making the MIMO/SIMO selection, much less that the accused DCI control signal is based on the idle power consumption of the mobile station.  *See* Section IV.A.2.  This provides a second, independent basis for granting JMOL of no infringement.

### B.    Alternatively, Samsung Is Entitled To A New Trial

In the alternative to JMOL, a new trial is warranted where "the verdict was against the great weight of the evidence."  *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612-13 (5th Cir. 1985).  A new trial may be granted on all or part of the issues on which there has been a trial by jury.  Fed. R. Civ. P. 50(b), 59.  Here, the infringement verdict was against the great weight of the evidence for the same reasons above and incorporated here.  *See supra*; *see also, e.g.*, *Georgia-Pac. Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1333 (Fed. Cir. 1999) (affirming new trial despite denying JMOL).  Samsung at least is entitled to a new trial on infringement of claim 25 of the '120 Patent.

### V.    <u>CONCLUSION</u>

Samsung respectfully requests that the Court grant JMOL that Samsung is not liable for infringement of asserted claim 25 of the '120 Patent, or at least a new trial on infringement of claim 25 of the '120 Patent.

Dated: August 12, 2025                    Respectfully submitted,

                                          /s/ Marc J. Pensabene
                                          _____

                                          Ryan K. Yagura (Tex. Bar No. 24075933)
                                          ryagura@omm.com
                                          Nicholas J. Whilt (*Pro Hac Vice*)
                                          California State Bar No. 247738
                                          nwhilt@omm.com
                                          **O'MELVENY & MYERS LLP**
                                          400 S. Hope Street
                                          Los Angeles, CA 90071
                                          Telephone: 213-430-6000
                                          Facsimile: 213-430-6407

                                          Marc J. Pensabene (*Pro Hac Vice*)
                                          New York State Bar No. 2656361
                                          mpensabene@omm.com
                                          Laura Gore (*Pro Hac Vice*)
                                          New York State Bar No. 5172879
                                          lgore@omm.com
                                          **O'MELVENY & MYERS LLP**
                                          1301 Avenue of the Americas, Suite 1700
                                          New York, New York 10019
                                          Telephone: 212-326-2000
                                          Facsimile: 212-326-2061

                                          Sorin G. Zaharia (*Pro Hac Vice*)
                                          California State Bar No. 312655
                                          szaharia@omm.com
                                          **O'MELVENY & MYERS LLP**
                                          Two Embarcadero Ctr. 28th Floor
                                          San Francisco, CA 94111
                                          Telephone: 415-984-8700
                                          Facsimile: 415-984-8701

                                          Melissa R. Smith (Tex. Bar No. 24001351)
                                          melissa@gillamsmithlaw.com
                                          **GILLAM & SMITH, LLP**
                                          303 South Washington Avenue
                                          Marshall, TX 75670
                                          Telephone: 903-934-8450
                                          Facsimile: 903-934-9257

                                          ***Attorneys for Defendants Samsung Electronics
                                          Co., Ltd. and Samsung Electronics America, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel of record who are deemed to have

consented to electronic services are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) on August 12, 2025.


*/s/  Marc J. Pensabene*
Marc J. Pensabene