[redacted]

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| EMPIRE TECHNOLOGY DEVELOPMENT, LLC<br><br>Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., and SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>Defendants. | C.A. No. 2:23-cv-00427-JRG-RSP<br><br>[redacted] |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RULE 50(B) RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND, IN THE ALTERNATIVE, FOR A NEW TRIAL UNDER RULES 50(B) AND 59**

[redacted]

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION ..... 1

II. RESPONSE TO SAMSUNG'S "BACKGROUND" SECTION ..... 2

A. The '120 Patent and Claim 25 ..... 2

B. The Accused Products and Functionality ..... 3

III. LEGAL STANDARD ..... 4

IV. ARGUMENT ..... 5

A. Empire Proved DCI Is "Based at Least in Part on" Circuit and Idle Power Consumption and Did Not Need to Prove Unclaimed Base Station Specifics ..... 5

B. Empire's Smart Transmit and Envelope Tracking Evidence Is Sufficient to Support the Jury's Finding That the Accused Products Meet the Power Consumption Limitation ..... 7

C. Empire's Smart Transmit Evidence Is Sufficient to Support the Jury's Finding That the Accused Products Meet the Idle Power Limitation ..... 10

V. CONCLUSION ..... 12

[redacted]

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Broussard v. State Farm Fire & Cas. Co.*,
523 F.3d 618 (5th Cir. 2008) ....................4

*Dawson v. Wal-Mart Stores, Inc.*,
978 F.2d 205 (5th Cir. 1992) ....................5

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ....................11

*Harris Corp. v. Ericsson Inc.*,
417 F.3d 1241 (Fed. Cir. 2005)....................4

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
688 F.3d 1342 (Fed. Cir. 2012)....................4

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)....................4

*Metaswitch Networks Ltd. v. Genband US LLC*,
No. 2:14-cv-00744-JRG, 2017 WL 3704760 (E.D. Tex. Aug. 28, 2017)....................4, 5

*Perez v. Texas Dep't of Crim. Just.*,
395 F.3d 206 (5th Cir. 2004) ....................4

[redacted]

# I. INTRODUCTION

During a four-day trial, Empire presented overwhelming evidence proving Samsung infringes claims 25 and 29 of the ’120 Patent and claim 1 of the ’331 Patent. The jury unanimously found Samsung infringed claim 25 of the ’120 Patent. Empire seeks judgment as a matter of law that Samsung infringed claim 29 of the ’120 Patent and claim 1 of the ’331 Patent, Dkt. 286, and Samsung seeks judgment as a matter of law on the infringement verdict as to claim 25, Dkt. 285.

Empire presented more than substantial evidence from which a jury could reasonably conclude, by a preponderance of the evidence, that Samsung infringed claim 25. Samsung is wrong in its assertion that Empire did not present any evidence that the Accused Products receive a control signal based at least in part on (i) the power consumption of the first and second circuitry and (ii) the idle power consumption of the mobile station.

To the contrary, Empire presented evidence establishing infringement including, for example: (i) Samsung’s voluminous submissions to the United States Federal Communications Commission explaining the infringing features of the Accused Products, *see e.g.*, Ex. 1; Ex. 2; Ex. 3; Ex. 4; Ex. 5; Ex. 6; (ii) Samsung’s own design documents explaining the infringing features of the Accused Products, *e.g.*, Ex. 7; (iii) [redacted], confirming relevant aspects of the Accused Products, *e.g.*, Ex. 8; and (iv) that vendor’s design documents produced by Samsung confirming the infringing features of the Accused Products, *e.g.*, Ex. 9. Empire also provided detailed expert testimony from Dr. Akl, who performed a specific element-by-element analysis that explained and relied on the above-mentioned documents to support his infringement conclusion. *See e.g.*, Ex. 10 at 332:19-342:17. Empire’s evidence showed that Samsung’s Accused Products are configured to receive a control signal for selecting between MIMO and SIMO transmission modes wherein that control signal is based on (i) the power

[redacted]

consumption of the first and second circuitry; and (ii) the idle power consumption of the mobile station.

Samsung's combined Rule 50 and Rule 59 motion repeats, almost verbatim, arguments reviewed and rejected by this Court when Samsung moved for summary judgment. Specifically, Samsung now (again) argues that "Empire admitted it did not investigate the algorithms or source code of any base station," Dkt. 285 at 1, even though a base station and its operation is not part of claim 25, as this Court ruled before trial. Dkt. 224 at 4 ("[T]he Court agrees with Empire that Samsung's arguments attempt to import into the claims several requirements about base stations that are not claimed. This alone defeats Samsung's Motion."). Samsung also argues (again), incredibly, that Empire "presented no evidence regarding what the DCI, and the MIMO/SIMO mode indicated by the DCI, are based upon", Dkt. 285 at 1, despite voluminous evidence presented at trial on this point. *See e.g.*, Ex. 10 at 337:6-12, 337:13-24, 338:2-6, 338:7-16; Ex. 3; Ex. 9. The Court again should reject Samsung's arguments.

## II. <u>RESPONSE TO SAMSUNG'S "BACKGROUND" SECTION</u>

### A. The '120 Patent and Claim 25

Samsung's characterization of the '120 Patent as "a system that selects between MIMO and SIMO mode 'based, at least in part, on an *energy consumption* of the first and second *transmission rates*'"[1] focuses on only one (unclaimed) aspect of a multi-faceted patent specification while ignoring both the language of claim 25 and the Court's construction of its disputed terms. *Cf.* Dkt. 285 at 2. To be clear, claim 25 does not include "energy consumption of the first and second transmission rates," "lower energy per bit," or "crossover point" as limitations. *See* Ex. 11. As a result, such concepts do not excuse Samsung's infringement.

[1] Emphasis added.

[redacted]

Samsung also misinterprets the Court's claim construction of "a power consumption of the first and second circuitry." *Cf.* Dkt. 285 at 3. The Court gave this limitation its "plain and ordinary meaning" and did not find any prosecution history disclaimer. Dkt. 117 at 11. The Court recognized Empire's concern that Samsung's proposed negative limitation construction "might exclude *measuring* the power consumption of the first and second circuitry *using* the signal energy" and, in rejecting Samsung's negative limitation construction, noted that use of "signal energy" to determine "the power consumption of the first and second circuitry" was "a different issue not addressed by the construction." *Id.* (emphasis added). And again in denying Samsung's motion for summary judgment, the Court reiterated that it "explicitly did not exclude 'measuring the power consumption of the first and second circuitry using the signal energy,' but excluded the signal energy as being the claimed 'power consumption.'" Dkt. 224 at 5. Thus, the Court found that "Empire's read does not violate the Court's claim construction," *id.*, and as discussed further below, Empire's evidence at trial applied the Court's construction and was sufficient to prove infringement by a preponderance of the evidence.

**B. The Accused Products and Functionality**

Samsung's characterization of the Accused Products includes two misleading statements. *First*, Samsung's contention that the base station "configures the mobile device's communication modes" is not correct. *Cf.* Dkt. 285 at 4. Rather, it is undisputed that the mobile device's controller configures its communication mode in accordance with a control signal received. Ex. 11 at 19:9-14 ("the controller is configured to receive a control signal and, in accordance with the control signal, to select between a [MIMO and SIMO mode]"). As Dr. Akl testified, the downlink control information (DCI) signal is "[redacted]." Ex. 10 at 335:25-336:4. Thus, the control signal instructs the mobile device's configuration but does not directly configure the

[redacted]

mobile device's mode. *E.g.*, *id*. at 375:23-25 ("[redacted]").

*Second*, Samsung's view that the 3GPP standards[2] "do not specify how the base station is to determine or generate the DCI" is irrelevant to the infringement question. *Cf.* Dkt. 285 at 4. Even Dr. Rangan agreed that Empire did not argue that the standard *itself* infringes claim 25. Ex. 12 at 698:7-10. Empire established infringement of claim 25, even though the '120 Patent is not standard essential, by presenting substantial trial testimony and evidence showing that the Accused Products practice each claim limitation. *See e.g.*, *id*. at 705:9-19; Ex. 10 at 341:6-22, 337:6-12, 337:13-24, 338:2-16; Ex. 1; Ex. 3; Ex. 9; Ex. 8.

## III. LEGAL STANDARD

A plaintiff need only prove infringement by a preponderance of the evidence. *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1318 (Fed. Cir. 2009). JMOL is not a patent law-specific issue and, thus, regional-circuit law applies. *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1248 (Fed. Cir. 2005). In the Fifth Circuit, a Court may only grant JMOL if "'the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict.'" *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356 (Fed. Cir. 2012) (quoting *Broussard v. State Farm Fire & Cas. Co.*, 523 F.3d 618, 624 (5th Cir. 2008)). The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party, but JMOL should be granted only if "the facts and inferences point so strongly in favor of [the moving party] that a rational jury could not arrive at a contrary verdict." *Perez v. Texas Dep't of Crim. Just., Institutional Div.*, 395 F.3d 206, 215 (5th

[2] Samsung did not even attempt to prove at trial that these standards *forbid* the DCI from being based at least in part on power consumption of the transmission circuity or the idle power consumption of the mobile station.

[redacted]

Cir. 2004) (citation and internal quotation marks omitted). In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict." *Metaswitch Networks Ltd. v. Genband US LLC*, No. 2:14-cv-00744-JRG, 2017 WL 3704760, at *2 (E.D. Tex. Aug. 28, 2017).

A new trial should only be granted when "the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992) (internal citation omitted).

## IV. ARGUMENT

### A. Empire Proved DCI Is "Based at Least in Part on" Circuit and Idle Power Consumption and Did Not Need to Prove Unclaimed Base Station Specifics

Samsung complains now, as it did before trial, that Empire presented no evidence "that the DCI is based on the specific power consumption criteria" because it "did not offer any evidence of how any base station operates" and "did not present any analysis of any base station source code or MIMO/SIMO selection algorithm," Dkt. 285 at 7-8. The Court rejected Samsung's argument at the Rule 56 stage and should reject it again now. Samsung's argument remains misplaced because it both overlooks the probative evidence Empire presented to show that the Accused Products satisfy the claim requirements and seeks to inject base station specifics not recited in claim 25.

Empire presented more than sufficient evidence for a jury to find that the Accused Products satisfy the claim limitations of (i) "wherein the control signal is based, at least in part, on a power consumption of the first and second circuitry" and (ii) "wherein the control signal is based, at least in part, on an idle power consumption of the mobile device." *See e.g.,* Ex. 10 at 338:3-6, 340:1-342:17, 430:22-431:24; Ex. 11; Ex. 3; Ex. 9. For example, with respect to the circuit power consumption limitation, Dr. Akl explained that "[redacted]

[redacted]

[redacted]"

Ex. 10 at 431:14-17. Dr. Akl further described this use of the [redacted] as a feedback process between the mobile phone and the base station in the Accused Products. *Id.* at 338:1-6 ("[redacted]"). Both Dr. Akl and Dr. Heath, an inventor of the '120 Patent, testified about this same feedback process in describing the invention of the '120 Patent. *Id*. at 338:17-21 ("[redacted]"); Ex. 13 at 269:7-270:2 ("[redacted]"); Ex. 11; Ex. 3; Ex. 9.

An analysis of base station source code or algorithms was unnecessary to show Samsung's infringement. Claim 25 of the '120 Patent simply does not require specifics regarding any activities at the base station, such as details of how the DCI is formed. In fact, the claim does not even recite a base station and does not require the base station to perform specific steps, such as the steps the base station takes with regard to MIMO/SIMO mode selection. *See* Ex. 11 at 19:1-20. Claim 25 does not require, as Samsung suggests, "evidence of how any base station operates" or even "how a base station generates the DCI." *Cf.* Dkt. 285 at 7-8; *see also* Ex. 10 at 423:1-424:7.

Samsung's Motion fails to address Empire's evidence showing that Samsung's Accused Products receive a DCI control signal based in part on circuit power consumption and idle power

[redacted]

consumption. Samsung's argument instead focuses on specific base station details that are not found in the limitations of claim 25.

**B. Empire's Smart Transmit and Envelope Tracking Evidence Is Sufficient to Support the Jury's Finding That the Accused Products Meet the Power Consumption Limitation**

Samsung's argument that the instantaneous transmit power cannot approximate, or be used to approximate, the power consumption of the first and second circuitry fails.

*First*, Samsung is incorrect that this reading is prohibited by the Court's claim construction of "a power consumption of the first and second circuitry." Empire's read does not equate power consumption of the circuitry with signal energy in violation of the Court's construction. Rather, Empire's evidence recognized that in the Accused Products there is a relationship between the distinct values of circuit power consumption and transmit power such that one can be approximately measured using the other. As Dr. Akl explained, "[redacted]" Ex. 10 at 338:9-11. [redacted] *See id.* at 338:7-16. In adopting a "plain and ordinary" meaning construction, the Court explicitly recognized that measuring power consumption of the circuitry using the signal energy is "a different issue not addressed by the construction." Dkt. 117 at 11. As such, and despite Samsung's repeated assertions to the contrary, Empire's assertions on this element are in line with the claim construction, as the Court found at summary judgment. *See* Dkt. 224 at 5 ("Empire's read does not violate the Court's claim construction.").

Samsung's attempt to dismiss envelope tracking is misplaced because the use of envelope tracking in the Accused Products confirms the relationship between the power consumption of the

[redacted]

circuitry and the transmit power. As Dr. Akl testified with reference to the figure reproduced below, [redacted]" Ex. 10 at 431:3-12.

[redacted]

Ex. 9 at 8. Thus, documentary evidence confirms Dr. Akl's conclusion that the Accused Products provide the base station an approximate measurement of the power consumption of the circuitry.

*Second*, Samsung's contention that "Empire submitted no evidence that the base station even receives any information about the actual transmit power of the signal from the mobile station" is incorrect. *Cf.* Dkt. 285 at 10. Empire undoubtedly established that the base station receives information about the instantaneous transmit power from the mobile station. *See e.g.*, Ex. 10 at 337:6-24; 338:2-16; Ex. 3; Ex. 9. As Dr. Akl testified, relying in part on Samsung's submission to the FCC for an Accused Product, "[redacted]" Ex. 10 at 338:2-6; Ex. 3. Dr. Akl also testified that envelope tracking [redacted]

[redacted]

[redacted]"

Ex. 10 at 338:7-16; Ex. 9. In short, Samsung's attempt to draw a meaningless distinction between the mobile phone's transmit power and the power received at the base station has no support in the record.

*Third*, Samsung's contention that the claims require the base station to perform an approximation or derive the power consumption of the circuitry is also incorrect. *Cf.* Dkt. 285 at 10. Dr. Heath testified under cross-examination that the '120 Patent's specification "[redacted]" as it could be performed at the mobile phone or the base station. Ex. 13 at 308:23; *see* Ex. 11 at 11:19-24; Ex. 9. The claim language plainly does not impose any such requirement either because it only states that the "control signal is based at least in part on a power consumption of the first and second circuitry." Ex. 11 at 19:16-18. Thus, it is sufficient for purposes of infringement to show, as Empire established at trial, that [redacted] Ex. 10 at 338:7-16, 379:1-4, 382:3-10, 430:22-431:24.

Finally, Samsung's claim that Empire did not offer evidence that "any information about circuit power consumption is actually used in generating the DCI" is erroneous. *Cf.* Dkt. 285 at 11. Dr. Akl testified that "[redacted]" Ex. 10 Trial Tr. at 430:22-431:24; *see also id.* at 338:1-16, 382:7-14. Samsung offered no evidence to the contrary. To the extent Samsung claims that Empire needed to connect its evidence to the 5G standard to show infringement, Samsung's argument is unavailing because the jury was entitled to find infringement without regard to the 5G standard. *Id.* at 424:15-19 ("[redacted]

[redacted]"); Ex. 12 at 696:24-697:19.

### C. Empire's Smart Transmit Evidence Is Sufficient to Support the Jury's Finding That the Accused Products Meet the Idle Power Limitation

Samsung's argument that the "instantaneous transmit power" from Smart Transmit provides no information about the idle power consumption of the mobile phone is incorrect. *Cf.* Dkt. 285 at 12-14. Empire introduced substantial evidence that when the transmit power is zero, Smart Transmit continues to take that information regarding instantaneous transmit power into account to ensure FCC compliance. *See e.g.*, Ex. 10 Trial Tr. at 341:6-22, 439:24-444:16; Ex. 12 at 705:9-19; Ex. 1; Ex. 3; Ex. 4; Ex. 8. Dr. Akl testified that the call drop scenario tested by Samsung and submitted to the FCC confirms that [redacted]. Ex. 10 at 340:13-341:22; *see also id.* at 341:23-342:11. As shown in Samsung's submission to the FCC, "[redacted]" *Id.* at 340:4-10.

Even Dr. Rangan, [redacted], acknowledged that Smart Transmit considers the idle power of the mobile station. Ex. 12 at 705:9-19. As Empire showed at trial, [redacted] Ex. 12 at 705:9-13. Dr. Rangan agreed that this comment refers to a situation in which the transmitter is

idling and, as such, acknowledged that Smart Transmit consider idle power consumption in determining the instantaneous power transmitted to the base station. Ex. 12 at 705:17-19.

Samsung's apparent argument that Empire cannot rely on the use of Smart Transmit's instantaneous power for a control signal based, at least in part, on both (i) "a power consumption of the first and second circuitry," Ex. 11 at 19:17-18, and (ii) "an idle power consumption of the mobile station," *id.* at 19:19-20, because "the claim limitations plainly address the power consumption of two different things" is misplaced. *Cf.* Dkt. 285 at 12-13. There is no requirement in the claim language that these two power consumptions must be separate inputs to the control signal. In fact, "there is nothing on the face of the claim to discern the scope and boundaries of those inputs," and thus the claim language does not "explicitly require that the claim inputs be separate." *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1058 (Fed. Cir. 2024) (rejecting narrow understanding of "based at least in part on" claim language). Thus, since nothing prohibits the use of Smart Transmit's instantaneous power from satisfying both limitations, Empire's evidence that [redacted] is sufficient to show that the Accused Products satisfy both limitations. *See, e.g.*, Ex. 10 Trial Tr. at 338:1-16, 340:4-342:11, 430:22-431:24.

Further, Samsung's purported distinction between information about the first and second circuitry and information about the mobile phone misses the mark because the first and second circuitry are undoubtedly part of the mobile phone. Claim 25 requires that "the control signal is based, at least in part, on an idle power consumption ***of the mobile station***." Ex. 11 at 19:18-20 (emphasis added). Samsung attempts to reframe this element as requiring the control signal to be based on an idle power consumption of the "mobile station…***as a whole***" and then asserts that Empire failed to present sufficient evidence to meet its inserted claim term. *See* Dkt. 285 at 13

[redacted]

(emphasis added). But Empire presented ample evidence that [redacted], as required by the actual language of claim 25. *See e.g.*, Ex. 10 at 341:6-22; Ex. 12 at 705:9-19; Ex. 1; Ex. 3; Ex. 8. Even Dr. Rangan concedes that Smart Transmit is "[redacted]" and not just the first and second circuitry. Ex. 10 at 590:5-10. And, again, Samsung never even proposed its new post-trial "mobile station ***as a whole***" construction; one that finds no support in the patent's intrinsic record or this Court's trial record.

Samsung further attempts to distort the language of claim 25 by suggesting that the claim requires Smart Transmit to consider "the ***internal*** power consumption of the mobile station." *Cf.* Dkt. 285 at 13 (emphasis added). Here again, the word "internal" is not found in claim 25, Samsung never even asked for such a construction, and as such, any argument that Empire failed to prove this manufactured claim requirement should be disregarded. *See* Ex. 11; Ex. 10 at 339:9-14.

## V. CONCLUSION

For the foregoing reasons, Empire respectfully requests that the Court deny Samsung's motion for JMOL or a new trial as to Samsung's infringement of claim 25 of the '120 Patent.

[redacted]

Dated: August 26, 2025

Respectfully submitted,

*/s/ Nathaniel Browand*
Nathaniel Browand (admitted pro hac vice)
New York Bar No. 4349981
Christopher Gaspar (admitted pro hac vice)
New York Bar No. 2932762
Andrew Lichtenberg (admitted pro hac vice)
New York Bar No. 4881090
Rachel Wolf (admitted pro hac vice)
New York Bar No. 5857438
Alana Mattei (admitted pro hac vice)
New York Bar No. 6091292
Hannah Juge (admitted pro hac vice)
New York Bar No. 6171136
MILBANK LLP
55 Hudson Yards
New York, New York 10001
(212) 530-5000
nbrowand@milbank.com
cgaspar@milbank.com
alichtenberg@milbank.com
rwolf@milbank.com
amattei@milbank.com
hjuge@milbank.com

Marina Markarian (admitted pro hac vice)
California State Bar No. 340686
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, California 90067
(424) 386-4000
mmarkarian@milbank.com

Elizabeth L. DeRieux
Texas Bar No. 05770585
CAPSHAW DERIEUX, LLP
114 East Commerce Avenue
Gladewater, Texas 75647
(903) 845-5770
ederieux@capshawlaw.com

Attorneys for Plaintiff
Empire Technology Development LLC

[redacted]

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2025, all counsel of record are being served with a copy of the foregoing document via electronic mail.

/s/ *Nathaniel Browand*
Nathaniel Browand

[redacted]

[redacted]